## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### Waco Division

| | | |
|---|---|---|
| **MPHJ TECHNOLOGY INVESTMENTS, LLC**, inclusive of its subsidiaries, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| **FEDERAL TRADE COMMISSION**; **EDITH RAMIREZ**, in her official capacity as Commissioner and Chairwoman, Federal Trade Commission; **JULIE BRILL**, in her official capacity as Commissioner, Federal Trade Commission; **MAUREEN K. OHLHAUSEN**, in her official capacity as Commissioner, Federal Trade Commission; **JOSHUA D. WRIGHT**, in his official capacity as Commissioner, Federal Trade Commission; and **JESSICA RICH**, in her official capacity as Director, Bureau of Consumer Protection, Federal Trade Commission, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. ___6:14-cv-11_____ |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiff MPHJ Technology Investments, LLC, on behalf of itself, its subsidiaries, and its agents (hereinafter "MPHJ" or "Plaintiff"), by way of this Complaint against Defendant Federal Trade Commission, and those individual Defendants sued in their official capacity as Commissioners or Directors of the FTC, namely Edith Ramirez, Julie Brill, Maureen K. Ohlhausen, Joshua D. Wright, and Jessica Rich (collectively "the FTC" or "the FTC Defendants"), states and alleges as follows:

## OVERVIEW

1.     This case arises from the unlawful interference and threats by the FTC Defendants against MPHJ and its counsel directed at stopping or impeding the lawful, proper, and constitutionally protected efforts by MPHJ to identify and seek redress for infringement of its U.S. patents.

2.     In making their threats to bring action against MPHJ and its counsel related to MPHJ's attempt to enforce its patent rights, the FTC Defendants have not: (1) asserted that the relevant patents are invalid; (2) disagreed with the position that the patents are being infringed by thousands of companies in the United States; (3) disagreed that MPHJ has a right to enforce its patents against such infringers; (4) disagreed that enforcement of patents against at least some of those infringers may first require sending infringement inquiry letters; nor (5) disagreed that MPHJ has a right to threaten suit for infringement.

3.     The FTC's threatened suit is principally based upon the FTC's contention that if any U.S. patent owner threatens suit for infringement, even against a single infringer, and then fails promptly to bring suit for infringement, then that U.S. patent owner has committed an unfair trade practice under Section 5 of the FTC Act unless the patent owner bears the burden and can prove that at the time the threat was made, it intended to bring suit.  Here, the FTC contends that

MPHJ did not intend to bring suit at the time it allegedly threatened suit, and that such conduct is a violation of Section 5 of the FTC Act unless MPHJ can prove otherwise.  Setting aside that the FTC's factual premise is false, and that MPHJ can show that it did intend to bring suit at the time the alleged threats were made, the FTC's legal premise is flawed on multiple grounds.

4.     As one example, it is clear that the FTC has no authority or jurisdiction in this area.  Congress has specifically passed a statute, 15 U.S.C. § 45(n) that prohibits the FTC from exercising authority in these circumstances.  Moreover, the federal courts have previously ruled that the FTC cannot regulate the conduct which it seeks to regulate here.

5.     As a second example, it is clear that the FTC Defendants' threats violate the rights of MPHJ and its counsel under the U.S. Constitution.  The federal courts have long made it clear that communications related to patent rights are protected by the First Amendment unless they can be shown to be, in their essential message, objectively and subjectively baseless.  Here, the FTC has made clear that it does not contend that the communications were objectively and subjectively baseless, but yet is proceeding to threaten action against MPHJ and its counsel for what plainly is constitutionally protected activity.

6.     The bases upon which the FTC Defendants have threatened MPHJ, its owner and manager, and its agents and counsel with suit are unlawful at least because they violate MPHJ's constitutional rights, are in contradiction to applicable federal law, in particular the federal patent law, are contradicted by the relevant facts, and are in disregard of the law establishing that the FTC has no authority to regulate or interfere with the patent enforcement activity at issue, or with MPHJ's right to choice of counsel for representing it in connection with its patent enforcement activities.

7.      On the basis of the information and allegations set forth herein, MPHJ respectfully requests the Court grant the relief set forth in the Prayer for Relief provided at the end of this Complaint.

## THE PARTIES

8.      Plaintiff MPHJ Technology Investments, LLC is a limited liability company organized under the laws of Delaware with a registered agent for service at 1220 N. Market Street, Suite 806, Wilmington, DE 19801.  At the times relevant to this Complaint, MPHJ engaged in activities related to enforcing its patents principally at 510 North Valley Mills Drive, Suite 505, Waco, Texas 76710.  All of MPHJ's conduct relevant to this suit was conducted in Waco, Texas, or directed from Waco, Texas.  MPHJ currently is based in Texas at 166 S. Belknap, Stephenville, Texas 76401.  This suit is brought by MPHJ Technology Investments LLC on behalf of itself, its subsidiaries, and its agents (collectively and/or individually, "MPHJ").

9.      Defendant Federal Trade Commission, 600 Pennsylvania Avenue N.W., Washington, D.C. 20580, is a federal "agency" under the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*

10.      Defendant Edith Ramirez is the Chairwoman and a Commissioner of the FTC and is named in her official capacity.

11.      Defendant Julie Brill is a Commissioner of the FTC and is named in her official capacity.

12.      Defendant Maureen Ohlhausen is a Commissioner of the FTC and is named in her official capacity.

13.      Defendant Joshua K. Wright is a Commissioner of the FTC and is named in his official capacity.

14.     Defendant Jessica Rich is the Director of the FTC's Bureau of Consumer Protection and is named in her official capacity.

15.     The above-identified Defendants shall be referred to herein collectively as "the FTC Defendants" or "the FTC."

## JURISDICTION

16.     This Complaint comprises an action and claims arising under the patent laws of the United States, 35 U.S.C. § 271, *et seq*. because it necessarily requires resolution of substantial federal issues of patent law, and under 28 U.S.C. § 2201, and the First Amendment to the U.S. Constitution, for declaratory judgment that Plaintiff MPHJ, and its representatives and counsel, have not violated any federal law, including any law related to unfair competition and unfair and deceptive trade practices, over which the FTC Defendants assert they have authority, and claims and an action for relief under 28 U.S.C. § 2412, and the First Amendment to the U.S. Constitution, seeking remedy for violations of Plaintiff MPHJ's constitutional rights and rights under federal law, and further pursuant to 5 U.S.C. § 702, 28 U.S.C. § 1651, 28 U.S.C. § 2202, 28 U.S.C. § 1331, and under the *Bivens* doctrine.

17.     This Court has jurisdiction over MPHJ's Complaint under 28 U.S.C. §§ 1331, 1338(a), 1338(b), 1367; 28 U.S.C. § 2201; and 5 U.S.C. § 702.

18.     Plaintiff MPHJ has standing and ripeness to bring this Complaint because it has been, and continues to be, adversely affected by the ongoing improper investigation by the FTC Defendants into MPHJ's lawful and constitutionally protected patent enforcement activities, and by the imminent threat by the FTC Defendants to bring suit against MPHJ, its subsidiaries, its owner and manager, agents, and counsel, in violation of the rights under the Constitution and federal law applicable to both MPHJ and the other identified entities, and in violation of the statutory and constitutional limits on the authority and jurisdiction of the FTC Defendants.

19. There currently exists an actual and justiciable controversy between the parties regarding the constitutionality of the FTC Defendants' conduct, the scope of the FTC's authority and the meaning of United States statutes and FTC regulations.

20. This Court also has jurisdiction over MPHJ's free speech, due process, and *ultra vires* claims under *Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006). Also, for the reasons set forth in *Athalone Indus. Inc. v. Consumer Product Safety Commission*, 707 F.2d 1485 (D.C. Cir. 1983), the doctrine of exhaustion of administrative remedies does not bar this suit and Defendant's complaint is a "final agency action" under 5 U.S.C. §704.

21. The grounds for the relief requested include the free speech and due process guarantees of the United States Constitution, 5 U.S.C. §§ 701-706 (APA), 28 U.S.C. § 1651 (the All Writs Act), 28 U.S.C. § 2201 (the Declaratory Judgment Act), 28 U.S.C. § 2202 (further relief) Title 35 of the U.S. Code, 28 U.S.C. § 1331 (federal question jurisdiction and implied non-statutory review), and the *Bivens* doctrine.

22. This Court may grant MPHJ all of its attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

## **VENUE**

23. Venue is proper in this District under 28 U.S.C. §1391(e), 5 U.S.C. § 703 and 28 U.S.C. § 1391(b), as, at all times relevant to this Complaint, MPHJ principally conducted its patent enforcement activity from a location at 510 North Valley Mills Drive, Suite 505, Waco, Texas 76710. Further, all of the conduct relevant to this suit was conducted in Waco, Texas, or directed from Waco, Texas. Further, the conduct of the FTC Defendants for which this suit seeks relief, was threatened in this District.

## RELEVANT FACTS

### I.    THE RELEVANT PATENTS

24.    At issue in this case are certain U.S. patents and patent applications covering inventions by a Mr. Laurence Klein.

25.    On July 26, 2011, United States Patent No. 7,986,426 ("the '426 Patent") entitled "Distributed Computer Architecture and Process for Document Management" was duly and legally issued by the United States Patent and Trademark Office ("Patent Office"), identifying Laurence C. Klein as the inventor.  A true and correct copy of the '426 Patent is attached as Exhibit A-1 to this Complaint.

26.    A Petition for Review with respect to the '426 Patent has been initiated at the Patent Office, but the Patent Office has not yet issued any decision regarding the validity of that patent.

27.    On January 13, 2009, United States Patent No. 7,477,410 ("the '410 Patent") entitled "Distributed Computer Architecture and Process for Virtual Copying" was duly and legally issued by the Patent Office, identifying Laurence C. Klein as the inventor.  A true and correct copy of the '410 Patent is attached as Exhibit A-2 to this Complaint.

28.    On August 3, 2004, United States Patent No. 6,771,381 ("the '381 Patent") entitled "Distributed Computer Architecture and Process for Virtual Copying" was duly and legally issued by the Patent Office, identifying Laurence C. Klein as the inventor.  A true and correct copy of the '381 Patent is attached as Exhibit A-3 to this Complaint.

29.    A Petition for Review with respect to the '381 Patent has been initiated at the Patent Office, but the Patent Office has not yet issued any decision regarding the validity of that patent.

30.    On February 6, 2001, United States Patent No. 6,185,590 ("the '590 Patent") entitled "Process and Architecture for Use on Stand-Alone Machine and in Distributed Computer Architecture for Client Server and/or Intranet and/or Internet Operating Environments for Migrating a Program Specific Application Programmer Interface (API) From an Original State into a Generic Interface by Building an Object" was duly and legally issued by the Patent Office, identifying Laurence C. Klein as the inventor.  A true and correct copy of the '590 Patent is attached as Exhibit A-4 to this Complaint.

31.    On July 16, 2013, United States Patent No. 8,488,173 ("the '173 Patent") entitled "Distributed Computer Architecture and Process for Document Management" was duly and legally issued by the Patent Office, identifying Laurence C. Klein as the inventor.  A true and correct copy of the '173 Patent is attached as Exhibit A-5 to this Complaint.

32.    The '426 Patent, '410 Patent, '381 Patent, '590 Patent and the '173 Patent are collectively referred to herein as "the Klein Patents" or "the MPHJ Patents."

33.    All of the Klein Patents were examined by the Patent Office before issuance, and by federal law are each presumed valid.

34.    Plaintiff MPHJ is the assignee and owner of the Klein Patents, and together with its exclusive licensees, has the right to assert causes of action arising under said patents, and has the right to any remedies for infringement thereof, and the right to license any and all of the Klein Patents, and to send any correspondence to third parties regarding the same.

35.    Plaintiff MPHJ and its exclusive licensees have a constitutional right to retain counsel of their choice to represent them in connection with any of the activities identified in the above paragraph.

36.     On information and belief, at the time the FTC engaged in its unlawful and *ultra vires* threatening conduct that is the subject of this Complaint, and up to the present time, the FTC Defendants had conducted no investigation, nor formed any opinion that the Klein Patents are invalid, or that engaging in any conduct that included a belief by Plaintiff MPHJ that the patents were not invalid would have been baseless.

## II.    LIKELY INFRINGEMENT OF THE RELEVANT PATENTS

37.     The claims of the Klein Patents generally relate to cover an entire networked system having certain components and features.

38.     More specifically, the claims of the Klein Patents relate to networked scanning systems that are connected and interfaced such that they permit the seamless transmission of a scanned document image into application software running on a destination computer.

39.     An example of a modern system that likely would infringe at least one or more claims of the Klein Patents would be a system found in a business having a Local Area Network (or "LAN"), and a scanner and employee computers running email software such as Microsoft Outlook connected to the LAN, where a document may be scanned and transmitted via the LAN directly as an attachment into the email on an employee's computer with the push of a button. There are a number of other common infringing examples, but this one is the most common and most easily understood.

40.     Systems having the requirements of at least one claim of the Klein Patents are now in widespread use.  But such systems were not known, nor would they have been obvious, at the time of the Klein invention.

41.     The Patent Office has found the system novel and non-obvious at the time of invention, and has awarded five patents on aspects of the invention.  Significantly, that fifth patent (U.S. Patent No. 8,488,173) was issued by the Patent Office on July 18, 2013, after a

review of all of the prior art cited by most, if not all, of the major scanner and information

technology companies in the world.

42.     Because the claims of the Klein Patents cover an entire networked system having

certain components and features, no individual manufacturer of a scanner, or a server, or any

employee computer, or any application software, has liability for direct infringement of any

claim of the Klein Patents.

43.     Only the businesses that have sold, assembled or used the entire claimed

networked scanning system could directly infringe a claim of a Klein Patent.

44.     The Klein Patents are unusual in that there are thousands of businesses in the

United States that employ networked systems which satisfy at least one claim of the Klein

Patents.

45.     The Klein Patents are also unusual in that there is no manufacturer, or small group

of manufacturers, from whom redress for infringement may be sought under the patent laws

related to the infringement of the businesses using infringing networked systems.

46.     The Klein Patents are also unusual in that even though infringement is

widespread, evidence of the specific types of networked system used by any one particular

business is generally not publicly available.  Identification of businesses having infringing

systems is made complicated by the fact that businesses do not ordinarily publicly describe the

details of their networked system sufficient to confirm infringement of any claim of the Klein

Patents.

47.     To secure remedies available for infringement of the Klein Patents, a prudent

course before entering into litigation asserting the patents would be to attempt to make inquiry of

a suspected infringer as to the infringer's likely infringement.  Such a practice would be

consistent with public policy encouraging settlement of civil disputes without litigation. Such a practice would also be useful, and in some cases necessary, to comply with the pre-filing investigation requirements of FED. R. CIV. P. 11.

48.     On information and belief, at the time the FTC engaged in its unlawful and *ultra vires* threatening conduct that is the subject of this Complaint, and up to the present time, the FTC Defendants had conducted no investigation, nor formed any opinion that any of the averments in paragraphs 32-47 above were false, incorrect, or baseless.

## III.   ENFORCEMENT ACTIVITY BY MPHJ'S PREDECESSOR-IN-INTEREST, PROJECT PAPERLESS, LLC

49.     MPHJ acquired the Klein Patents from Project Paperless, LLC, a Virginia limited liability corporation. MPHJ publicly recorded that assignment in the United States Patent and Trademark Office.

50.     In connection with its enforcement of the Klein Patents, Project Paperless was represented by Steven Hill of Hill, Kertscher & Wharton, LLP, an experienced patent litigation firm in Atlanta, Georgia.

51.     Project Paperless concluded that infringement of certain of the Klein Patents was widespread. Given the circumstance that infringement of the Klein Patents was widespread, but in almost all cases not identifiable from publicly available sources, Project Paperless worked with its consultants and counsel to identify those companies likely to have infringing systems.

52.     Project Paperless concluded that businesses having at least 20 employees would be very likely to have an infringing networked scanning system if they were in certain types of businesses, such as professional services. The company also concluded that larger businesses, having hundreds or thousands of employees, were highly likely to employ an infringing system without regard to their particular type of business.

53.     To enforce its patents against a company whom Project Paperless believed was highly likely to be infringing, Project Paperless concluded it should bring suit for infringement. Because infringement by smaller companies could not be confirmed from publicly available sources, Project Paperless concluded it could satisfy its pre-suit investigation required under FED. R. CIV. P. 11 by sending a suspected infringer an infringement inquiry letter consistent with the process approved by the federal courts in cases such as *Arrival Star, Inc. v. Descartes Sys. Group, Inc*., 2004 U.S. Dist. LEXIS 22433 (S.D.N.Y. Nov. 5, 2004); and *Hoffmann-La Roche, Inc. v. Invamed, Inc.*, 213 F.3d 1359 (Fed. Cir. 2000).

54.     Project Paperless also concluded that first sending an inquiry letter would give the recipients who did infringe the opportunity to enter into a license agreement that would address their past infringement and permit continuing use of the technologies described in the Klein Patents, rather than to unnecessarily impose the costs of litigation for patent infringement on an infringer who was willing to voluntarily enter into a license agreement.  Such agreements to resolve past infringements and to permit continuing infringements are a common step for patent owners to take prior to initiating litigation.

55.     As a result, Project Paperless began sending patent infringement inquiry letters with respect to companies having more than 20 employees and having the type of business likely to infringe.  That letter generally described the patents, explained that Project Paperless thought it likely that the recipient had an infringing system, and explained that if the recipient did have an infringing system, that it needed to enter into a license agreement that would address its past infringement, and provided a license for any continuing infringement.  A royalty rate was suggested as being fair for the license agreement being offered. The letter (or a subsequent letter sent thereafter) also explained why the letter was addressed to the recipient, rather than the

manufacturers of any components of networked scanning systems.  The letter further explained
that if the recipient believed it did not have an infringing system, that it should contact Project
Paperless to discuss the recipient's contention of noninfringement.  Counsel for Project Paperless
typically requested various documentation on internal networking and scanning equipment under
a proposed non-disclosure agreement to further assist the discussions with the letter's recipient.

56.     Very few of the recipients of the first letter from Project Paperless responded to
the first letter.

57.     As a consequence, counsel for Project Paperless often prepared and sent a second
letter to the non-responding recipients.  That letter explained to the recipient that Project
Paperless had not received a response to the first letter and asked that the recipient respond.

58.     A few, but not many, non-responding recipients of the first letter responded to the
second letter.  After allowing a reasonable time for any responses to the second letter, Project
Paperless frequently determined that it still had not received a response from companies to whom
it had sent the first letter.

59.     Counsel for Project Paperless prepared a third letter to companies who had not
responded to either the first or the second letter.  In that third letter, transmitting counsel noted
that the recipient had not responded to the prior correspondence.  Counsel again requested that
the recipient respond to the letter or face the risk of suit for patent infringement to address the
recipient's liability for patent infringement.  A draft complaint was attached to further indicate to
the recipient the rights Project Paperless was asserting.  Over time, Project Paperless began
attaching a draft complaint to its second letter rather than as part of a third letter due to the
tendency of recipients of the original second letter not to respond.

60.     A more substantial number of recipients responded to the follow up letters which included a draft complaint.  As with others who responded to any of the letters, counsel for Project Paperless then engaged in discussions with those responding recipients to explain further any questions of validity or infringement of the Klein Patents.  Most of these discussions were conducted with counsel for the recipients.

61.     These discussions led to a number of license agreements or other patent agreements being entered into between Project Paperless and the responding recipients.  All of the agreements at least resolved the civil liability for the past patent infringement by the recipient.

62.     Project Paperless and its counsel formed the opinion that responding recipients who engaged in substantive discussions regarding the validity and infringement of the Klein Patents sufficient to understand the bases for the inquiry regarding the infringement of those patents did have a "positive response" to those discussions, at least in part because they came to understand that Project Paperless' claims were substantive.

63.     After receiving some responses to its letter, and entering into some license agreements on the Klein Patents, Project Paperless revised its letter to indicate to the new recipients that Project Paperless had received a "positive response" to its licensing efforts, in addition to making other related statements.

64.     After engaging in the discussions with the recipients responding to the inquiry letters, and entering into license agreements with some of those recipients, Project Paperless and its counsel felt confirmed in their view that the royalty rates they were offering were fair, even if they were on occasion agreeing to resolve a matter by entering into a license agreement at a lower price than the original asking price.

65.     Project Paperless filed suit against some of the recipients of the letters to enforce the Klein Patents.  All of those suits resulted in license agreements, with the exception of two cases which were dismissed for reasons unrelated to merits of the patent case.

66.     Project Paperless only contacted a company to offer it a license agreement on the Klein Patents where it understood or believed that company was already infringing, or was at least very likely to be infringing, the Klein Patents.  Project Paperless never contacted a company whom it did not believe was infringing the Klein Patents, or likely infringing the Klein Patents, to offer that company a license only for the right to use the technology covered by the Klein Patents in the future.

## IV.     MPHJ'S ACQUISITION OF THE KLEIN PATENTS

67.     In September 2012, MPHJ acquired the Klein Patents from Project Paperless.

68.     MPHJ reviewed the conclusions reached by Project Paperless regarding the likely infringements of the Klein Patents, and conducted its own review of the likelihood of infringement of the Klein Patents, and reached a conclusion that was consistent with the one reached by Project Paperless.  Thus, MPHJ concluded that infringement of the Klein Patents was widespread, and that there were thousands of infringers in the U.S.  MPHJ concluded that infringement was likely for companies having between 20 and 100 employees that were in certain kinds of business, such as professional services.  For substantially larger companies, MPHJ concluded that infringement was likely without regard to a particular company's type of business.

69.     MPHJ also reached the conclusion that there was no single manufacturer, or small group of manufacturers, that would have liability under the Klein Patents for supplying components of infringing networked scanning systems owned and used by companies likely to be infringing.

15

70.     MPHJ also reached the conclusion that public information regarding any specific likely infringer sufficient to confirm that infringement to the degree required by FED. R. CIV. P. 11 was generally not available.

71.     MPHJ reached a conclusion that in these circumstances, the patent enforcement plan carried out by Project Paperless using a series of three letters was an appropriate approach to seeking redress for the infringement by the thousands of companies having between 20 and 100 employees who were infringing the Klein Patents, and that such a process, or one substantially similar to it, was required under FED. R. CIV. P. 11.

72.     To investigate the widespread infringement of the Klein Patents, MPHJ reviewed with a consultant common commercially available data regarding U.S. businesses.  That data typically groups companies into the following sizes: 20-49; 50-99; 100-249; 250-499; 500-999; 1000+ employees.  MPHJ concluded that it was reasonable to begin addressing the infringements of the smaller group of companies, the 20-49 and 50-99 groups, and then successively address the increasingly larger companies.

73.     At least for the companies in the 20-49 employees, and 50-99 employees groups, MPHJ concluded that only businesses of certain types could reasonably be assumed to likely infringe the Klein Patents.  As a result, for companies having less than 100 employees, MPHJ concluded it was reasonable to limit its infringement inquiry to only about five percent of the types of businesses recognized by the standard industrial classification systems, specifically companies identified by 54 of the 996 Standard Industrial Classification ("SIC") Codes. Included in that five percent were companies such as insurance companies, and excluded were companies such as restaurants.

74.    MPHJ concluded that it would be appropriate to again seek redress for the widespread infringement of the Klein Patents by first engaging in the patent enforcement process designed by its predecessor, Project Paperless, with respect to the smaller group (20-49 employees) falling within the narrow subset of business types.

75.    MPHJ expected, after addressing this group, to then engage in patent enforcement with respect to the larger group (50-99 employees), and thereafter to move up to successively larger companies as divided by common industry classifications: 100-249; 250-499; 500-999; and 1000+ employees.

76.    While not required to do so, MPHJ chose to remove from the list of likely infringers of whom it wished to inquire regarding their possible infringement, certain types of businesses, including non-profits and charities.

77.    MPHJ established subsidiaries as exclusive licensees to better organize what MPHJ believed was likely to be a widespread licensing effort, and designated the entities by names to reflect their enforcement responsibilities.

78.    To carry out its initial phase of its patent enforcement effort with respect to the companies having less than 100 employees, MPHJ relied upon and used the first letter most recently sent by Project Paperless, inclusive of certain revisions made by MPHJ.  Among the revisions made by MPHJ to the first letter sent by Project Paperless was a revision to make it clear that MPHJ intended the first letter not to be an accusation of infringement.  To be clear, the first letter sent by MPHJ did not accuse any recipient of infringement.  It instead indicated that MPHJ considered the recipient to "likely" be infringing, but asked the recipient to respond to either confirm or refute MPHJ's belief.  This First Letter sent to the companies believed to have

between 20 and 49 employees can be seen in all of its variations as Exhibits B-1, B-2, B-3, B-4, B-5 and B-6 to this Complaint.

79.     The essential message of this First Letter was an indication that MPHJ felt it likely that the recipient infringed, and was asking the recipient to either confirm the infringement, in which case a license agreement was offered to address the past and ongoing infringement, or instead to deny the infringement.

80.     Each version of this First Letter was emphatically clear that if the recipient did not infringe the patents, MPHJ did not believe the recipient needed any form of a license, and that MPHJ asked only to be so informed so that it could know to discontinue contact.

81.     Any allegation that the First Letter sent by MPHJ was either intended, or could reasonably have been understood by any recipient, to seek patent infringement damages from a recipient who did not infringe is contradicted by the letter itself, and is not supported by any evidence.

82.     MPHJ sent its First Letters to approximately 6,000 companies (not including those letters returned as undeliverable) having 20 to 49 employees and having an identified relevant business type, where those First Letters were sent in successive groups between September 2012 and December 2012.  One additional set was sent on February 5, 2013.

83.     Relatively few of the recipients of the first letter sent by MPHJ responded to the First Letter.  This low response rate was understood by MPHJ to be consistent with the experience of Project Paperless.

84.     As a consequence, MPHJ concluded it would be reasonable and appropriate to carry out the process used by Project Paperless of having its counsel contact non-responding recipients.  Providing this follow up correspondence would provide several benefits.  It would

provide the non-responding recipient a better understanding that MPHJ did intend to pursue its

patent rights.  Further, it would help MPHJ establish in a subsequent patent infringement suit

with respect to that non-responding recipient that MPHJ had made every reasonable effort to

engage in a reasonable pre-suit investigation, by making several attempts to have the recipient

respond to the correspondence which was inquiring as to whether that particular recipient

infringed.  MPHJ, and its counsel, in doing so reasonably were attempting as much as possible to

be sure that suit was not brought against any non-infringing entity.

**V.   MPHJ'S ADOPTION OF PROJECT PAPERLESS' PROCESS OF HAVING ITS COUNSEL SEND FOLLOW UP CORRESPONDENCE TO NON-RESPONDING RECIPIENTS**

85.    In following the process used by Project Paperless of asking its counsel to send a

Second Letter, and then if necessary a Third Letter, to non-responding recipients, MPHJ was

operating consistent with the patent laws, inclusive of the principles established by *Arrival Star*

and *Hoffmann*.

86.    MPHJ retained two different counsel to advise and represent it in conjunction

with its patent enforcement activities.  One counsel was the same counsel used by Project

Paperless in connection with its enforcement of the Klein Patents, Mr. Steve Hill of Hill,

Kertscher & Wharton, LLP of Atlanta Georgia, a long-time experienced patent litigation firm.  In

addition, MPHJ retained Farney Daniels PC, of Georgetown, Texas, also a patent litigation firm

whose partners have long experience in patent litigation and enforcement.

87.    The services for which these counsel were retained, including Farney Daniels PC,

included at least identification of potential infringers, assessment of the patents and of potential

infringement, assistance with ensuring compliance with all obligations of the courts in bringing

any enforcement action on the Klein Patents, assistance with preparing and sending patent notice

or inquiry letters and follow-up correspondence, and in bringing suit for infringement where warranted and appropriate.

88.     MPHJ understood, and believes, that Farney Daniels has substantial experience in these areas of law, and that MPHJ benefits from that experience, and from Farney Daniels' specific experience with the Klein Patents, and MPHJ's patent enforcement efforts.

89.     MPHJ understood, and believes, that Hill, Kertscher and Wharton, LLP has substantial experience in these areas of law, and that MPHJ benefits from that experience, and from Hill, Kertscher and Wharton, LLP's specific experience with the Klein Patents, and MPHJ's patent enforcement efforts.

90.     With respect to those companies who were sent a First Letter as described generally above, and who did not respond to that letter, MPHJ asked Farney Daniels to send that non-responding recipient a follow up letter similar to the Second Letter sent by counsel for Project Paperless, but including certain revisions.  The variations of this Second Letter are included herein as Exhibits C-1, C-2 and C-3 to this Complaint.

91.     The Second Letter principally advised the recipient that it had previously been sent a First Letter by MPHJ and yet no response had been received.  Farney Daniels generally informed the recipient that it should review and respond to that letter because MPHJ did intend to enforce its patent rights.  In that Second Letter, counsel reiterated MPHJ's declaration in the First Letter that if the recipient did not infringe, it should so inform MPHJ or its counsel, so that they could know to discontinue the inquiry, and that such a recipient did not need to enter into any license agreement with MPHJ.

92.    The Second Letter was proper and in conformance with law, and was a reasonable step in a pre-suit investigation regarding patent infringement under *Arrival Star* and *Hoffmann* where the recipient had not responded to a First Letter.

93.    In total, of the companies in the 20-49 group that did not respond to the First Letter, approximately 3,900 were sent Second Letters during the period October 2012 through February 2013.  While the company and its counsel received some additional responses from the sending of this Second Letter by MPHJ's counsel, in general the substantial majority of contacted companies did not respond to either the First Letter or Second Letter.

94.    For those companies that MPHJ had sent a First Letter, and its counsel had sent a Second Letter, and neither MPHJ nor its counsel had received a response from the recipient, MPHJ would have been within its rights under Rule 11 to bring suit for patent infringement against that company.

95.    However, MPHJ strongly preferred to not sue a company who did not have an infringing system, but who had so far not responded to the correspondence.  As a result, MPHJ concluded that it would be a reasonable and proper course to follow the practice of its predecessor-in-interest, Project Paperless, and to have its counsel send to those non-responding recipients a Third Letter.  Further, MPHJ believed that having its counsel send such a Third Letter would permit it to demonstrate even more clearly that it had taken all reasonable steps to satisfy its obligations under Rule 11 before bringing suit, particularly if the situation arose where a non-responding recipient who was sued turned out to be not infringing.  It was this situation that MPHJ and its counsel were focused on avoiding as much as possible.

96.    As a consequence, MPHJ had its counsel, Farney Daniels, send a Third Letter to those companies who had received a First and Second Letter, but who had not yet responded to

21

the correspondence.  As with the Second Letter, Farney Daniels used, with some revisions, the similar letter that had been sent by Project Paperless' counsel.  As was done in the first two letters, the recipient was asked to identify whether it was making use of a system that would infringe a Klein Patent.  In the Third Letter, however, which was sent only to recipients who MPHJ understood to have ignored two prior letters on the topic, MPHJ and its counsel concluded that it would be appropriate to make it more clear to the recipient the consequences of failing to respond.  Accordingly, the recipient was informed that if no response was received within two weeks, litigation would ensue.  To make this more clear, and to make the basis of any such suit more clear, a draft complaint was included.  The variations of this Third Letter are included herein as Exhibits D-1, D-2, D-3, D-4 and D-5 to this Complaint.

97.     Nothing in the Third Letter stated that any ensuing litigation consistent with the letter would necessarily be filed the day after, or even immediately after, the expiration of the two week response period set forth in the letter.

98.     As with both of the prior two letters, the Third Letter made it emphatically clear to the recipient that MPHJ had no interest in seeking a license agreement from any recipient who did not have an infringing system, and only asked that recipient to respond so that MPHJ would know not to bring suit.

99.     In actual practice, companies that did inform MPHJ or its counsel of their non-infringement were not further contacted regarding the patents.

100.     Of the companies in the 20-49 group who were sent a Second Letter but who did not respond, approximately 1,800 Third Letters were sent.  Of these, a little less than half of the recipients of that letter did respond.

101.   By approximately the middle of February 2013, MPHJ had received a significant number of responses from the Third Letter.  From these responses, MPHJ was able to conclude that its belief that the companies who had 20-49 employees and were within a business category identified by the 54 SIC Codes were very likely to have an infringing system.  In general, MPHJ estimated that a significant majority, and perhaps as many as approximately two-thirds of such companies that met this criteria, did have systems that MPHJ considered to be infringing.

102.   However, the responses received by MPHJ to the Third Letter also revealed a meaningful significant number of the responders had less than twenty employees, despite being included in the best available commercial databases as having more than 20 employees.  Because of its effort to not bring suit against a recipient not likely to infringe, MPHJ concluded the prudent and reasonable course was to discontinue its enforcement efforts with respect to companies identified as being in the 20-49 employee group.

VI.   **PATENT INQUIRY WITH RESPECT TO LARGER COMPANIES**

103.   MPHJ then began inquiring about infringement regarding a category of infringers being larger in size, the group having 50-99 employees, but still within the 54 SIC Codes.  MPHJ already had begun to send First Letters to such groups in January 2013 so that it could begin assessing the responses from such larger companies.

104.   During the period January 2013 through May 2013, approximately ten thousand companies in the 50-99 category were sent at least a First Letter by MPHJ.  However, only three groups of these companies, totaling 2800, were sent all three letters.  The first time any companies in the 50-99 group were sent a Third Letter was April 1, 2013.  By early May 2013, MPHJ had received sufficient responses from these companies to estimate that a very large percentage of the companies in the 50-99 category did have a networked scanning system that MPHJ believed likely infringed.  MPHJ had also been able to conclude that virtually all of these

23

companies were of a size sufficient to satisfy the assumption of infringement.  While there were some companies in this group that were found to have less than 50 employees, virtually none were learned to have less than 20 employees.

105.     Thus, by early May 2013, MPHJ had concluded that it had established a basis sufficient to satisfy FED. R. CIV. P. 11 under *Arrival Star* and *Hoffmann*, such that it could direct its counsel to begin filing suit.  By the middle of May, MPHJ had concluded that it would cease sending any further correspondence, and would focus upon bringing suit against those companies in the 50-99 category who already had received Third Letters and not responded, or who had responded in a manner that confirmed infringement and failed to resolve the infringement dispute.

106.     By the middle of May, MPHJ was working with its counsel to prepare suits against a first portion of the companies identified in the preceding paragraph, with the expectation that suits would be filed by the end of May or early June.

## VII.    DEVELOPMENTS WHICH DELAYED BRINGING SUIT

107.     As MPHJ was preparing to bring its first patent infringement suits under the Klein Patents, MPHJ was unexpectedly sued by the Attorney General for the State of Vermont.  MPHJ learned of this suit on May 22, 2013.  That suit alleged that the correspondence of the company violated Vermont consumer protection laws.

108.     The Vermont suit is without basis in fact or law.  Further, the Vermont suit is preempted under the First and Fourteenth Amendments.  The case has been removed to the U.S. District Court for the District of Vermont, and jurisdictional motions are pending in that Court. One motion is a Motion to Dismiss for Lack of Personal Jurisdiction, on which a different federal court, the U.S. District Court for the District of Louisiana, has already agreed with MPHJ.

109.    On May 23, 2013, Petitions for Review were filed with respect to two of the Klein Patents by Xerox, Ricoh and HP, and MPHJ learned of those within a day or two of their filing. Those Petitions for Review included a substantial amount of prior art not previously known to MPHJ or its counsel.

110.    On May 31, 2013, MPHJ reached final agreement with Canon, Inc. regarding a license and a covenant not to sue with respect to the Klein Patents.  The Canon Agreement acknowledged that a license to Canon would not provide a license to its customers under the patent laws, and thus separately included a covenant not to sue by MPHJ with respect to any business whose networked scanning system used only Canon scanners or MFPs.

111.    As a result of these separate events occurring at the end of May, MPHJ concluded that it needed to evaluate the potential consequences and responses to the Vermont suit and the Petitions for Review.  It concluded that it could not bring suit for patent infringement until its counsel became satisfied that the prior art submitted with the Petitions for Review did not present a case for invalidity previously unknown to MPHJ.  Further, it concluded that the Canon Agreement meant that as much as twenty percent of the companies otherwise infringing the Klein Patents might now have the benefit of the immunity from suit.

112.    Accordingly, beginning in early June 2013, MPHJ concluded it would be appropriate and reasonable to defer filing suits until it could evaluate these factors, and that it would be appropriate to contact every company who had received a letter from its counsel (at least a second or third letter) and update them as to these developments.  That letter, which in its several variations is referred to herein as the Fourth Letter, generally informed the recipient of the Canon Agreement, the filings of the Petitions for Review, and explained that while the company was reviewing the effect of these developments on its licensing effort, and considering

other aspects of its licensing effort, the recipient could consider the matter closed unless it heard

back from MPHJ or its counsel in writing.  Variations of the Fourth Letter are attached as

Exhibits E-1, E-2, E-3 and E-4 to this Complaint.

## VIII.   SUBSEQUENT DEVELOPMENTS LEADING TO FURTHER DELAY IN FILING SUIT

113.    Following the sending of the Fourth Letter, there were a number of developments

that occurred in rapid succession during the Summer and Fall of 2013 that further led to MPHJ's

delay in bringing suit.

114.    A somewhat short delay of a few months was caused by the provision to MPHJ of

the prior art included in the Petitions for Review.  However, during the Summer of 2013, counsel

for MPHJ concluded that the additional prior art did not establish a case for invalidity for the

Klein Patents sufficient to overcome the presumption of validity provided by Title 35.

115.    This conclusion was at least indirectly corroborated by the actions of the U.S.

Patent Office in connection with that new prior art in its consideration of a then pending

continuation application related to the Klein Patents.  MPHJ's counsel had properly submitted all

of this new prior art to the Patent Office so that the Office could consider that art in its evaluation

of a continuation patent application then pending before the Office.  On July 18, 2013, after

having reviewed all of this prior art submitted in connection with the Petitions for Review, the

U.S. Patent Office issued the '173 Patent to MPHJ.  The issuance of the '173 Patent to MPHJ

serves to reasonable corroborate the belief of MPHJ and its counsel that the Klein Patents are

valid, separate and apart from the fact that they are entitled to be presumed valid under the

federal law.

116.    MPHJ had concluded in early June that because the issuance of that continuation

application was likely, that it would be prudent to wait until that patent issued before deciding

how and when to re-initiate litigation activity, which had otherwise been suspended as a result of the Fourth Letter.

117.    However, much more substantive delays were incurred as the result of the numerous baseless actions taken by several state Attorney Generals, in addition to the FTC, all inspired by the filing of the suit by the Vermont Attorney General.  Having become aware of the suit brought by Vermont, and the publicity and local political favor garnered by the Vermont Attorney General as a result of its suit, a number of other state Attorney Generals in June and July served Civil Investigative Demands upon MPHJ.  Counsel for MPHJ was required to spend significant time and resources during the Summer of 2013 responding to these various inquiries, which extended into the Fall.

118.    In July, the FTC Defendants followed the trend of the Attorney Generals, and served a subpoena on MPHJ.  However, the FTC Defendants went a step further, and also served a subpoena upon MPHJ's counsel, Farney Daniels

119.    The most extreme misconduct in this regard occurred on July 18, 2013, when the Attorney General for the State of Nebraska issued a Cease and Desist Order against MPHJ's counsel, ordering it to cease representing MPHJ with respect to any patent enforcement activity related to any company having operations in Nebraska.  The Order was sufficiently broad that it also purported to prevent Farney Daniels from representing any client in federal court in a patent matter affecting a company having operations in Nebraska.

120.    One of Farney Daniels' clients adversely affected by that Order, Activision TV, Inc. filed suit under 42 U.S.C. § 1983, alleging that the Order by the Nebraska Attorney General was unconstitutional and violated Activision's constitutional rights of choice of counsel. Activision sought a preliminary injunction against enforcement of the Order.

121.    On September 23 and 30, 2013, the U.S. District Court for the District of Nebraska issued preliminary injunctions against the Nebraska Attorney General finding that Activision TV, Inc. had shown a likelihood of success in proving a constitutional violation and enjoining the Nebraska Attorney General from enforcing its Order against Farney Daniels as it related to Activision.

122.    In October 2013, over the Nebraska Attorney General's vigorous opposition, the U.S. District Court for the District of Nebraska granted MPHJ's motion to intervene in the Activision case, seeking substantially the same relief as Activision.

123.    In October 2013, MPHJ submitted a motion that the Nebraska Attorney General Order was without basis in law, was in violation of MPHJ's constitutional rights, and should be enjoined.  A forty-page memorandum, and multiple declaration and exhibits, were submitted explaining that MPHJ's conduct was lawful and constitutionally protected.

124.    In response, in November 2013, the Nebraska Attorney General completely withdrew his Order and made no attempt to support or justify any of his baseless assertions against MPHJ whatsoever.  Further, he offered to submit to a permanent injunction against repeating this conduct.

125.    None of the state Attorney Generals who have investigated or inquired into MPHJ's conduct have suggested or implied that MPHJ's counsel has done anything improper, with the exception of the Nebraska Attorney General, who has since withdrawn his unconstitutional Cease and Desist Order.  None of the Attorney Generals have taken the position that they have the right under the law to prevent MPHJ or its counsel from making Rule 11 investigation inquiries consistent with *Arrival Star* and *Hoffmann*.  Other than the Nebraska Attorney General, only the FTC has threatened to take action against MPHJ's counsel, and only

the FTC has taken the position that they can interfere with conduct MPHJ is required to engage in by the federal courts in order to satisfy Fed. R. Civ. P. 11 in conjunction with patent litigation.

## IX.    RESUMPTION OF SUITS AND ADDITIONAL ACTIVITY

126.    On November 19, 2013, MPHJ and its licensee brought suit for patent infringement in the Eastern District of Texas against a recipient who had received communications that have been accused by the FTC Defendants.

127.    During the Fall of 2013, MPHJ was also negotiating an agreement with Sharp Corporation similar to the agreement it has entered into with Canon.  That agreement was completed in late November 2013.

128.    On January 3, 2014, MPHJ brought suit for patent infringement in the District of Delaware against certain companies for whom infringement could be identified from publicly available sources, and who had therefore not received communications that have been accused by the FTC Defendants.

## X.    CONDUCT OF THE FTC DEFENDANTS

129.    In July 2013, the FTC served a subpoena on MPHJ and its counsel, seeking certain information regarding MPHJ's patent-related correspondence and enforcement activity. MPHJ and its counsel explained to the FTC at that time that the activity was lawful, required under Federal Circuit law, and entirely consistent with both patent law and other federal law, and permitted under the U.S. Constitution and protected by *Noerr-Pennington* immunity.

130.    In August, MPHJ and its counsel timely responded to the subpoenas of the FTC Defendants.  Counsel retained by both MPHJ and Farney Daniels had conversations with representatives of the FTC Defendants at that time to explain the lawful and proper bases for MPHJ's patent enforcement activity.  Farney Daniels had similar conversations with representatives of the FTC Defendants prior to that time.

131.    On December 17, a representative for the FTC Defendants provided a draft complaint which it alleged it intended to file against MPHJ, its owner and managing member, Farney Daniels, and the managing shareholder of Farney Daniels.  A copy of that draft complaint is attached as Exhibit F to this Complaint.  The threat was made that unless the entities named in the draft complaint agreed to terms of the draft Consent Judgment (which, assuming the FTC even had jurisdiction here, sought relief far beyond what the FTC could obtain by litigating in federal court and securing a judgment, and starkly violated the patent laws and the First Amendment), that the FTC would file the suit imminently.

132.    The FTC's threatened suit is based upon an allegation that the conduct of MPHJ and its counsel violated Section 5 of the FTC Act.  On information and belief, the FTC Defendants intend to persist in their unconstitutional and *ultra vires* conduct, as represented by the threatened suit and the insistence that the accused parties enter into agreements that improperly interfere with the practice of law, and unlawfully impede the exercise of the parties' lawful and constitutionally protected patent enforcement rights, and improperly interfere with MPHJ's constitutional right to choice of counsel.

133.    As a result, to secure its rights under the U.S. Constitution and federal law, and to stop the improper and *ultra vires* interference with and impingement of MPHJ's lawful and constitutionally protected patent enforcement rights, MPHJ is forced to file the present suit.

## COUNTS

134.    The relief that is requested by this suit, which is set forth in more detail below, is warranted because the actions of the FTC Defendants are in violation of the U.S. Constitution, federal law, the FTC Defendant's jurisdictional authority, and the relevant facts.

135.    Because the FTC Defendants' imminent and extrajudicial threats unlawfully impede MPHJ in the exercise of its First Amendment rights to enforce its patents, and unlawfully interfere with MPHJ's constitutional right to choice of counsel, MPHJ has standing to bring this declaratory judgment action seeking full resolution of the dispute between the parties and for further relief as set forth below.

136.    A justiciable and immediate controversy exists for which MPHJ has standing and ripeness, as to whether the conduct of MPHJ or any of its agents or counsel violated any federal law in making any communications related to patent enforcement of the Klein Patents, and whether such conduct is otherwise constitutionally protected, and whether such conduct is even within the jurisdiction of the FTC.

### COUNT I
### The FTC Defendants Lack Jurisdiction Over MPHJ's Conduct

137.    The FTC Defendants lack jurisdiction and authority over MPHJ's accused patent enforcement activity and their conduct is *ultra vires*.

138.    The FTC Defendants have threatened to sue MPHJ, its licensees, agents and counsel on the basis of their purported authority under 15 U.S.C. § 45 (also referred to as "Section 5 of the FTC Act").

139.    15 U.S.C. § 45(a) provides that the FTC Defendants have authority to declare unlawful and to prohibit "unfair or deceptive acts or practices in or affecting commerce."

140.     The patent enforcement activity of MPHJ, its licensees, agents and counsel upon which the FTC Defendants have based their threat to bring suit do not constitute acts or practices in or affecting commerce.

141.     15 U.S.C. § 45(n) expressly proscribes and limits the authority and jurisdiction of the FTC Defendants and in a manner that explicitly prohibits the FTC Defendants from having authority or jurisdiction over any of the patent enforcement activity of MPHJ, its licensees, agents or counsel upon which the FTC Defendants have based their threat to sue.

142.     15 U.S.C. § 45(n) provides in pertinent part: "The Commission shall have no authority…to declare unlawful any act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or competition."

143.     Each and every recipient of correspondence from MPHJ, its licensees or its counsel was reasonably suspected of having committed a civil tort against MPHJ by the infringement of its patents.

144.     The correspondence from MPHJ, its licensees or its counsel was correspondence directed at confirming the existence of a civil tort, and if such a tort had occurred or was ongoing, seeking a resolution between two private parties with respect to that tort.  In this particular situation, the likely resolution would have been the entry by the recipient into a license agreement with MPHJ and/or its licensees that provided a release for past infringement and a license for ongoing infringement.

145.    The correspondence from MPHJ, its licensees or its counsel did not offer any good or service for sale.  It did not offer a license for sale.  Likewise any license entered into by a letter recipient did not constitute a sale.

146.    Further, no correspondence from MPHJ, its licensees or counsel, was sent to any recipient not believed to likely be infringing the patents, and to be committing a civil tort in need of remediation.

147.    An inquiry such as MPHJ's regarding suspected infringement, and the offer of a license agreement to redress infringement if occurring, is not the offer of any good or service for sale, nor an act "in commerce" within the meaning of Section 5 of the FTC Act.

148.    The recipients of any communications from MPHJ, its licensees or its counsel were not "consumers" within the meaning of Section 5 of the FTC Act.

149.    Each and every communication from MPHJ, its licensees or counsel made it expressly clear that if the recipient did not infringe the Klein Patents, that no license was needed. Further, the communications made clear that in such a circumstance, a recipient need only inform MPHJ, its licensees or counsel of its noninfringement and information sufficient to confirm that noninfringement, and that, as a result, further communication with the recipient would cease.

150.    The communications from MPHJ, its licensees or counsel inquiring as to possible infringement, and making clear that nothing was sought from any recipient who did not infringe, did not cause, and would not have been likely to cause any injury to a consumer, even assuming that a recipient of such communications could be considered a consumer.

151.    Section 5(n) of the FTC Act further makes it clear that the FTC Defendants lack authority and jurisdiction to declare an act unfair where the allegedly substantial injury to the

consumer was reasonably avoidable by the consumer.  Here, the FTC Defendants have alleged

that the accused communications by MPHJ, its licensees and counsel constituted "threats to sue

without an intent to sue" and that, as such, they caused injury to a consumer.  However, the

communications make clear that any allegedly threatened suit reasonably could be avoided

simply by responding to the inquiry regarding infringement.

152.    The FTC Defendants lack authority and jurisdiction at least because any recipient

who did not infringe reasonably could easily avoid any possible injury by simply so informing

MPHJ, its licensees or counsel of that fact.  When informed by any recipient of noninfringement,

MPHJ, its licensees and counsel consistently ceased further contact.

153.    The FTC Defendants similarly lack authority and jurisdiction at least because any

recipient who did infringe reasonably could easily avoid any possible injury by simply entering

into the proffered license agreement, or a negotiation for the same.  Entering into a license

agreement to address at least a recipient's past infringement of U.S. patents cannot be considered

"injury" cognizable under Section 5(n) of the FTC Act.

154.    Even if the communications of MPHJ, its licensees and counsel could be

considered unfair and to have caused injury to consumers that was not reasonably avoidable,

there are countervailing benefits which satisfy Section 5(n) sufficient to deprive the FTC

Defendants of authority or jurisdiction over the accused conduct.

155.    Specifically, the communications of MPHJ, its licensees and counsel were

specifically designed and intended to satisfy the pre-suit investigation requirements required by

the federal courts pursuant to FED. R. CIV. P. 11.  It would be against public policy to declare

such correspondence an unfair act within the authority and jurisdiction of the FTC Defendants.

156.    Further, the federal courts have consistently declared that there is a strong public policy in favor of permitting patent owners to enforce their patents, and the FTC Defendants' attempt to declare the communications of MPHJ, its licensees and counsel as being unfair under Section 5 would be inconsistent with that public policy.

157.    Further, the federal courts have consistently declared that there is a strong public policy in favor of settling civil disputes between private parties, including the inquiry regarding and the resolution of patent infringements by agreements and/or licenses entered into without the need for filing suit.  The FTC Defendants' attempt to declare the communications of MPHJ, its licensees and counsel as being unfair under Section 5 would be inconsistent with that public policy.

158.    On information and belief, the FTC Defendants have not proposed or promulgated any guidelines or rules relevant to regulating the sending of patent enforcement communications, or patent infringement inquiry letters relevant to satisfying FED. R. CIV. P. 11, at least where the relevant patents are not related to any standard-setting organizations or agreements.  On at least this basis, inclusive of other bases recited in this Complaint, the conduct of the FTC Defendants is arbitrary and capricious, and in violation of the due process rights of MPHJ.

159.    On information and belief, the FTC Defendants have never, prior to making the threats against MPHJ and its counsel, sought to enforce Section 5 of the FTC Act in the situation involving patent enforcement, at least where the relevant patents are not related to any standard-setting organizations or agreements.

160.    On information and belief, the FTC Defendants, at present, have not been given authority by Congress to regulate patent enforcement activity, and certainly not the type of patent enforcement activity at issue in this case.  While the grant of such authority is currently being

considered by Congress, at all times relevant to this Complaint, Congress had not granted any such authority to the FTC.  As such, the FTC Defendants' conduct in connection with the activities relevant to this Complaint has been entirely *ultra vires*.

**COUNT II**
**MPHJ's Conduct Is Protected By The First Amendment**

161.    MPHJ's accused patent enforcement activity is protected by the First Amendment under the *Noerr-Pennington* doctrine.

162.    The FTC Defendants' threatened actions with respect to MPHJ, its licensees and counsel willfully ignore and are in violation of the First Amendment.

163.    A patent owner, and any relevant exclusive licensee, has a First Amendment right to provide notice of its patents to third parties.

164.    A patent owner, and any relevant exclusive licensee, has a First Amendment right to provide notice to a third party infringer of that third party's infringement of the relevant patents.

165.    The communications represented by the First, Second and Third Letters sent by MPHJ and/or its counsel and accused by the FTC Defendants represent a lawful exercise of the rights that a patent owner has under the First Amendment to: provide notice of the patent rights to third parties, including to infringers regarding their infringement and to potential infringers regarding their potential infringement; make inquiry of potential infringement; offer a license to address past and ongoing infringement; threaten suit for infringement; and to threaten suit for infringement even if there is no present intention to bring such suit.  To resolve any contention to the contrary by the FTC Defendants would require resolution of substantial and material issues of patent law under Title 35.

166.    The communications of MPHJ, its licensees and its counsel accused by the FTC Defendants are protected by the First Amendment unless the FTC Defendants can plead and prove that such conduct as represented by the accused communications was objectively baseless and subjectively baseless as to its central message of patent infringement.

167.    Under the U.S. Constitution and U.S. patent laws, even federal law related to unfair competition, including but not limited to 15 U.S.C. §§1, 2, 45, 1117 & 1125, the FTC Defendants may not impair MPHJ's rights as a U.S. patent owner to exercise its notice, inquiry, licensing and enforcement rights, and rights to threaten infringement, unless it is shown that the actions of the MPHJ or its agents were objectively baseless and subjectively baseless.

168.    In the draft complaint which the FTC Defendants provided to MPHJ, the FTC Defendants did not plead that any of the accused communications were objectively baseless.

169.    In the draft complaint which the FTC Defendants provided to MPHJ, the FTC Defendants did not plead that any of the accused communications were subjectively baseless.

170.    On information and belief, the FTC Defendants have not obtained the information that would be required under the law to form a reasonable belief as to whether the accused communications were objectively baseless.

171.    On information and belief, the FTC Defendants have not obtained the information that would be required under the law to form a reasonable belief as to whether accused communications were subjectively baseless.

172.    On information and belief, the FTC Defendants, at any time up until at least the filing of this Complaint, have not conducted an analysis that would be sufficient under the applicable law to reach a conclusion as to whether the accused communications were objectively baseless.

173.   On information and belief, the FTC Defendants, at any time up until at least the filing of this Complaint, have not conducted an analysis that would be sufficient under the applicable law to reach a conclusion as to whether the accused communications were subjectively baseless.

174.   The FTC Defendants must, as part of any affirmative assertion of a violation of Section 5 by MPHJ, its licensees or counsel, plead and prove in detail that such conduct was objectively baseless and subjectively baseless.  Indeed, on information and belief, on the basis of representations made by a representative of the FTC Defendants, the FTC Defendants affirmatively have conceded that they have no information sufficient to make such an allegation.

175.   On information and belief, any pleading by the FTC Defendants that any conduct of MPHJ, its licensees or counsel was objectively baseless and subjectively baseless would be without reasonable basis in fact or in law, and would be in violation of FED. R. CIV. P. 11.

176.   It is not objectively and subjectively baseless to take action in connection with the MPHJ Patents consistent with the assumption that such patents are infringed by at least some commonly used networked scanning systems operated by at least a substantial portion of the types of businesses who were recipients of the accused correspondence.  The FTC Defendants have no evidence to support an assertion otherwise.

177.   On information and belief, prior to asserting the threat to sue MPHJ and its counsel, the FTC Defendants had no lawful basis to conclude that any recipient of a First Letter, Second Letter, or Third Letter did not likely infringe at least one claim of the Klein Patents.

178.   Whether it is objectively and subjectively baseless to engage in conduct consistent with a belief related to infringement, or suspected infringement, in connection with the MPHJ

Patents, requires resolution of patent claim construction issues, and patent infringement issues, which are substantial and material issues of the patent law under Title 35.

179.    It is not objectively and subjectively baseless to take action in connection with the MPHJ Patents consistent with the assumption that such patents are not invalid.  The FTC Defendants have no evidence to support an assertion otherwise.

180.    Whether it is objectively and subjectively baseless with respect to taking action in connection with respect to the MPHJ Patents consistent with an assumption that such patents are not invalid requires resolution of patent claim construction issues, and patent validity issues, which are substantial and material issues of the patent law under Title 35.

181.    On information and belief, prior to asserting the threat to sue MPHJ and its counsel, the FTC Defendants had not formed an opinion that any of the claims of the Klein Patents were invalid, taking into account the factors that must, in law, be considered in reaching such a conclusion.

182.    On information and belief, prior to asserting the threat to sue MPHJ and its counsel, the FTC Defendants had not obtained a copy of the prosecution history of any of the Klein Patents.

183.    On information and belief, prior to asserting the threat to sue MPHJ and its counsel, the FTC Defendants had not obtained a copy of the prior art considered by the U.S. Patent Office with respect to the Klein Patents during the prosecution of the patent applications which led to those patents.

184.    On information and belief, prior to asserting the threat to sue MPHJ and its counsel, the FTC Defendants did not construe any claim of any of the Klein Patents in a manner required by U.S. Patent Law.

185.     On information and belief, prior to asserting the threat to sue MPHJ and its counsel, the FTC Defendants had no lawful basis to conclude that any claim of the Klein Patents was invalid.  To resolve this question would require resolution of substantial and material issues of patent law under Title 35.

186.     On information and belief, prior to asserting the threat to sue MPHJ and its counsel, the FTC Defendants had no lawful basis to conclude that a fair price for a royalty for past patent infringement and an ongoing license to the Klein Patents would be less than the amount proposed by MPHJ.  To resolve this question would require resolution of substantial and material issues of patent law under Title 35.

## COUNT III
### The FTC Defendants' Conduct Violates The Separation Of Powers Doctrine

187.     The FTC Defendants' threat to bring action against conduct engaged in to satisfy the pre-suit investigation requirements of the federal courts is a violation of the separation of powers doctrine and an impingement upon the rights of the federal courts under Article III of the U.S. Constitution.

188.     To bring suit for infringement against an infringer, the Federal Rules of Civil Procedure require, as a predicate, that an adequate pre-suit investigation be conducted to confirm the infringement.

189.     Where a Likely Private Infringer's infringing product or process cannot be definitively ascertained from publicly available sources, a patent owner, and any relevant exclusive licensee, may satisfy its pre-suit investigation obligation under Rule 11 by communicating to the Likely Private Infringer an inquiry regarding the suspected infringement.

190.    A Rule 11 inquiry, such as described in the prior paragraph, may, by law, include asking the Likely Private Infringer whether it denies any infringement, and in the event of such denial, may seek such support for such denial as may be reasonably required for confirmation.

191.    In the event a Likely Private Infringer refuses to respond to an inquiry as described in the prior paragraph, filing suit for infringement would not then violate Rule 11.

192.    The communications by MPHJ, its licensees or counsel accused by the FTC Defendants of being unfair were a proper means of satisfying the pre-suit investigation requirement imposed by the federal courts pursuant to FED. R. CIV. P. 11.

193.    In the case of the companies having 20-100 employees, the inquiry posed by MPHJ, its licensees or counsel to certain recipients would have been required by the federal courts under FED. R. CIV. P. 11 to satisfy the pre-suit investigation requirement of that rule.  The FTC Defendants have no basis to contend otherwise.

194.    The threats made by the FTC Defendants with respect to the communications by MPHJ, its licensees and counsel, and the attempt to have such communications declared to be in violation of Section 5, unlawfully impede and interfere with the efforts of MPHJ, its licensees and counsel to satisfy the requirements of FED. R. CIV. P. 11.  As such, the conduct of the FTC Defendants violates the Separation of Powers Doctrine, and unconstitutionally impedes upon and interferes with the rights of the federal courts under Article III of the U.S. Constitution.

195.    Nothing in Section 5 of the FTC Act, or any other federal law, gives the FTC Defendants any authority or jurisdiction sufficient to permit the FTC Defendants to interfere with, or impede, activity engaged in to satisfy pre-suit investigation requirements of the federal courts.

196.     Even if the FTC Defendants had authority or jurisdiction of the nature described in the preceding paragraph, it would be unlawful and unconstitutional to exercise such authority or jurisdiction in violation of the First Amendment where the FTC Defendants lack any evidence or basis to contend that the applicable *Noerr-Pennington* immunity does not apply.

### COUNT IV
**The FTC Defendants Cannot Justify Their Conduct On The Basis That MPHJ's Conduct Violates Section 5 Because It Constituted A "Threat To Sue" Without "Intent To Sue" Because Such Conduct Is Permitted By Law And Protected By The First Amendment, And Further, The FTC Defendants Lack Any Evidence That Such Conduct Occurred**

197.     The FTC Defendants cannot justify their conduct on the basis that MPHJ's conduct violates Section 5 because it constituted a "threat to sue" without "intent to sue" because such conduct is permitted by law, is proper, and in these circumstances is protected speech under the First Amendment.

198.     The FTC Defendants cannot justify their conduct on the basis that MPHJ's conduct violates Section 5 because it constituted a "threat to sue" without "intent to sue" because the FTC Defendants lack any evidence sufficient to prove that MPHJ made any communication that could be construed as a threat to sue, where at the time MPHJ did not intend to sue.

199.     The FTC Defendants have threated to sue MPHJ, its licensees and counsel on the grounds that certain of their communications comprised a "threat to sue without intent to sue." Such an allegation is false.

200.     In every single instance, MPHJ, its licensees and its counsel did intend to sue in any instance where alleged "threat to sue" was made.  The FTC Defendants lack any evidence to the contrary.

201.     In any instance where MPHJ, its licensees and counsel conveyed any alleged "threat to sue," any failure to bring suit was reasonable and lawfully justified under the circumstances.

202.    Under U.S. patent law, and the U.S. Constitution and other federal law, it is consistent with public policy for MPHJ to attempt to first license the patents without bringing suit.

203.    Under U.S. patent law, and the U.S. Constitution and other federal law, MPHJ's patent rights include the right to elect to refrain from filing suit.

204.    Under U.S. patent law, and the U.S. Constitution and other federal law, MPHJ may threaten suit, but then delay suit or choose not to sue.

205.    Under U.S. patent law, and the U.S. Constitution and other federal law, MPHJ, on the circumstances presented here, would have been entitled to threaten suit while having no intention to bring suit.  Further, such a threat would not have been material to the essential or central message of the communication, which was an inquiry regarding possible patent infringement and an offer to resolve past and ongoing infringement by a license agreement.

206.    On information and belief, prior to making their threats to bring suit against MPHJ and its counsel, the FTC Defendants had no basis to conclude whether MPHJ and its exclusive licensees had bona fide reasons for not yet bringing suit.

207.    On information and belief, prior to making their threats to bring suit against MPHJ and its counsel, the FTC Defendants had no basis to conclude that under U.S. patent law and the U.S. Constitution, that a U.S. patent owner is obligated to bring suit if it has threatened to bring suit.

208.    On information and belief, prior to making their threats to bring suit against MPHJ and its counsel, the FTC Defendants had no basis to conclude whether any reasons MPHJ and its exclusive licensees may have had for not yet bringing suit were objectively baseless and subjectively baseless.

## COUNT V

**The FTC Defendants Cannot Justify Their Conduct On The Basis That MPHJ's Communications Included Inaccurate Statements, Because Such Conduct Is Lawful, And Protected By The First Amendment, And Further The FTC Defendants Lack Any Evidence That Any Such Inaccurate Communications Occurred**

209.    The FTC Defendants cannot justify their conduct on the basis that MPHJ's communications included inaccurate statements, because MPHJ's conduct is lawful, and protected by the First Amendment.

210.    The FTC Defendants cannot justify their conduct on the basis that MPHJ's communications included inaccurate statements, because the FTC Defendants lack any evidence that any such inaccurate communications occurred.

211.    The FTC Defendants have threated to sue MPHJ, its licensees and counsel on the grounds that certain of their communications comprised allegedly inaccurate statements.  Such allegedly inaccurate statements included a statement regarding whether there had been a "positive response" to prior licensing activity, and a characterization of a proposed royalty rate as "fair."  Such accused statements cannot constitute the basis of any claim by the FTC Defendants at least because they were not material to the central message of the communication.

212.    The statements accused of being inaccurate or deceptive further cannot provide the basis for any claim by the FTC Defendants of a violation of Section 5 because they were not inaccurate or deceptive.  The FTC Defendants have no evidence to the contrary.

213.    In any instance where MPHJ, its licensees and counsel, conveyed any alleged inaccurate or deceptive statement, the entity communicating such statement believed the statement to be true at the time it was made.  At least for this reason, the communications could not be proven "subjectively baseless," even if they were otherwise considered material, and therefore cannot provide the basis for any claim of a violation of Section 5 of the FTC Act or any other federal law, at least because of the protections afforded by the First Amendment.

214.    Any allegation made by the FTC Defendants that their conduct is justified on the basis that MPHJ communicated inaccurate statements must fail where, as here, the FTC Defendants have no basis to assert that such conduct was objectively baseless and subjectively baseless.

215.    On information and belief, prior to asserting the threat to sue MPHJ and its counsel, the FTC Defendants had no lawful basis to conclude that any statement of the First Letter, including regarding whether there had been a "positive response" to licensing efforts related to the Klein Patents, was objectively and subjectively baseless at the time such letter was sent.

216.    On information and belief, prior to asserting the threat to sue MPHJ and its counsel, the FTC Defendants had no lawful basis to conclude that any statement of the First Letter, including regarding whether there had been a "positive response" to licensing efforts related to the Klein Patents, was material to the essential message of the letter.

217.    Under U.S. patent law, the U.S. Constitution and other federal law, it is not unlawful for MPHJ to offer a patent license at an opening offer price that is higher than the patent owner may ultimately be willing to accept.

218.    Under U.S. patent law, the Federal Rules of Civil Procedure, the U.S. Constitution and other federal law, MPHJ may send patent notice, patent licensing, and patent inquiry letters to a recipient, without first satisfying the same level of investigation as is required under Rule 11 for bringing suit.

## COUNT VI
### The FTC Defendants Have Interfered with MPHJ's
### Constitutional Right to Choice of Counsel

219.    The FTC Defendants' conduct comprises an unconstitutional interference with MPHJ's right to choice of counsel under the First Amendment.

220.    Under the First Amendment, MPHJ has a constitutional right to its choice of counsel.

221.    Farney Daniels PC is a law firm whose partners have extensive experience in patent litigation, and are respected nationwide for their practice of law in that area.  MPHJ reasonably believes it benefits in its efforts to enforce its patents by being represented by Farney Daniels PC.

222.    MPHJ has a right by the First Amendment to choose Farney Daniels PC as its counsel with respect to its patent enforcement activities.

223.    By engaging in *ultra vires* conduct against Farney Daniels PC, the FTC Defendants are impermissibly and unconstitutionally interfering with MPHJ's right to choice of counsel.

224.    The FTC Defendants' interference with MPHJ's constitutional right to choice of counsel is further unlawful, unconstitutional, outside their authority or jurisdiction, and otherwise *ultra vires* at least for the additional reasons stated in Counts VI(A – C) below.

## COUNT VI(A)
### The Assertion By The FTC Defendants Of A Threat To Sue MPHJ's Counsel For Representing A Patent Owner Engaged In Patent Licensing Activity Is Conduct Not Within Their Authority Or Jurisdiction And Is Thus *Ultra Vires*

225.    The assertion by the FTC Defendants of a threat to sue MPHJ's counsel for representing a patent owner engaged in patent licensing activity is conduct not within their authority or jurisdiction and is thus *ultra vires*.

226.    In representing a client engaged in patent enforcement activity, an attorney or law firm is not engaging in commerce as that term is used in Section 5 of the FTC Act, and the FTC Defendants do not have authority or jurisdiction over such conduct with respect to the attorney or

law firm, unless Congress has expressly provided otherwise and to do so would not be in violation of the free speech protections of the First Amendment.

227.    The only conduct by MPHJ's counsel on which the FTC Defendants have purported to base their threat to sue against that counsel is the communication by that counsel of MPHJ's intention to bring suit in the event a recipient of a letter failed to respond to the third patent inquiry that had been forwarded to that recipient, an action which MPHJ would have been permitted to take under the *Arrival Star* and *Hoffmann* cases.  When communicating MPHJ's intentions in this regard, its counsel was not independently engaged in commerce and cannot be subject to the FTC Defendants' authority or jurisdiction.

228.    The FTC Defendants' interference with MPHJ's right to choice of counsel by making threats against MPHJ's counsel is *ultra vires* and outside the FTC Defendants' authority and jurisdiction because it is barred under 15 U.S.C. §45(n).

229.    On information and belief, the FTC Defendants have extended their threat to bring suit against MPHJ's counsel at least in part for the purpose of depriving MPHJ of the benefit of its counsel experienced in the relevant issues.

**COUNT VI(B)**
**The Assertion By The FTC Defendants Of A Threat To Sue MPHJ's Counsel,**
**And Their Demands Constitute An Unauthorized, Unlawful, And Unconstitutional**
**Attempt To Regulate The Practice Of Law**

230.    The assertion by the FTC defendants of a threat to sue MPHJ's counsel, and their demands constitute an unauthorized, unlawful, and unconstitutional attempt to regulate the practice of law.

231.    In representing a client engaged in patent enforcement activity, an attorney or law firm is not engaging in commerce as that term is used in Section 5 of the FTC Act, and the FTC

Defendants do not have authority or jurisdiction over such conduct with respect to the attorney or law firm.

232.    The only conduct by MPHJ's counsel on which the FTC Defendants have purported to base their threat to sue against that counsel is the communication by that counsel of MPHJ's intention to bring suit in the event a recipient of a letter failed to respond to the third patent inquiry that had been forwarded to that recipient, an action which MPHJ would have been permitted to take under the *Arrival Star* and *Hoffmann* cases.  When communicating MPHJ's intentions in this regard, its counsel was not independently engaged in commerce and cannot be subject to the FTC Defendants' authority or jurisdiction.  Further, the federal courts have already ruled the FTC has no authority to regulate the practice of law, and such ruling would apply to these circumstances.  Congress, also, has declined to give the FTC such authority except in certain specific instances, such as certain types of debt collection which do not apply here.

233.    In their demands to MPHJ's counsel to resolve the threats made by the FTC Defendants, the FTC Defendants have demanded that MPHJ's counsel consent that it will not represent a client who wishes to threaten suit unless there is an intent to sue.  Because federal law expressly permits patent owners to engage in exactly that activity in at least some circumstances, the unlawful threats and conduct of the FTC Defendants impermissibly seek to regulate the practice of law.

234.    In its demands to MPHJ's counsel to resolve the threats made by the FTC Defendants, the FTC Defendants have demanded that MPHJ's counsel consent to provide certain periodic reports to the FTC Defendants that would require MPHJ's counsel to breach the attorney-client privilege and/or client confidential information.  Because the requirements of MPHJ's counsel to maintain attorney-client privilege, and to maintain client confidentiality, is

48

governed by the laws of the applicable state, the State Bar, and the courts, the FTC Defendants are attempting to impermissibly regulate the practice of law, and to interfere with an area not within their jurisdiction or authority.

235.    By their threats to bring suit against MPHJ's counsel, and their demands to resolve such threats, the FTC Defendants are attempting to regulate the practice of law where the federal law is clear that the FTC Defendants lack such authority or jurisdiction.

## COUNT VI(C)
### The Assertion By The FTC Defendants Of A Threat To Sue MPHJ's Counsel For Representing A Patent Owner Engaged In Patent Licensing Activity Is Conduct By The FTC Defendants That Is Barred By the Doctrine of Litigation Privilege

236.    The assertion by the FTC Defendants of a threat to sue MPHJ's counsel for representing a patent owner engaged in patent licensing activity is conduct by the FTC Defendants that is barred under the doctrine of litigation privilege.

## COUNT VII
### MPHJ Is Entitled To An Award Of Fees And Costs, And Such Other Relief As It May Show Itself Entitled

237.    MPHJ is entitled to an award of fees and costs and such additional remedies as it may prove itself to be entitled under the Equal Access to Justice Act, 28 U.S.C. § 2412.

238.    MPHJ is entitled to an award of fees and costs, and such other relief as it may show itself entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment for itself and against Defendants as follows:

## PRAYER FOR RELIEF – COUNT I
### (The FTC Defendants Lack Jurisdiction Over MPHJ's Conduct)

A.      A declaration that the FTC Defendants lack authority and jurisdiction to regulate or bring claims under Section 5 of the FTC Act or any other federal law with respect to the patent enforcement activity conducted by MPHJ, its licensees, agents or counsel.

B.      Such permanent and preliminary injunctive relief as Plaintiff may show itself to be entitled.

C.      Such other and further relief at law or in equity as the Court deems just and proper.

## PRAYER FOR RELIEF – COUNT II
### (MPHJ's Conduct Is Protected By The First Amendment)

A.      A declaration that the accused communications made by MPHJ or its licensees, agents or counsel are protected speech under the First Amendment of the U.S. Constitution, and that, as such, the FTC Defendants have no basis to threaten or seek remedies for any purported violation of any federal law by any such communications.

B.      Such permanent and preliminary injunctive relief as Plaintiff may show itself to be entitled.

C.      Such other and further relief at law or in equity as the Court deems just and proper.

## PRAYER FOR RELIEF - COUNT III
### (The FTC Defendants' Conduct Violates The Separation Of Powers Doctrine)

A.      A declaration that any attempt by the FTC Defendants to threaten action or to bring action against MPHJ, its licensees, agents or counsel with respect to the accused communications intended at least in part to satisfy the pre-suit investigation requirements of FED. R. CIV. P. 11 violates the Separation of Powers Doctrine, and impermissibly and

unconstitutionally impinges upon and interferes with the powers of the federal courts under Article III of the U.S. Constitution.

B.      Such permanent and preliminary injunctive relief as Plaintiff may show itself to be entitled.

C.      Such other and further relief at law or in equity as the Court deems just and proper.

**PRAYER FOR RELIEF – COUNT IV**
**(The Allegation That MPHJ's Conduct Violates Section 5 Because It**
**Constituted A "Threat To Sue" Without "Intent To Sue" Fails To**
**State A Claim And Is Not Supported By Evidence)**

A.      A declaration that the communications made by MPHJ, its licensees, agents or counsel accused by the FTC Defendants of being a "threat to sue without an intent to sue" do not violate Section 5 of the FTC Act or any other federal law because, in these circumstances, such accusations are permitted under federal law and constitutionally protected.

B.      A declaration that the communications made by MPHJ, its licensees, agents or counsel accused by the FTC Defendants of being a "threat to sue without an intent to sue" do not violate Section 5 of the FTC Act or any other federal law because the FTC Defendants have no evidence sufficient to establish that MPHJ, its licensees, agents or counsel did not have an intent to sue at the time the accused communications were made.

C.      Such permanent and preliminary injunctive relief as Plaintiff may show itself to be entitled.

D.      Such other and further relief at law or in equity as the Court deems just and proper.

**PRAYER FOR RELIEF – COUNT V**
**(The Allegation That MPHJ's Conduct Violates Section 5 Because It Communicated Inaccurate Statements Fails To State A Claim And Is Unsupported By Evidence)**

A.      A declaration that the communications made by MPHJ, its licensees, agents or counsel accused by the FTC Defendants of being false and/or deceptive, inclusive of the accused "positive response" statement, the accused "fair royalty" statement, and any other similar accused statement, do not violate Section 5 of the FTC Act or any other federal law at least because any such statements are not legally material, and thus, the FTC Defendants' accusations with respect to such statements fail to state any cognizable claim under Section 5 or any other federal law.

B.      A declaration that the communications made by MPHJ, its licensees, agents or counsel accused by the FTC Defendants of being false and/or deceptive, inclusive of the accused "positive response" statement, the accused "fair royalty" statement, and any other similar accused statement, do not violate Section 5 of the FTC Act or any other federal law because the FTC Defendants have no evidence sufficient to establish that the statements were not true at the time the accused communications were made.

C.      A declaration that the communications made by MPHJ, its licensees, agents or counsel accused by the FTC Defendants of being false and/or deceptive, inclusive of the accused "positive response" statement, the accused "fair royalty" statement, and any other similar accused statement, do not violate Section 5 of the FTC Act or any other federal law because the FTC Defendants have no evidence sufficient to establish that the statements were not believed to be true at the time the accused communications were made.

D.      A declaration that the communications made by MPHJ, its licensees, agents or counsel accused by the FTC Defendants of being false and/or deceptive, inclusive of the accused "positive response" statement, the accused "fair royalty" statement, and any other similar

accused statement, do not violate Section 5 of the FTC Act or any other federal law, at least because any such statements are not legally material to the essential message of the communication, and the essential message was neither objectively nor subjectively baseless.  As such, the FTC Defendants' accusations with respect to such statements fail to state any cognizable claim under Section 5 or any other federal law.

       E.      Such permanent and preliminary injunctive relief as Plaintiff may show itself to be entitled.

       F.      Such other and further relief at law or in equity as the Court deems just and proper.

**PRAYER FOR RELIEF – COUNT VI**
**(The FTC Defendants Have Unlawfully Interfered With**
**MPHJ's Constitutional Right to Choice of Counsel)**

       A.      A declaration that MPHJ has a constitutional right under the First Amendment to its choice of counsel, and that the conduct of the FTC Defendants has comprised an improper, unlawful, and unconstitutional interference with MPHJ's right to choose counsel.

       B.      A declaration that the FTC Defendants lack authority and jurisdiction to regulate or bring claims under Section 5 of the FTC Act or any other federal law with respect to activity of MPHJ's counsel related to representing MPHJ in connection with its patent enforcement efforts, because the FTC Defendants lack authority and jurisdiction to regulate such patent enforcement activity, including counsels providing representations with respect to the activity.

       C.      A declaration that the FTC Defendants lack authority and jurisdiction to regulate or bring claims under Section 5 of the FTC Act, or any other federal law with respect to activity of MPHJ's counsel related to representing MPHJ in connection with its patent enforcement efforts, because the FTC Defendants lack authority and jurisdiction to regulate the practice of law.

53

D.      A declaration that the FTC Defendants lack authority and jurisdiction to regulate or bring claims under Section 5 of the FTC Act, or any other federal law with respect to activity of MPHJ's counsel related to representing MPHJ in connection with its patent enforcement efforts, because the FTC Defendants lack authority and jurisdiction to engage in conduct adverse to MPHJ's counsel in violation of the litigation privilege.

E.      Such permanent and preliminary injunctive relief as Plaintiff may show itself to be entitled.

F.      Such other and further relief at law or in equity as the Court deems just and proper.

### PRAYER FOR RELIEF – COUNT VII
**(MPHJ Is Entitled To An Award Of Fees And Costs, And Such Other Relief As It May Show Itself Entitled)**

A.      An award of fees and costs and any other monies to which MPHJ may show itself to be entitled under the Equal Access to Justice Act, 28 U.S.C. § 2412 or such other laws relating to the right to fees, costs and other monies with respect to which MPHJ may show apply.

B.      Such other and further relief at law or in equity as the Court deems just and proper, including, if appropriate, under the *Bivens* doctrine.

### PLACE OF TRIAL

Plaintiff hereby requests that trial of this case take place in Waco, Texas.

Dated: January 13, 2014

Respectfully submitted,

FARNEY DANIELS PC

*/s/ Steven R. Daniels*
Steven R. Daniels
W. Bryan Farney (*pro hac vice* pending)
800 South Austin Avenue, Ste. 200
Georgetown, Texas 78626
(512) 582-2828
sdaniels@farneydaniels.com
bfarney@farneydaniels.com

Jim Dunnam
DUNNAM & DUNNAM, L.L.P.
4125 West Waco Drive
P.O. Box 8418
Waco, Texas 76714
(254) 753-6437
jimdunnam@swbell.net

*Attorneys for Plaintiff*
*MPHJ Technology Investments, LLC*