# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| MPHJ TECHNOLOGY INVESTMENTS, LLC, *et al.*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| FEDERAL TRADE COMMISSION, *et al.*, | ) ) ) |
| Defendants. | ) ) |

Civil No. 6:14-cv-00011-WSS

## <u>MOTION TO DISMISS</u>

The Federal Trade Commission ("FTC" or "Commission"), Edith Ramirez as FTC Commissioner and Chairwoman, Julie Brill as FTC Commissioner, Maureen K. Ohlhausen as FTC Commissioner, Joshua D. Wright as FTC Commissioner, and Jessica Rich as Director of FTC's Bureau of Consumer Protection, who have been named as defendants in their official capacity, move to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Grounds for this motion are as follows.

In this action, Plaintiff MPHJ Technology Investments, LLC ("MPHJ"), together with its subsidiaries (collectively, "Plaintiff"), improperly seeks to impede an ongoing investigation by the FTC and to block any potential administrative proceeding or court action the FTC might bring against it in the future. The FTC's investigation centers around whether Plaintiff violated, or is violating, Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), by falsely threatening thousands of small businesses with imminent patent infringement litigation when, in truth, Plaintiff did not intend to take and did not take such action. The

Commission is also investigating whether Plaintiff falsely represented in letters sent to potential licensees that substantial numbers of businesses had responded by purchasing licenses from Plaintiff when, at the time of the representations, Plaintiff had not sold any licenses.

During the course of the FTC's investigation, it served civil investigative demands on MPHJ and its counsel seeking certain information regarding MPHJ's patent-related correspondence and enforcement activity. Subsequently, Plaintiff's counsel and the FTC discussed possible settlement, which would have involved Plaintiff's entering into a consent judgment pertaining to Plaintiff's business activities. As part of the negotiations, the FTC sent Plaintiff's counsel a draft complaint (the "FTC draft complaint") for permanent injunction and other equitable relief. Upon receipt of the FTC draft complaint, Plaintiff brought this lawsuit to obtain a declaratory judgment that, if the FTC were to institute a civil enforcement action against it pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the FTC would lack authority to seek enforcement and obtain relief against Plaintiff.

As set forth more fully below, this Court should dismiss the Complaint pursuant to Rule 12(b)(1) for lack of jurisdiction under *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 598 (1950), and its progeny because Plaintiff's action is an impermissible attempt to enjoin an enforcement proceeding that may or may not be initiated by the Commission. The Complaint must also be dismissed for lack of jurisdiction because the claims are unripe. The FTC's activities to date – investigating MPHJ and inviting MPHJ to consent to an order to resolve the FTC's potential claims against it – do not constitute final agency action, do not implicate an issue that is solely legal in nature, and have not imposed a hardship on Plaintiff. *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 243 (1980). Instead, Plaintiff's action is an improper

attempt to enlist this Court's equitable powers as "a means of turning prosecutor into defendant before adjudication concludes," *Standard Oil*, 449 U.S. at 243 – or even begins.

In the alternative, the Court should dismiss the Complaint pursuant to Rule 12(b)(6) for failing to state a claim upon which relief can be granted. Plaintiff identifies no statutory authority that the FTC has exceeded; Plaintiff's asserted First Amendment rights do not protect it from the Commission's investigation; Plaintiff provides no grounds to conclude that its attorneys are protected from liability for deception in violation of the FTC Act; and Plaintiff fails to allege violation of any constitutional right to choose counsel. For these reasons, Plaintiff's complaint fails as a matter of law and should be dismissed.

## BACKGROUND

## I.      STATUTORY AND REGULATORY BACKGROUND

The FTC is the consumer protection law enforcement agency charged with investigating and taking legal action against individuals and entities that violate the statutory prohibition on "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). Prior to the Commission's commencement of an enforcement action for violations of the FTC Act (or other statutes or rules within its purview), the Commission's staff conducts an investigation of the relevant conduct. *See* 15 U.S.C. §§ 46, 49, 57b-1; 16 C.F.R. §§ 2.1-2.16; FTC Operating Manual, ch. 3 at §§ .2.2.1.2, .3.6.7.5 (available at http://www.ftc.gov/sites/default/files/attachments/ftc-administrative-staff-manuals/ch03investigations_0.pdf). Once an investigation reaches the point where there is "reason to believe" that a violation of law has occurred, the Commission may institute an enforcement action. *See, e.g.*, 15 U.S.C. §§ 53(b), 45(b). At that point, the Commission may (1) file a civil action for injunctive relief in federal district court pursuant to Section 13(b) of the

FTC Act, 15 U.S.C. § 53(b); or (2) institute administrative adjudicatory proceedings before an FTC Administrative Law Judge pursuant to Section 5(b) of the FTC Act, 15 U.S.C. § 45(b). The Commission may also refer the matter to the Department of Justice for criminal prosecution pursuant to Section 6(k) of the FTC Act. *See* 15 U.S.C. § 46(k). Of course, the Commission may decide not to institute any enforcement action at all.

Importantly, the Commission, "composed of [the] Commissioners, who shall be appointed by the President, by and with the advice and consent of the Senate," 15 U.S.C. § 41, must vote affirmatively to authorize the filing of a civil action in federal district court, or the initiation of an administrative adjudicatory proceeding. *See* FTC Operating Manual, ch. 13 at § .9 (available at http://www.ftc.gov/sites/default/files/attachments/ftc-administrative-staff-manuals/ch13judicialappearances.pdf) ("Participation in each court or other legal proceeding on behalf of the Commission requires express Commission approval unless such authority has been delegated . . . ."); 16 C.F.R. § 4.14(c) ("Any Commission action may be taken only with the affirmative concurrence of a majority of the participating Commissioners . . . .").

Under the Commission's policies, a proposed respondent may be invited to enter into a consent order before the FTC Commissioners have voted whether to issue a complaint, while a matter is still in investigation. FTC Operating Manual, ch. 6.2 (available at http://www.ftc.gov/sites/default/files/attachments/ftc-administrative-staff-manuals/ch06consents.pdf). FTC counsel do not have the authority to bind the Commission, however, and a consent order agreed to by a proposed respondent has no validity or effect until it has been approved, like any other complaint, by a vote of the FTC Commissioners. *Id.*, ch. 6.3.4.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff MPHJ, a Delaware limited liability company with 101 subsidiaries, sent a series of letters – typically three letters – to thousands of small businesses across the country in an effort to sell licenses for certain U.S. patents that MPHJ claims cover the use of ordinary office equipment in use in possibly millions of offices across the country.  Compl. ¶¶ 34, 37-40, 67-125.[2]  In the First Letter, MPHJ told recipients that they were likely infringing certain patents (the "MPHJ Portfolio") by using scanners or multifunction printers with scanning capability,[3] and therefore needed to purchase a license for the portfolio at a price of either $1,000 or $1,200 per employee.  *Id.* Ex. B1-B6; *id.* Ex. F ¶¶ 23-24.  The letters also represented that substantial numbers of businesses had purchased licenses for the MPHJ Portfolio without the need for court action.  *Id.* Ex. F ¶ 25.  The Second Letter, which appeared on the letterhead of law firm Farney Daniels, P.C. ("Farney Daniels"), stated that because there had been no response to the First Letter, MPHJ had referred the matter to Farney Daniels and that, while the firm's representation

[1] Generally, FTC investigations are non-public. The Commission does not disclose information such as the identities or alleged practices of individuals or entities under investigation, the facts and theories that FTC staff develop during investigations, or the content of negotiations with targets of investigations regarding the resolution of potential claims. *See* 15 U.S.C. § 57b-2; 16 C.F.R. § 4.10(a)(8) & (a)(9). The discussion here of the FTC's investigation of MPHJ is limited to information that MPHJ has made public through its Complaint, including the allegations contained in the FTC draft complaint (attached to Plaintiff's Complaints as Exhibit F) that FTC counsel forwarded to MPHJ's counsel during settlement discussions.

[2] Over the course of the campaign, Plaintiff used different versions of the first, second and third letters, which are referred to herein as the "First Letter," "Second Letter," and "Third Letter," respectively.  The different versions of each letter involved a core of shared text.  Examples of the First Letter are attached as Exhibits B1 through B6 to the Complaint and Exhibit A to the FTC draft complaint.  Examples of the Second Letter are attached as Exhibits C1, C2, and C3 to the Complaint and Exhibit B to the FTC draft complaint.  Examples of the Third Letter are attached as Exhibits D1 through D5 to the Complaint and Exhibit C to the FTC draft complaint.

[3] Specifically, MPHJ's letters claim that the recipients have likely infringed the MPHJ Portfolio by using a scanner or multifunction printer that is connected to a network to permit a document to be scanned directly to e-mail or another application.  *See* Compl. Ex. B1-B6; *id.* Ex. F ¶ 25.

"can involve litigation," it was the client's preference to agree on a license. *Id.* Ex. C1-C3; *id.* Ex. F ¶ 30. A Third Letter, also on Farney Daniels letterhead, included express or implied representations that MPHJ intended to and would initiate legal action for patent infringement against letter recipients that did not respond to the letters, and that such legal action was imminent. *Id.* Ex. D1-D5; *id.* Ex. F ¶ 34. Each Third Letter included a federal district court complaint alleging patent infringement against the recipient. *Id.* Ex. D1-D5; *id.* Ex. F ¶ 35.

To investigate whether MPHJ's representations amounted to deception under the FTC Act,[4] the FTC sent civil investigative demands to MPHJ and Farney Daniels in July 2013. After receiving responses from MPHJ and Farney Daniels, the FTC approached counsel for MPHJ in December 2013 to discuss possible settlement of the FTC's potential claims. Compl. ¶¶ 130–131. As is routine in such discussions, FTC counsel forwarded a proposed complaint and consent order to MPHJ's counsel in which it described the alleged violations of the FTC Act. *Id.* ¶ 131. In particular, the proposed complaint (*i.e.*, the FTC draft complaint) alleged that MPHJ had engaged in unlawful deception by representing to approximately 7,336 small businesses that it had made substantial sales of its patent licenses, even though it had not yet sold even a single license. *Id.* Ex. F ¶¶ 27, 45-47. The FTC draft complaint also alleged that the Third Letter's threat of imminent litigation against approximately 4,870 small businesses amounted to unlawful deception because MPHJ had no intent to initiate patent litigation imminently against the letter

---

[4] MPHJ's letter campaign has also been the subject of several state law enforcement actions. In May 2013, MPHJ was sued by the State of Vermont, which alleged that MPHJ's campaign was deceptive and violated the Vermont Consumer Protection Act. Consumer Protection Complaint, No. 282-5-13 (Vt. Sup. Ct. May 8, 2013). In August 2013, to resolve additional claims of deceptive practices, MPHJ signed an Assurance of Discontinuance with the State of Minnesota. Assurance of Discontinuance, No. 62-CV-13-6080 (Minn. Dist. Ct. Aug. 20, 2013). And in January 2014, MPHJ signed an Assurance of Discontinuance with the State of New York to resolve that state's allegations of deceptive conduct. Assurance of Discontinuance, No. 14-015 (available at http://www.ag.ny.gov/pdfs/FINALAODMPHJ.pdf).

recipients.[5] *Id.* Ex. F ¶¶ 38-44).[6] After receiving the proposed complaint, MPHJ filed the instant action.

## ARGUMENT

### I. STANDARD OF REVIEW

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff has the burden of proving subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Allen v. Wright*, 468 U.S. 737, 751 (1984); *Flast v. Cohen*, 392 U.S. 83, 95 (1968); *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012). A trial court may find jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution." *Choice Inc.*, 691 F.3d at 714.

Moreover, declaratory relief is permitted only if jurisdiction otherwise exists. 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction . . . any court . . . may declare the rights. . . ."); *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 242 (1952) (Declaratory Judgment Act "applies . . . only to 'cases and controversies in the constitutional sense.'") (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).

"When ruling on a 12(b)(6) motion, the court must liberally construe the complaint in favor of the plaintiff and assume the truth of all pleaded facts." *Oliver v. Scott,* 276 F.3d 736, 740

---

[5] It has long been recognized that "a false threat of immediate legal action is highly deceptive" and can violate the FTC Act when disseminated as alleged in the FTC draft complaint. *E.g., In re Trans World Accounts, Inc.*, 90 F.T.C. 350, 399 (1977), *aff'd Trans World Accounts, Inc. v. FTC*, 594 F.2d 212 (9th Cir. 1979).

[6] MPHJ has filed only one patent enforcement action against any of the letter recipients. That suit was filed after the FTC sent civil investigative demands in July 2013 to MPHJ and Farney Daniels. Compl. ¶ 126, 129.

(5th Cir. 2002). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). Courts, however, are "not bound to accept as true a legal conclusion couched as factual allegation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). Generally, "a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations omitted); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

## II.     THE COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS

This Court lacks jurisdiction to grant Plaintiff's request that it enjoin the FTC's ongoing investigation or any administrative proceeding or enforcement action that might unfold. First, it has long been settled that putative targets of federal or administrative enforcement may not seek to forestall such action by obtaining preemptive judicial review – especially when, as here, the investigation is ongoing and no proceedings have even commenced, much less concluded. Second, because the FTC has yet to take any action against Plaintiff – or even decide whether it will take action – there is no "case or controversy" over which the Court can exercise jurisdiction under Article III of the Constitution, and Plaintiff's claims are demonstrably unripe. The FTC must be permitted to continue its investigation to determine whether or not Plaintiff has violated the law and, if so, what remedy it should pursue through either an administrative adjudicatory

proceeding or an action in federal court. While the investigation continues, judicial review may not be had, and Plaintiff's Complaint should be dismissed for lack of jurisdiction.

### A. The complaint must be dismissed because courts lack jurisdiction to enjoin future or even pending law enforcement proceedings.

The relief Plaintiff seeks would enjoin the ongoing administrative process. This Court lacks jurisdiction to entertain any of the claims asserted, because it may not grant such relief. Individuals subject to an enforcement action – including in administrative proceedings – may not file a separate collateral challenge to that action in federal court, but must instead raise any issues or defenses they have in the enforcement case itself. *See Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 598 (1950); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938) ("The District Court is without jurisdiction to enjoin [NLRB's administrative] hearings[.]").

Judicial review of agency actions in a court separate from the enforcement action itself would result in unnecessary judicial interference in a pending proceeding. "[I]t has never been held that the hand of government must be stayed until the courts have an opportunity to determine whether the government is justified in instituting suit . . . ." *Ewing*, 339 U.S. at 599. The Court of Appeals for the Fifth Circuit has accordingly recognized that judicial review of agency decisions to initiate enforcement proceedings is "clearly proscribed by *Ewing*." *Southeastern Minerals, Inc. v. Harris*, 622 F.2d 758, 764 (5th Cir. 1980); *see also United States v. Alcon Labs.*, 636 F.2d 876, 886 (1st Cir. 1981) (holding that "the imposition of any formal, pre-enforcement hearing requirement might seriously impair the effectiveness of the Act's enforcement provisions"). *Cf. Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995) ("[When a proceeding] involving the same parties and presenting opportunity for ventilation of the same [. . .] law issues is pending [in another tribunal] a district court might be indulging in '[g]ratuitous

interference' if it permitted the federal declaratory action to proceed." (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).

The rule articulated in *Ewing* precludes judicial interference with an agency's decision to institute enforcement action, "whatever the precise context," and has been "consistently and strictly observed" by the lower courts for over sixty years.[7]  *Alcon Labs.*, 636 F.2d at 881-82. *Ewing* holds particular force in the context of the FTC Act.  Congress specified that, upon finding "reason to believe that any such person, partnership, or corporation has been or is using any unfair . . . or deceptive act or practice in or affecting commerce, and if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public," the Commission should have the opportunity to instigate an administrative adjudicatory process.  15 U.S.C. § 45(b).  Congress laid out in detail how such an administrative process should proceed, *id.*, and vested the Courts of Appeals with exclusive jurisdiction to review any final order coming out of that administrative process, *id.* § 45(c).  Congress also granted the Commission

---

[7] *See, e.g., Great Plains Coop v. CFTC*, 205 F.3d 353, 355 (8th Cir. 2000) (no jurisdiction to enjoin administrative enforcement action prior to final agency decision); *Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 368 (7th Cir. 1983) (target of investigation cannot sue the FTC to enjoin investigation, but must present claims in FTC's affirmative case); *Pharmadyne Labs., Inc. v. Kennedy*, 596 F.2d 568, 570-71 (3d Cir. 1979) (no jurisdiction to enjoin seizure enforcement actions under *Ewing*); *Parke, Davis & Co. v. Califano*, 564 F.2d 1200, 1206 (6th Cir. 1977) ("it was an abuse of discretion to enjoin the FDA in the circumstances of this case where pending enforcement actions provided an opportunity for a full hearing before a court."); *Holistic Candlers & Consumers Ass'n v. FDA*, 770 F. Supp. 2d 156, 163 (D.D.C. 2011) (district court "may not review requests for injunctive or declaratory relief preventing the FDA from bringing enforcement actions against plaintiffs"), *aff'd on other grounds*, 664 F.3d 940); *Direct Mktg. Concepts, Inc. v. FTC*, 581 F. Supp. 2d 115, 117  (D. Mass. 2008) ("If this action is related to the enforcement action, then it must be dismissed as an impermissible attempt to enjoin an ongoing enforcement action.  If the two actions are not related, then this action must be dismissed for failure to present a ripe claim for judicial adjudication."); *Genendo Pharm. v. Thompson*, 308 F. Supp. 2d 881, 883 (N.D. Ill. 2003) (it "is well-settled that the district courts lack jurisdiction to enjoin enforcement proceedings.").

the power to file a complaint directly in federal district court to seek injunctive relief and related remedies under Section 13(b).  15 U.S.C. § 53(b).

At this point, the FTC has neither initiated an administrative proceeding by filing an administrative complaint in accordance with the FTC's rules and regulations, nor filed an enforcement action in federal court.  Allowing a federal court to enjoin the FTC from proceeding in either manner would undermine the regime that Congress clearly intended.  Were an administrative proceeding to commence, and the Commission to find that Plaintiff violated the FTC Act and relief were warranted, Plaintiff could seek review of the Commission's final order in a Court of Appeals.  *See* 15 U.S.C. § 45(c)-(d).  Alternatively, were the Commission to authorize the filing of a complaint directly in federal court pursuant to Section 13(b), Plaintiff could raise the very same arguments as defenses in such enforcement action.  For this reason, Plaintiff's claims must be dismissed for lack of jurisdiction.

### B. Plaintiff's challenges to an enforcement action or administrative proceeding that have not been filed or initiated are unripe.

In the administrative law context, the ripeness doctrine serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998).  When evaluating the ripeness of a case, courts of the Fifth Circuit consider four factors: "(1) whether the issues are purely legal; (2) whether the issues are based on a final agency action; (3) whether the controversy has a direct and immediate impact on the plaintiff; and (4) whether the litigation will expedite, rather than delay or impede, effective enforcement by the agency."  *Tex. Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393, 411 n.11 (5th Cir. 1999).  The

four factors are derived from *Abbott Laboratories v. Gardner*, which requires that a court evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Failure to establish any of the four factors is fatal to the plaintiff's claim. *Tex. Office of Pub. Util. Counsel*, 183 F.3d at 411 n.11 (citing *Merch. Fast Motor Lines, Inc. v. ICC*, 5 F.3d 911, 920 (5th Cir. 1993)).

Plaintiff MPHJ seeks to challenge agency action that is manifestly non-final, which is alone a sufficient basis for dismissing Plaintiff's claims as unripe. Moreover, Plaintiff's claims fail each of the other three factors considered in evaluating ripeness.

First, and decisively, Plaintiff seeks a declaration that a legal proceeding that the Commission has not instituted, and may decide not to institute in the form that Plaintiff anticipates (or in any form whatsoever), is improper and unlawful. A challenge to speculative future actions of this type by definition cannot be final or ripe. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotations omitted). Indeed, even if the FTC had instituted an action against MPHJ, that would not be a "final agency action" subject to judicial review.

As the Supreme Court has explained, "final agency action" has occurred in the FTC enforcement context only when "a definitive agency position" has been reached through the completion of adjudicatory proceedings. *FTC v. Standard Oil Co.*, 449 U.S. 232, 239-43 (1980). Activities short of the completion of adjudicatory proceedings are not "final agency action." For example, the issuance of an administrative complaint is only a determination that adjudicatory proceedings will commence, not a definitive agency position on whether the FTC Act has been

violated, and therefore is not final agency action subject to judicial review. *Id.* at 241; *see also Dow Chem. v. EPA*, 832 F.2d 319, 325 (5th Cir. 1987) (holding, in the context of EPA enforcement, that "allegations made in an enforcement suit do not impose the *kind* of legal obligations with which finality doctrine is concerned"). Applying the same principles, "an agency's initiation of an investigation does not constitute final agency action," and "the plaintiff must await resolution of the agency's inquiry and challenge the final agency decision." *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) (citing *Standard Oil* and *Dow Chemical*).

In short, the hypothetical lawsuit challenged by MPHJ has not yet been initiated by the FTC and may not be initiated in the form that Plaintiff anticipates or otherwise, and therefore is neither final nor ripe. Even if such a lawsuit is initiated by the FTC, the initiation alone would not present a definitive agency position that MPHJ has violated the FTC Act, and would therefore be neither final nor ripe. And the activities that the FTC has taken to date – investigating MPHJ and inviting MPHJ to consent to an order to resolve potential claims[8] – likewise do not present definitive agency positions that MPHJ has violated the FTC Act, and therefore are neither final nor ripe.

Second, MPHJ cannot demonstrate that its efforts to enjoin a hypothetical future lawsuit would present purely legal issues. Indeed, because the specific issues involved in a lawsuit *that does not yet exist* are not yet known, Plaintiff cannot even plausibly attempt to meet its burden concerning this factor. Moreover, the issues presented by the application of the prohibition

---

[8] The invitation to consent to an order resolving potential claims is analogous to a party receiving an agency warning letter, which has also been found to be non-final agency action. *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 944 n.4 (D.C. Cir. 2012) (FDA warning letter not final agency action); *Prof'ls and Patients for Customized Care v. Shalala*, 847 F. Supp. 1359, 1361-62 (S.D. Tex. 1994) (same).

against "deceptive acts or practices" in Section 5(a) of the FTC Act to any company or individual's specific conduct (whether MPHJ or anyone else), and the issues presented by the defenses that such a defendant would raise concerning its conduct, will inherently turn on the specific facts involved and cannot be decided solely by abstract legal principles. It is clear that MPHJ's Complaint itself raises a host of issues that are not purely legal. *See, e.g.*, Compl. ¶ 143 (discussing what MPHJ "reasonably suspected"); *id.* ¶ 144 (discussing the purposes to which MPHJ's correspondence was "directed"); *id.* ¶ 145 (claiming that MPHJ's letters "did not offer any good or service for sale"); *id.* ¶ 146 (discussing MPHJ's beliefs concerning the activities of its letter recipients); *id.* ¶ 155 (discussing the design and intent behind MPHJ's letters); *id.* ¶ 200 (discussing the intentions of MPHJ and its counsel).

Third, MPHJ cannot establish that the FTC's ongoing investigation has had a "direct and immediate impact" on it – the third prerequisite for judicial review. *Tex. Office of Pub. Util. Counsel*, 183 F.3d at 411 n.11. MPHJ has admitted that it had a number of motivations for discontinuing its letter campaign that remain relevant regardless of whether the FTC takes further action against it. For example, proceedings were instituted before the U.S. Patent and Trademark Office challenging the validity of MPHJ patents that "included a substantial amount of prior art not previously known to MPHJ or its counsel." Compl. ¶ 109. These proceedings remain pending. *See Ricoh Americas Corp. and Xerox Corp. v. MPHJ Tech. Invs., Inc.*, Case IPR2013-00302; *Hewlett-Packard Co. v. MPHJ Tech. Invs., Inc.*, Case IPR2013-00309. In addition, MPHJ already faces potential liability for allegedly deceptive acts stemming from its letter campaign in a proceeding brought by the State of Vermont that also remains pending. Consumer Protection Complaint, No. 282-5-13 (Vt. Sup. Ct. May 8, 2013). In short, removing the "threat" of future action from the FTC would not free MPHJ to resume "business as usual."

Indeed, by MPHJ's own admission, it had ceased its letter campaign prior to receiving compulsory process from the FTC, and well before receiving FTC counsel's invitation to consent to an order to resolve potential FTC claims, *see* Compl. ¶ 105, and the burden that MPHJ may later face in responding to an FTC complaint is not a hardship that can support ripeness. *Standard Oil*, 449 U.S. at 244.

Fourth, Plaintiff's claims fail the fourth ripeness factor, as consideration of the instant Complaint by this Court would impede effective enforcement by the Commission. As the Supreme Court has explained, judicial intervention into the process of FTC enforcement of Section 5 of the FTC Act would lead to "piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary," and would "delay resolution of the ultimate question of whether the Act was violated." *Id.* at 242. It is neither effective nor efficient to require the FTC to establish its authority to issue a complaint in a separate proceeding, nor to require it to establish its authority to issue a complaint against those it may ultimately choose not to pursue. *See supra* Section II.A (discussing how pre-enforcement proceedings impair effective enforcement).

Thus, Plaintiff's claims satisfy none of the factors required for ripeness. The FTC has not finally determined any legal rights or obligations or otherwise initiated an adjudicative proceeding or instituted a legal action in federal court, and Plaintiff will suffer no cognizable hardship from deferring review until the conclusion of an administrative proceeding, which may or may not be initiated, or upon FTC's filing of an enforcement action in federal court. Accordingly, Plaintiff's challenge is not ripe for review and must be dismissed for lack of jurisdiction.

**III.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE
        IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

The Court can and should dismiss the Complaint on the foregoing jurisdictional grounds. Alternatively, this Court should dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint fails to state any grounds on which the Court may grant relief.[9]

In Counts I and VI(A) of the Complaint, Plaintiff asserts that the FTC must be enjoined because it has allegedly acted *ultra vires* in two respects. Neither, however, provides grounds for granting relief. First, Plaintiff alleges that the FTC's actions exceed its "authority and jurisdiction" under Section 5(n) of the FTC Act (15 U.S.C. § 45(n)), which codifies the FTC's "unfairness doctrine." Compl. ¶¶ 141-42, 151, 153, 154, 228. The FTC's draft complaint, upon which Plaintiff bases its claims,[10] does not allege any violations of Section 5(n) for "unfair" acts or practices, but alleges only "deceptive" acts or practices in violation of Section 5(a).[11] The Commission cannot exceed authority that it does not even purport to invoke. Second, Plaintiff

---

[9] The Court need not reach the 12(b)(6) grounds if it dismisses the Complaint for lack of jurisdiction.

[10] To be clear, the FTC has not issued the draft complaint (or any complaint), and any complaint that it may eventually issue could include a different set of claims.

[11] Claims based on "unfairness" are different from claims based on deception. An act or practice is *unfair* if it causes or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits to consumers or to competition. 15 U.S.C. § 45(n); *see generally Orkin Exterminating Co.*, 108 F.T.C. 263, 362 (1986); *Fed. Comm'n Policy Statement on Unfairness, appended to Int'l Harvester Co.*, 104 F.T.C. 949, 1070-76 (1984). An act or practice is *deceptive* if (1) it is likely to mislead consumers acting reasonably under the circumstances, and (2) it is material; that is, likely to affect a consumer's purchase decision. *Novartis Corp.*, 127 F.T.C. 580, 679 (1999), *aff'd and enforced*, 223 F.3d 783 (D.C. Cir. 2000); *Stouffer Foods Corp.*, 118 F.T.C. 746, 798 (1994); *Kraft, Inc.*, 114 F.T.C. 40, 120 (1991), *aff'd and enforced*, 970 F.2d 311 (7th Cir. 1992), *cert. denied*, 113 S. Ct. 1254 (1993); *Removatron Intl Corp.*, 111 FTC. 206, 308-09 (1988), *citing, e.g., Sw. Sunsites, Inc. v. FTC*, 785 F.2d 1431, 1436 (9th Cir.), *cert. denied*, 107 S. Ct. 109 (1986); *Int'l Harvester Co.*, 104 F.T.C. at 1056; *Cliffdale Assocs.*, 103 F.T.C. 110, 164-65 (1984); *see generally Federal Trade Commission Policy Statement on Deception, appended to Cliffdale Assocs.*, 103 F.T.C. at 174-83.

complains that the FTC actions are "arbitrary and capricious" because the Commission has not "proposed or promulgated any guidelines or rules relevant to regulating the sending of patent enforcement communications, or patent infringement inquiry letters relevant to satisfying Fed. R. Civ. P. 11 …." Compl. ¶ 158.  The FTC, however, has no obligation to issue regulations before undertaking an investigation (let alone an enforcement action) regarding whether particular conduct amounts to a deceptive practice under Section 5 of the FTC Act. *See, e.g.*, *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 292 (1974) ("[T]he Commission ha[s] a statutory duty to decide the issue at hand in light of the proper standards and this duty remain[s] regardless of whether those standards previously had been spelled out in a general rule or regulation" (quotation omitted)).  It may proceed case by case. *See FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 384-85 (1965) ("The proscriptions [of unfair or deceptive acts and practices] in Section 5 are flexible, to be defined with particularity by the myriad of cases from the field of business, [which] . . . necessarily give[] the Commission an influential role in interpreting Section 5 and in applying it to the facts of particular cases arising out of unprecedented situations.").

In Counts II, IV and V, Plaintiff asserts violations of First Amendment rights, particularly a claimed right to enforce its patents under the *Noerr-Pennington* doctrine.  That doctrine protects private citizens in their exercise of certain kinds of petitioning behavior involving the government, including courts.  *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington,* 381 U.S. 657 (1965).  Even if the *Noerr-Pennington* doctrine applied to MPHJ's conduct, however, it would provide only a defense to liability and would not immunize MPHJ from suit.  *Acoustic Centers, Inc. v. Wenger Corp.*, 207 F.3d 287, 295 (5th Cir. 2000).  Accordingly, it cannot provide grounds to

enjoin the Commission from investigating whether Plaintiff engaged in deceptive conduct in violation of the FTC Act.

Moreover, neither *Noerr-Pennington* nor the First Amendment right to petition would protect MPHJ from liability for deceptive representations in its letters. As a general matter, speech is not entitled to greater constitutional protection simply because it is made in a petition to the government. *See, e.g.*, *McDonald v. Smith*, 472 U.S. 479, 485 (1985) (libelous statements made in a petition to the President are not entitled to enhanced protection); *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 616 (6th Cir. 2009) (false statement in a court filing in violation of the Fair Debt Collection Practices Act is actionable). The *Noerr-Pennington* doctrine can apply as a defense only where the act of petitioning itself, rather than specific representations contained in a petition, is the source of potential liability. *See Noerr*, 365 U.S. 127 (act of lobbying Congress is protected); *Pennington*, 381 U.S. 657 (act of influencing an executive officer is protected). But the FTC's draft complaint, upon which Plaintiff bases its claims, would not seek to hold MPHJ liable for the mere act of sending patent demand letters (assuming, *arguendo*, that private correspondence of this type is even petitioning activity);[12] it would instead assert liability for specific deceptive statements in the content of those letters, which is unprotected by *Noerr* and the right to petition. Indeed, deceptive speech is not protected by the First Amendment. *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 672 (5th Cir. 2000); *Better Business Bureau of Metro. Houston, Inc. v. Med. Directors, Inc.*, 681 F.2d 397 404 (5th Cir. 1982).

---

[12] *But see Cardtoons, LLC v. Major League Baseball Players Ass'n*, 208 F.3d 885, 892 (10th Cir. 2000) (*en banc*) ("A letter from one private party to another private party simply does not implicate the right to petition, regardless of what the letter threatens.").

In Counts III, VI(C) and VI(B), Plaintiff claims several causes of actions associated with the practice of law, including under Rule 11 of the Federal Rules of Civil Procedure, the "doctrine of litigation privilege," and the regulation of lawyers. Compl. ¶¶ 194, 236. None of these grounds supports the Court's enjoining the Commission's investigation. First, the Federal Rules of Civil Procedure do not give rise to causes of action. *See Piambino v. Bailey*, 610 F.2d 1306, 1331 (5th Cir. 1980) ("Rule 23(d) is a rule of procedure and it creates neither a right nor a remedy enforceable in a federal court of equity."); *Digene Corp. v. Ventana Med. Sys.*, 476 F. Supp. 2d 444, 452 (D. Del. 2007) ("[T]he Federal Rules of Civil Procedure do not create a private cause of action."). Second, as for the "litigation privilege," which at least under Texas law provides immunity for attorney statements in the context of defamation proceedings, *see James v. Brown*, 637 S.W.2d 914, 916-17 (Tex. 1982), no court to the FTC's knowledge has ever held that the privilege provides immunity for deceptive conduct in violation of the FTC Act. Third, the FTC does not seek to regulate the legal profession. Rather, the FTC has successfully proceeded against lawyers in numerous cases for violations of the FTC Act. *See, e.g., FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990) (condemning boycott by group of court-appointed attorneys as prohibited horizontal agreement among competitors); *FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001) (holding an attorney and his contractor liable for deceptive representations regarding their credit repair services). None resulted in a finding that the FTC unlawfully sought to regulate the legal profession.

Finally, in Count VI, Plaintiff claims that the FTC's actions violate its constitutional right to choose counsel, but none of the FTC's activities interfere with Plaintiff's choice of counsel. In any event, civil defendants under the FTC Act have no constitutional right to counsel. *See FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989); *see also Lassiter v. Dep't of*

*Social Servs. of Durham County, N.C.*, 452 U.S. 18, 25 (1981) (right to counsel only where "litigant may lose his physical liberty if he loses the litigation"). Moreover, "there is no absolute and unqualified right to counsel of choice, even where counsel is retained." *United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980); *see also United States v. Snyder*, 707 F.2d 139, 145 & n.5 (5th Cir.1983) ("Although the sixth amendment's right to counsel in criminal cases is absolute, an accused's right to a *particular* counsel is not.").

Accordingly, even if this Court had jurisdiction to hear Plaintiff's claims, they all fail as a matter of law and the Complaint should therefore be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction and for failing to state a claim upon which relief can be granted.

DATED: March 25, 2014

<div style="margin-left: 40%;">

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

MAAME EWUSI-MENSAH FRIMPONG
Deputy Assistant Attorney General

MICHAEL S. BLUME
Director

_/s/_____
PERHAM GORJI
Trial Attorney, Consumer Protection Branch
United States Department of Justice
P.O. Box 386
Washington, DC  20044
Telephone: 202-353-3881
Fax: 202-514-8742
perham.gorji@usdoj.gov

</div>

Of Counsel:

JONATHAN E. NUECHTERLEIN
General Counsel

JOHN F. DALY
Deputy General Counsel for Litigation

MARK S. HEGEDUS
Attorney
Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC  20580