**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
Waco Division**

| | |
|---|---|
| **MPHJ TECHNOLOGY INVESTMENTS, LLC**, inclusive of its subsidiaries,<br><br>        Plaintiff,<br><br>v.<br><br>**FEDERAL TRADE COMMISSION**; **EDITH RAMIREZ**, in her official capacity as Commissioner and Chairwoman, Federal Trade Commission; **JULIE BRILL**, in her official capacity as Commissioner, Federal Trade Commission; **MAUREEN K. OHLHAUSEN**, in her official capacity as Commissioner, Federal Trade Commission; **JOSHUA D. WRIGHT**, in his official capacity as Commissioner, Federal Trade Commission; and **JESSICA RICH**, in her official capacity as Director, Bureau of Consumer Protection, Federal Trade Commission,<br><br>        Defendants. | Civil No. 6:14-cv-00011-WSS |

## PLAINTIFF MPHJ TECHNOLOGY INVESTMENTS, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**PAGE**

BACKGROUND ............................................................................................................... 2

ARGUMENT .................................................................................................................... 8

SECTION ONE: RULE 12(B)(1) MOTION ................................................................... 8

I.      BECAUSE MPHJ'S ACTIVITY IS CONSTITUTIONALLY PROTECTED, IT'S CLAIMS ARE RIPE WHERE THE FTC'S CONDUCT REPRESENTED A "CREDIBLE THREAT" OF SUIT THAT "CHILLS" THAT ACTIVITY ................... 10

      A.      Where MPHJ's Claims Are For Impairment Of First Amendment Rights, A "Credible Threat" Against That Activity Establishes Actual Or Likely Injury.... 10

      B.      The FTC's Conduct Certainly Qualifies As A "Credible Threat" Of Suit ........... 12

      C.      The FTC's Threat Of Imminent Suit Certainly "Chills" MPHJ's Exercise Of Its First Amendment Rights ................................................................................. 13

      D.      The Other Factors For Ripeness Are Easily Met Here ......................................... 15

II.     EVEN IF THE COURT APPLIED THE FTC'S PROPOSED "FINALITY" TEST FOR RIPENESS, THAT TEST IS MET HERE................................................................ 16

SECTION TWO:  RULE 12(B)(6) MOTION .............................................................. 20

I.      MPHJ'S COMPLAINT SHOULD NOT BE DISMISSED UNDER RULE 12(B)(6)..... 20

      A.      MPHJ's First Amendment Counts Plainly State Valid Claims, As The Legal Basis Upon Which They Rest Has Already Been Upheld By A Prior Federal Court Applying Law Of Both The Federal Circuit And The Fifth Circuit ........... 21

      B.      MPHJ Has Stated A Claim That The FTC Has Acted *Ultra Vires*....................... 23

      C.      MPHJ Has Stated A Claim That The FTC Has Interfered With MPHJ's Counsel And The Practice Of Law ..................................................................... 25

            1.      MPHJ Has Stated A Claim That The FTC Has Impeded MPHJ's Constitutional Rights By Interfering With Its Counsel............................ 25

            2.      MPHJ Has Stated A Claim That The FTC Has Unlawfully And Unconstitutionally Attempted To Regulate The Practice Of Law ........... 27

            3.      MPHJ Has Stated A Claim That The Firm's Activities On Behalf Of MPHJ Are Protected By the Doctrine Of Litigation Privilege ................ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABA v. FTC*,
   430 F.3d 457 (D.C. Cir. 2005) ..............................................................27, 28

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967)................................................................9, 13, 15, 19

*Alexander v. Macoubrie*,
   982 F.2d 307 (8th Cir. 1992) ......................................................................26

*Alliance for Natural Health U.S. v. Sebelius*,
   714 F. Supp. 2d 48 (D. D.C. 2010) ............................................................17

*Am. Forest and Paper Ass'n v. U.S. E.P.A.*,
   137 F.3d 291 (5th Cir. 1998) ..................................................................9, 15

*Anderson v. Jackson*,
   556 F.3d 351 (5th Cir. 2009) ........................................................................9

*Appalachian Power Co. v. EPA*,
   208 F.3d 1015 (D.C. Cir. 2000), The FTC ................................................19

*Attaya v. Shoukfeh*,
   962 S.W.2d 237 (Tex. App. Amarillo 1998) ..............................................28

*Avery Dennison Corp. v. ACCO Brands, Inc.*,
   2000 U.S. Dist. LEXIS 3938 (C.D. Ca. Feb. 22, 2000).............................24

*Beedle v. Wilson*,
   422 F.3d 1059 (10th Cir. 2005) ..................................................................16

*In re BellSouth Corp.*,
   334 F.3d 941 (11th Cir. 2003) ....................................................................26

*Benham v. City of Charlotte*,
   635 F. 3d 129 (4th Cir. 2011) .....................................................................13

*Briggs v. Ohio Elections Comm'n*,
   61 F.3d 487 (6th Cir. 1995) ........................................................................10

*Cardtoons v. Major League Baseball Ass'n*,
   208 F.3d 885 (10th Cir. 2000) ....................................................................22

*Christopher v. Harbury*,
    536 U.S. 403 (2002)...........................................................................26

*Ciba-Geigy Corp. v. EPA*,
    801 F.2d 430 (D.C. Cir. 1986) ........................................................18

*Coastal States Mktg., Inc. v. Hunt*,
    695 F.2d 1358 (5th Cir. 1983) ......................................................3, 22

*Cooksey v. Futrell*,
    721 F.3d 226 (4th Cir. 2013) ....................................................9, 12, 13

*Cpg Prods. Corp. v. Pegasus Luggage*,
    776 F.2d 1007 (Fed. Cir. 1985).......................................................16

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ...........................................................9

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
    655 F.3d 1337 (Fed. Cir. 2011).........................................................9

*digiGan, Inc. v. iValidate, Inc.*,
    2004 U.S. Dist. LEXIS 1324 (S.D.N.Y. 2004)................................24

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)........................................................................13

*Doe v. Bolton*,
    410 U.S. 179 (1973)........................................................................13

*Eng'g & Insp. Servs., LLC v. IntPar, LLC*,
    2013 U.S. Dist. LEXIS 146849 (E.D. La. Oct. 9, 2013) ................24

*Epistar Corp. v. Philips Lumileds Lighting Co., LLC*,
    2008 U.S. Dist. LEXIS 79448 (N.D. Cal. Aug. 26, 2008)..............29

*Escort Inc. v. Fleming*,
    2012 U.S. Dist. LEXIS 72193 (D. Idaho May 23, 2012) ...............24

*Exxon Chem. Am. v. Chao*,
    298 F.3d 464 (5th Cir. 2002) .........................................................19

*FTC v. Gill*,
    265 F.3d 944 (9th Cir. 2001) .........................................................27

*FTC v. Standard Oil Co.*,
    449 U.S. 232 (1980)........................................................................20

*FTC v. Superior Court Trial Lawyers Ass'n,*
  493 U.S. 411 (1990).........................................................................................27

*FTC v. World Wide Factors, Ltd.,*
  882 F.2d 344 (9th Cir. 1989) ..........................................................................26

*Futuristic Fences, Inc. v. Illusion Fence, Corp.,*
  558 F. Supp. 2d 1270 (S.D. Fla. 2008) .....................................................23, 24

*Gate Guard Servs. L.P. v. Solis,*
  2011 U.S. Dist. LEXIS 75508 (S.D. Tex. July 12, 2011)..............................17, 18

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.,*
  362 F.3d 1367 (Fed. Cir. 2004).............................................2, 3, 4, 5, 21, 22, 23

*Golan v. Pingel Enter.,*
  310 F.3d 1360 (Fed. Cir. 2002)..................................................................3, 4, 21

*GP Indus. v. Eran Indus.,*
  500 F.3d 1369 (Fed. Cir. 2007)..............................................................................4

*Harrison v. Springdale Water & Sewer Comm'n,*
  780 F.2d 1422 (8th Cir. 1986), The FTC ........................................................26

*Herman v. Excel Corp.,*
  37 F. Supp. 2d 1117 (C.D. Ill. 1999) ................................................................18

*Houston Chronicle Publ'g Co. v. City of League City, Texas,*
  488 F.3d 613 (5th Cir. 2007) ...........................................................................10

*Hubbard v. E.P.A.,*
  809 F.2d 1 (D.C. Cir. 1986)...............................................................................16

*Initiative & Referendum Inst. v. Walker,*
  450 F.3d 1082 (10th Cir. 2006) ..............................................................6, 12, 14

*In re Innovatio IP Ventures, LLC,*
  921 F. Supp. 2d 903 (N.D. Ill. 2013) ..........................................................3, 23

*Intel Corp. v. Intel-Logistics, Inc.,*
  2006 U.S. Dist. LEXIS 34361 (S.D. Tex. May 30, 2006) ..................................28

*KVUE Inc. v. Moore,*
  709 F.2d 922 (5th Cir. 1983) ...........................................................................11

*Lopez v. Candaele,*
  630 F.3d 775 (9th Cir. 2010) ...........................................................................10

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990)...................................................................................12

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
  695 F.3d 1322 (Fed. Cir. 2012)..................................................................22

*McCall v. Dretke*,
  390 F.3d 358 (5th Cir. Tex. 2004) ...............................................................8

*Medical Ctr. Pharm. v. Mukasey*,
  536 F.3d 383 (5th Cir. 2008) .....................................................................28

*MedImmune v. Genentech*,
  549 U.S. 118 (2007)..............................................................6, 11, 13, 19

*Meese v. Keene*,
  481 U.S. 465 (1987)...................................................................................15

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
  175 F.3d 1356 (Fed. Cir. 1999)...................................................................2

*Mitchell v. Johnston*,
  701 F.2d 337 (5th Cir. 1983) .....................................................................26

*Nat'l Council for Improved Health v. Shalala*,
  122 F.3d 878 (10th Cir. 1997) ...................................................................17

*New Mexicans for Bill Richardson v. Gonzales*,
  64 F.3d 1495 (10th Cir.1995) ......................................................................9

*Perez v. Araiza*,
  2007 U.S. Dist. LEXIS 80995 (W.D. Tex. Oct. 10, 2007) ...........................8

*Prestage Farms, Inc. v. Bd. of Supervisors*,
  205 F.3d 265 (5th Cir. 2000) .......................................................................9

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993).......................................................................................2

*PSN Ill., Inc. v. Ivoclar Vivadent, Inc.*,
  2005 U.S. Dist. LEXIS 21044 (N.D. Ill. Sept. 21, 2005) ..........................29

*Rangra v. Brown*,
  566 F.3d 515 (5th Cir. 2009) .....................................................................10

*S.C. Citizens for Life, Inc. v. Krawcheck*,
  301 Fed. Appx. 218 (4th Cir. 2008)...........................................................10

*Sanjour v. EPA*,
   56 F.3d 85 (D.C. Cir. 1995) ...................................................................17

*Severance v. Patterson*,
   566 F.3d 490 (5th Cir. 2009) ...............................................................20

*Shields v. Babbitt*,
   229 F. Supp. 2d 638 (W.D. Tex. 2000)..................................................10

*Short v. Demopolis*,
   691 P.2d 163 (Wash. 1984)....................................................................27

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ...............................................................22

*State Contr. & Eng'g Corp. v. Condotte Am., Inc.*,
   346 F.3d 1057 (Fed. Cir. 2003)............................................................15

*State of Vermont v. MPHJ Technology Investments, LLC*,
   No. 13-cv-00170, Dkt. 61 (D. VT. Apr. 15, 2014) ...............................14

*Steffel v. Thompson*,
   415 U.S. 452 (1974)...............................................................................11

*Susan B. Anthony List et al v. Driehaus et al*.,
   No. 13-193 (Mar. 2014), *available at*
   http://www.americanbar.org/content/dam/aba/publications/supreme_court_ preview/briefs-
   v3/13-193_usa_pr.authcheckdam.pdf. .................................................12

*Texas Catastrophe Property Ins. Ass'n v. Morales*,
   975 F.2d 1178 (5th Cir. 1992) .............................................................26

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
   563 F.3d 1271 (Fed. Cir. 2009).............................................................24

*Trudeau v. FTC*,
   456 F.3d 178 (D.C. Cir. 2006)........................................................8, 9, 16

*United Mine Workers, Dist. 12 v. Illinois State Bar Ass'n*,
   389 U.S. 217 (1967).................................................................................2

*Va. Soc'y for Human Life, Inc. v. FEC*,
   263 F.3d 379 (4th Cir. 2001) ...............................................................10

*Veterans for Common Sense v. Shinseki*,
   644 F.3d 845 (9th Cir. 2011) .................................................................9

*Waterloov Gutter Protection Sys. Co. v. Absolute Gutter Protection, L.L.C.,*
    64 F. Supp. 2d 398 (D.N.J. 1999) ...........................................................................29

*Western Illinois Home Health Care, Inc. v. Herman,*
    150 F.3d 659 (7th Cir. 1998) ...................................................................................18

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ...................................................................................2

*Wolfe v. Barnhart,*
    446 F.3d 1096 (10th Cir. 2006) ..............................................................................16

*Zenith Elecs. Corp. v. Exzec, Inc.,*
    182 F.3d 1340 (Fed. Cir. 1999)..........................................................................22, 23

**Statutes**

5 U.S.C. § 7502 .................................................................................................................9

15 U.S.C. §§ 45(a) & 45(n)............................................................................................23

15 U.S.C. § 53(b) ..............................................................................................................8

28 U.S.C. § 1331 ...............................................................................................................9

28 U.S.C. § 1654 .............................................................................................................26

35 U.S.C. § 282(a) ..........................................................................................................14

35 U.S.C. § 286...............................................................................................................15

Plaintiff MPHJ Technology Investments, LLC ("MPHJ") respectfully submits this Opposition to the Motion to Dismiss filed by Defendants (collectively, "the FTC"), and demonstrates the Motion should be denied.

MPHJ already has been granted a preliminary injunction in U.S. District Court for Nebraska, finding MPHJ's patent enforcement activity at issue here is protected by the First Amendment. That Court reaffirmed that decision even after being presented with the exact same allegations made here by the FTC. MPHJ's assertion of First Amendment protection plainly states a claim.

That MPHJ's patent enforcement activity is constitutionally protected is also relevant to denying the FTC's Motion under Rule 12(b)(1). Here the FTC's conduct plainly presents MPHJ with a "credible threat" of suit, which is all the Fifth Circuit requires to establish "ripeness" for First Amendment claims. Further, even if "finality" was required for ripeness, as the FTC contends, the FTC's actions here were final as the courts have defined it. After MPHJ fully complied with the FTC's subpoena, the FTC reviewed that production. The FTC then presented MPHJ and its counsel with a complaint the FTC said it planned to file unless they each signed a draconian Stipulated Order within a 30-day deadline that would not be extended. The FTC's conduct is sufficient to establish "finality" for ripeness purposes.

MPHJ's suit is not brought to disrupt any ongoing, but not complete, agency process. The law, simple fairness, and public policy all weigh heavily against permitting the FTC to threaten with draconian sanctions a patent owner who is required to send communications to seek redress for infringement, and then force that patent owner to self-censor its pre-suit communications that are protected by the First Amendment, while the FTC achieves a de facto injunction by the chilling effects of its threats.

## BACKGROUND

In its Complaint, MPHJ explained its patents and their unusual nature.[1]  MPHJ explained the careful process it used to identify suspected infringers, and explained the series of three letters that it sent. Dkt. 1 at ¶¶ 67-102; Dkts. 1-11 to 1-13.  The key issue in this case is that the sending of those letters was and is protected by the "right to petition" in the First Amendment.

### A.     MPHJ's Pre-Litigation Activities Are Constitutionally Protected

Because this First Amendment issue is key to the FTC's Motion, MPHJ briefly summarizes it here.  The Supreme Court holds the First Amendment's "right to petition" is as important, and as protected, as any in the Bill of Rights, including the rights of free speech and free press. *See United Mine Workers, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967); *see also White v. Lee*, 227 F.3d 1214 (9th Cir. 2000).  Thus, the Supreme Court has held that bringing a lawsuit is immune from allegations of wrongdoing unless it is a "sham," by which the Court means it must first be proven to be "objectively baseless," and then be proven also to be "subjectively baseless." *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993).  The Court defines "objectively baseless" to mean that "no reasonable litigant could expect success on the merits." *Id.* at 60.

The Fifth Circuit and the Federal Circuit[2] have extended the *Prof'l Investors* petitioning

---

[1] As explained in the Complaint, the patents are unusual in that (1) they only cover an entire system, so no manufacturer is liable for the infringement, but only the end-user, (2) there is widespread infringement, and (3) any particular end-user's system is not available for public inspection, which requires the sending of MPHJ's letters to satisfy Rule 11, a step required by the Federal Courts in this situation prior to bringing suit. *See* Dkt. 1 at ¶¶ 42-48.

[2] Because MPHJ's Complaint raises issues the Federal Circuit considers to be substantial issues of patent law, any appeal will be taken to the Federal Circuit.  However, the Federal Circuit will apply Fifth Circuit law to jurisdictional issues. *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999).  In contrast, the Federal Circuit has held the issue of whether patent enforcement activity is protected by the First Amendment is a matter of substantive patent law and applies its own jurisprudence. *Globetrotter Software, Inc. v. Elan*

immunity to pre-litigation communications and not just actual suits. *Coastal States Mktg., Inc. v. Hunt,* 695 F.2d 1358, 1367 (5th Cir. 1983) (given that petitioning immunity protects litigation "it would be absurd" to not extend petitioning immunity to pre-litigation communications).  In *Globetrotter*, the Federal Circuit concluded that every single regional circuit, with the exception of the Tenth Circuit, had reached the same conclusion as the Fifth Circuit – that pre-suit communications are protected by First Amendment petitioning immunity unless they can be shown first to be objectively baseless, and then also to be subjectively baseless. *Globetrotter*, 362 F.3d at 1376. *See also Motorola Solutions, Inc. v. In re Innovatio IP Ventures, LLC,* 921 F. Supp. 2d 903, 911 (N.D. Ill. 2013) ("because *Globetrotter's* reasoning depends on the First Amendment, and not only on preemption law, it is equally applicable to federal claims.").

### B.      The FTC's Allegations Are Irrelevant To Showing Objective Baselessness

To prove a violation of Section 5 of the FTC Act, the FTC would have to first show that MPHJ's communications were not protected by the First Amendment.  To do this, the law is clear the FTC must show the statements challenged by the FTC were material to the letters,[3] and that the central message of the letters was objectively baseless as well as subjectively baseless.[4]

The FTC has asserted that two statements made in MPHJ's initial letters were deceptive: that prior licensing efforts had received a "positive response," and that those efforts had helped MPHJ conclude its proposed royalty was "fair." *See* Dkt. 1-24 at ¶¶ 45-47.  MPHJ denies that either of these subjective statements are untrue, but that issue is not relevant here.  As a matter of law, these two subjective statements are not legally material, and because they are at most subjective, they cannot be relevant to objective baselessness.

---

*Computer Group, Inc.,* 362 F.3d 1367, 1374 (Fed. Cir. 2004). There does not appear to be any difference between the Federal Circuit and the Fifth Circuit on any of these issues.
[3] *See Innovatio*, 921 F. Supp. 2d at 913.
[4] *See, e.g., Globetrotter,* 362 F.3d at 1376; *Golan v. Pingel Enter.,* 310 F.3d 1360, 1371 (Fed. Cir. 2002); *Innovatio*, 921 F. Supp. 2d at 911.

The third and primary allegation made by the FTC is that MPHJ's third letter represented a "threat to sue" where the FTC contends MPHJ did not "intend to sue." *See* Dkt. 1-24 at ¶¶ 42-44; Dkt. 20 at 1.  This accusation is false.  But, here as well, that is not the issue.  The courts have held such an allegation is, at most, related only to the subjectively baseless prong of negating First Amendment protection.  It is legally irrelevant to the first prerequisite to show objective baselessness.[5]

The FTC insists the First Amendment is irrelevant here, and that Section 5 of the FTC Act applies without any need to show objective and subjective baselessness. Dkt. 20 at 16-18.  It is this legal issue which MPHJ brings before the Court by this suit – that none of the bases alleged by the FTC as a violation of Section 5 can, as a matter of law, establish objective baselessness, which is a required predicate to overcoming First Amendment protection.

### C.    Prior Decisions Demonstrate The FTC's Allegations Fail To Negate MPHJ's First Amendment Protection

In Nebraska, in July 2013, the Attorney General decided to take action against MPHJ and did so by issuing a Cease and Desist Order against MPHJ's counsel, Farney Daniels.  That broad Order impacted not only MPHJ, but another firm client, Activision TV, Inc. (now "Activelight, Inc.").  Activision and MPHJ each filed suit seeking a declaratory judgment that the Order against their counsel unlawfully interfered with their First Amendment rights to send patent communications, and their constitutional rights to counsel.  The Nebraska District Court has granted preliminary injunctions in favor of each client, finding that *Globetrotter* applies to the patent enforcement conduct of each party. *See* Exhs. A, B & B-1–B-4.

---

[5] The Federal Circuit has repeatedly reaffirmed this holding. *See, e.g., GP Indus. v. Eran Indus.*, 500 F.3d 1369, 1372 (Fed. Cir. 2007), (allegations regarding threats to sue without intent to follow through relate, at best, to subjective baselessness and were insufficient to avoid First Amendment protection); *Globetrotter*, 362 F.3d at 1375 (holding that threats to sue without intent to sue constituted, at most, an attempt "to demonstrate subjective bad faith."). *See also Golan*, 310 F.3d at 1371-72.

Specifically, as to MPHJ, the Court found that none of the allegations made against MPHJ rise to the level of objective baselessness, and thus cannot negate MPHJ's First Amendment protection.  It further concluded that MPHJ was "highly likely" to be granted a permanent injunction, and ordered the parties to brief summary judgment. *See* Exh. B.

Of interest here is what happened next.  The Nebraska Court's Order as to MPHJ was issued the day after MPHJ filed this suit.  The Nebraska AG then first saw the FTC's complaint. A week later, the Nebraska AG filed a Motion for Reconsideration, asserting every allegation the FTC makes in its Complaint. *See* Exhs. C-1–C-5.  On April 4, 2014, the Nebraska court denied the Motion for Reconsideration. Exh. C.  In doing so, the court concluded that the Nebraska AG's assertion of the FTC's allegations did not "show evidence of either objective or subjective conduct indicative of bad faith" necessary to negate First Amendment protection under *Globetrotter*. *Id.*

Thus, here, when the FTC contends that MPHJ's First Amendment position fails to even state a claim, the Nebraska District Court has instead found that the FTC's allegations are not even sufficient to avoid a preliminary injunction based upon those claims.

### D.    FTC's Threats Of Suit Against MPHJ

MPHJ will demonstrate herein that because its suit rests on First Amendment claims, ripeness may be established by showing a "credible threat" to sue, and that "finality of agency action" is not required.  However, the FTC's conduct here constitutes not only a "credible threat of suit," but also "finality of action" as that term is used in the context of ripeness considerations.

In July 2013, the FTC sent a subpoena to both MPHJ and its counsel, seeking information about MPHJ's patent enforcement activity described in the Complaint (Dkt. 1). MPHJ and its counsel fully complied with that subpoena, and with certain follow-up questions from the FTC,

by September 2013. Dkt. 1 at ¶¶ 129-133; Exh. E at ¶ 6.[6]

On December 17, 2013, Mr. Dan Hanks, an FTC attorney, spoke with Mr. Robert Taylor, counsel for MPHJ and Farney Daniels. *Id*. at ¶ 8.   Mr. Hanks informed Mr. Taylor that having reviewed the material produced, the FTC planned to bring suit against MPHJ, Farney Daniels, and its principals. *Id*.   Mr. Hanks explained that its main allegation was that MPHJ and its counsel had made threats to sue without intending to bring suit. *Id*. at ¶ 10.   Mr. Taylor expressed surprise that the FTC would base its suit upon assumptions about the subjective intent of MPHJ and its counsel without having first at least deposed the relevant persons. *Id*.   Mr. Hanks informed Mr. Taylor that the FTC was satisfied that it did not need to take any depositions, as it was confident it could bring its suit based upon the documents that had been provided. *Id*.

During that same call, Mr. Hanks told Mr. Taylor that the FTC would refrain from filing the Complaint if the accused entities and persons would agree to a "Stipulated Order for Permanent Injunction and Monetary Judgment" ("Stipulated Order").   He sent Mr. Taylor copies of both documents. *Id*. at ¶ 8; Dkt. 1-24; Exh. D.   Mr. Hanks stressed that the FTC would only authorize discussions regarding the Stipulated Order for a period of 30 days, which ended January 10, 2014. Exh. E at ¶¶ 8-9.   After that, Mr. Hanks explained, there would be no further discussion, and the FTC would proceed with its plans to bring suit. *Id*.

Because of the intervening holidays, the first conversations between Mr. Taylor, Mr. Farney, and Mr. Hanks occurred on January 8, 2014. *Id*. at ¶ 16.   In that conversation, Mr. Farney first attempted to explain to Mr. Hanks the First Amendment issues and other concerns presented by the FTC's complaint. *Id*.   After a few minutes, Mr. Hanks interrupted Mr. Farney,

---

[6] Courts may consider declarations submitted by a plaintiff in response to motions to dismiss where the declarations' authenticity is not disputed. *See MedImmune v. Genentech,* 549 U.S. 118, 121 (2007). *See also Walch v. Adjutant Gen.'s Dep't,* 533 F.3d 289, 293-94 (5th Cir. 2008); *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006).

and stated that he did not understand why Mr. Farney was discussing the draft complaint, as that document was not up for discussion, and the FTC did not intend to change it. *Id*. Mr. Hanks indicated that the only document for which he was willing to discuss possible changes was the draft Stipulated Order.[7] *Id*. In agreeing to speak again, Mr. Hanks refused to have that conversation take place sometime after January 10, insisting that date was a nonmovable deadline for any discussions. *Id*. at ¶¶ 16-17.

On the afternoon of January 10, the parties had a follow-up conversation. *Id*. at ¶ 18. Mr. Hanks made it clear that the FTC was not willing to make any material changes to the Stipulated Order, and Mr. Hanks reiterated that "5 p.m." was his cutoff and there would be no discussions past that point. *Id*. At the end of the call, Mr. Hanks conceded that the government would not likely file suit after 5 p.m. on a Friday, and agreed to give Mr. Taylor and Mr. Farney the weekend to discuss with MPHJ the final minor concessions offered by the FTC in connection with the Stipulated Order. *Id*. at ¶ 19. He stressed that he needed a final answer no later than Noon Eastern Time on Monday. *Id*.

After discussing the matter over the weekend, it became apparent to MPHJ that neither it, nor its counsel, could agree to the demanded Stipulated Order. *Id*. at ¶ 20. It also was clear that MPHJ could not continue its patent enforcement activity while living under the cloud of waiting for the FTC to file its threatened complaint, and could not find counsel willing to do so either. *Id*. MPHJ thus brought the present suit.[8]

On these facts, it is clear the FTC's actions presented a "credible threat" of suit against MPHJ for its constitutionally protected activity. For ripeness purposes, it is also clear the FTC's

---

[7] The Stipulated Order included draconian demands. *Id.* at ¶ 12; Exh. D.
[8] The FTC repeatedly alleges that MPHJ hastily filed this suit "upon receipt" of the FTC's complaint. *See* Dkt. 20 at 2, 7. The Court can see this is false, and instead this suit was filed only after it became clear the FTC's position was final and non-negotiable. Exh. E at ¶¶ 19-20.

actions were "final."  The FTC contends otherwise, but cites no evidence of what, if anything, remains for the FTC to do.[9]  Indeed, it even fails to sign its Motion where it makes the unsupported allegations of lack of finality.[10]

The FTC's clear threat to sue immediately after January 10 is now surprisingly contradicted by its Motion to Dismiss filed March 28.[11]  The FTC now claims that it did not have an intent to sue at the time it was making its threat and demanding MPHJ and its counsel sign the Stipulated Order.  The Court will readily see the large irony in the fact that the FTC's principal (and false) allegation against MPHJ was that MPHJ was threatening to sue without an intention to sue, when in fact it is the FTC that now claims to have engaged in such behavior.[12]

## ARGUMENT

## SECTION ONE: RULE 12(B)(1) MOTION

To support jurisdiction, there must be: a waiver of sovereign immunity; a federal question; ripe claims; and the plaintiff must have standing. *McCall v. Dretke*, 390 F.3d 358, 361 (5th Cir. Tex. 2004); *Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006).

---

[9] For example, the FTC's counsel asserted that the FTC was still contemplating "administrative action."  But he submits no evidence of this, and the record contradicts his assertion.  In its Complaint styled for filing in this Court, and in its proposed Stipulated Order, the FTC demanded monetary relief. *See* Dkt. 1-24; Exh. D.  But the FTC cannot get monetary relief from an administrative process without the aid of a court. *See* 15 U.S.C. § 53(b).  Plainly the FTC had already decided to proceed in this federal court, and so styled its complaint.

[10] Under this Court's Local Rule 10, and FED. R. CIV. P. 11, the FTC's Motion could be dismissed on this basis.  In any event, to the extent the unsupported allegations are inconsistent with MPHJ's Complaint, it is of course MPHJ's allegations which must be accepted as true at this stage. *Perez v. Araiza*, 2007 U.S. Dist. LEXIS 80995, at *3 (W.D. Tex. Oct. 10, 2007).

[11] In contrast to the FTC, MPHJ actually did intend to sue.  But the issue is not whether either party actually had an intent to sue.  Unlike the FTC, MPHJ does not contend that there is something necessarily unlawful about an empty threat per se.  Instead, the issue here is that such threats do subject one to declaratory judgment actions from the recipients of the threats.

[12] In any event, the entire premise of the FTC's position would only make sense if MPHJ was "threatening to sue without intending to sue" a non-infringer for the purpose of getting that non-infringer to pay royalties that it did not owe.  But one can simply look at the letters themselves to see that such an allegation simply has no basis where each of the letters emphatically makes clear that MPHJ had no interest in seeking a royalty from any non-infringer. *See* Dkts. 1-11–1-13.

The FTC's Motion under Rule 12(b)(1) contends only that MPHJ's claims are not "ripe." The FTC does not deny the "waiver" and "federal question" requirements are met.[13,14]  The FTC does not deny that MPHJ has standing.[15]  Ripeness requires that an injury will likely occur, that the fact record is sufficiently developed, and that the plaintiff would suffer hardship by refusal of jurisdiction. *Am. Forest and Paper Ass'n v. U.S. E.P.A.*, 137 F.3d 291, 297 (5th Cir. 1998). *See also Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967).

The FTC contends that MPHJ's claims are not ripe because the FTC's conduct did not represent "final agency action." Dkt. 20 at 11-15.  This position is wrong on two counts.  First, because MPHJ's Complaint alleges the FTC's threatened suit has impermissibly interfered with and "chilled" MPHJ's First Amendment rights, the Courts apply a "relaxed" test for ripeness that requires only showing a "credible threat" of suit, a test easily met here.[16]  Separately, even if the FTC's "finality" test for ripeness applied, the FTC's conduct is "final" for jurisdiction purposes.

---

[13] 5 U.S.C. § 702 waives sovereign immunity if the claim seeks nonmonetary relief, and alleges that an agency or its officers acted or failed to act in an official capacity or under color of legal authority, and applies to constitutional and statutory claims without regard to Section 704. *See, e.g., Trudeau*, 456 F.3d at 186-187; *Anderson v. Jackson*, 556 F.3d 351, 359 (5th Cir. 2009); *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1344 (Fed. Cir. 2011); *Veterans for Common Sense v. Shinseki,* 644 F.3d 845 (9th Cir. 2011).

[14] MPHJ alleges jurisdiction in part on 28 U.S.C. § 1331. Dkt. 1 at ¶16.  MPHJ's claims of violations of the First Amendment and federal law plainly present federal questions. *See, e.g., Trudeau*, 456 F.3d at 187 (under Section 702, "[t]he district court had subject matter jurisdiction to hear [plaintiff's First Amendment] suit under 28 U.S.C. § 1331, and its dismissal of the complaint for lack of jurisdiction pursuant to Rule 12(b)(1) was erroneous.").

[15] Standing requires injury, causation, and redressability. *See, e.g., In re Deepwater Horizon,* 739 F.3d 790, 799 (5th Cir. 2014).  MPHJ has injury, and it is plain that it is the FTC causing that injury, and that the declarations MPHJ seeks would afford relief. *See Prestage Farms, Inc. v. Bd. of Supervisors*, 205 F.3d 265, 268 n.7 (5th Cir. 2000) (in First Amendment claims, "[t]he justiciability doctrines of ripeness and standing often intersect because the question of whether a plaintiff has suffered an adequate harm is integral to both."); *Cooksey v. Futrell,* 721 F.3d 226, 240 (4th Cir. 2013).

[16] *See also Prestage*, 205 F.3d at 268 n. 7 ("like standing, ripeness requirements are also relaxed in First Amendment cases."); *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1500 (10th Cir.1995) ("The primary reasons for relaxing the ripeness analysis in th[e] [First

I.    **BECAUSE MPHJ'S ACTIVITY IS CONSTITUTIONALLY PROTECTED, IT'S CLAIMS ARE RIPE WHERE THE FTC'S CONDUCT REPRESENTED A "CREDIBLE THREAT" OF SUIT THAT "CHILLS" THAT ACTIVITY**

A.    **Where MPHJ's Claims Are For Impairment Of First Amendment Rights, A "Credible Threat" Against That Activity Establishes Actual Or Likely Injury**

Chilling a plaintiff's exercise of First Amendment rights satisfies the injury requirement for ripeness. *See Houston Chronicle Publ'g Co. v. City of League City, Texas*, 488 F.3d 613, 618 (5th Cir. 2007) ("Chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement.").  A "threat of suit" is sufficient to establish that there is a "chilling" of the plaintiff's First Amendment rights. *See Rangra v. Brown*, 566 F.3d 515, 519 (5th Cir. 2009) ("A credible threat of present or future prosecution [against First Amendment activity] is an injury sufficient to confer standing, even if there is no history of past enforcement."); *see also Shields v. Babbitt*, 229 F. Supp. 2d 638, 652-53 (W.D. Tex. 2000) (holding that an official's threat to enforce a statute against a plaintiff is enough to create ripeness permitting the plaintiff to challenge a statute's constitutionality if the plaintiff alleges that he had engaged, was engaging, or desired to engage in the prohibited activity).[17]  Here, the FTC investigated and threatened suit, chilling MPHJ's exercise of its First Amendment rights, and creating ripeness.

Thus, where a city threatened to sue the local newspapers if they continued to sell papers near a roadway, the "threat of suit" placed sufficient chill on the newspapers to create ripeness. *Houston Chronicle*, 488 F.3d at 618.  The threat against the exercise of First Amendment rights established ripeness even though no suit had been brought.  Similarly, where a television station

---

Amendment] context is the chilling effect that potentially unconstitutional burdens on free speech may occasion"); *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010) (similar).

[17] Other circuits agree. *See S.C. Citizens for Life, Inc. v. Krawcheck*, 301 Fed. Appx. 218, 221 (4th Cir. 2008) ("a plaintiff bringing a First Amendment claim need only show a 'credible threat of prosecution,' rather than a 'threat of specific future harm.'") (citation omitted); *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 390 (4th Cir. 2001) (holding that concrete plans to engage in protected activity with a fear of prosecution constituted imminent and immediate harm); *Briggs v. Ohio Elections Comm'n,* 61 F.3d 487, 492 (6th Cir. 1995) (similar).

wanted to charge higher rates for political advertising than permitted, it did not have to charge those rates and be sued before the claims were ripe. *See KVUE Inc. v. Moore*, 709 F.2d 922, 930 (5th Cir. 1983) (where the fear of prosecution is not "imaginary or wholly speculative" then plaintiff need not expose himself to actual prosecution in order to bring a suit for declaration of its First Amendment rights.).

In determining whether a government entity's actions may be considered to have "chilled" a plaintiff's exercise of a constitutional right, the Supreme Court has consistently held that it is not necessary that the defendant had actually brought suit. A <u>credible threat</u> of suit is sufficient. In *MedImmune,* the Supreme Court observed:

> [W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat . . . The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction. For example, in *Terrace v. Thompson*, 263 U.S. 197 (1923), the State threatened the plaintiff with forfeiture of his farm, fines, and penalties if he entered into a lease with an alien in violation of the State's anti-alien land law. Given this genuine threat of enforcement, we did not require, as a prerequisite to testing the validity of the law in a suit for injunction, that the plaintiff bet the farm, so to speak, by taking the violative action. . . . As then-Justice Rehnquist put it in his concurrence [in *Steffel*], "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity." *Id.* at 480. In each of these cases, the plaintiff had eliminated the imminent threat of harm by simply not doing what he claimed the right to do (enter into a lease, or distribute handbills at the shopping center). That did not preclude subject matter jurisdiction because the threat-eliminating behavior was effectively coerced. The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is "a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152 (1967).

*MedImmune*, 549 U.S. at 128-29 (citations omitted). *See also Steffel v. Thompson*, 415 U.S. 452 (1974) ("it is not necessary that [a party] first expose himself to actual arrest and prosecution to be entitled to challenge a statute that he claims deters his exercise of his constitutional rights");

*Initiative*, 450 F.3d at 1088 (a threat is sufficient, as there is "no need for the iron fist to slip its velvet glove").

A chill giving rise to declaratory judgment jurisdiction is effected even if the threatened action is not criminal in nature. *See Cooksey*, 721 F.3d at 238 n.5 (noting that "[t]he threatened governmental action need not even be a criminal prosecution") (citing cases).[18]  None of the cases the FTC cites to contend that final agency action is required involved assertions of First Amendment violations, and they are irrelevant to the ripeness considerations at issue here.[19]

### B.   The FTC's Conduct Certainly Qualifies As A "Credible Threat" Of Suit

The FTC's conduct certainly constitutes a "credible threat of suit" that has chilled MPHJ's activity. Dkt. 1 at 129-136; Exh. E at ¶¶ 9-20.  That activity is protected by the First Amendment, as explained *supra*.  Here, the FTC sent MPHJ a complaint, which it said it planned to file if MPHJ did not agree to the terms of the Stipulated Order within 30 days, on or before January 10, 2014, and after that date there would be no further discussions with MPHJ. *Id.* MPHJ alleged the FTC's unlawful threats interfere with MPHJ's patent enforcement activity, which it would continue were it not for that threat. *Id.*  These allegations by MPHJ plainly are sufficient to allege that the FTC's conduct presents a "credible threat" of suit which chills MPHJ's exercise of its First Amendment rights and makes MPHJ's claims ripe.[20]

---

[18] In *Susan B. Anthony List et al v. Driehaus et al,* a case now pending before the U.S. Supreme Court (Dkt. 13-193), the government has intervened and sided in pertinent part with the petitioners, whose position is that even an indirect threat of suit against First Amendment activity, if that activity can be reasonably expected to occur again in the future, is sufficient to give rise to jurisdiction. *Susan B. Anthony List et al v. Driehaus et al.*, No. 13-193 (Mar. 2014), *available at* http://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/briefs-v3/13-193_usa_pr.authcheckdam.pdf.

[19] The FTC's citations to *Ewing, Myers, Southeastern Minerals, Alcon, Wilton*, *Ohio Forestry* and other cases (*see* Dkt. 20 at 10-11), all fail to present the special First Amendment considerations present here and are distinguishable.

[20] *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (explaining that once an agency action requires a "plaintiff to adjust his conduct immediately," [s]uch agency action is 'ripe' for

Here it is worth noting there is not only a "credible <u>threat</u>" of suit, but the FTC is sufficiently firm in its position against MPHJ that it is assisting the Nebraska AG in its case in Nebraska.  The FTC is providing the AG evidence and information the FTC obtained in confidence under subpoena, to have the AG to assert that evidence and argument in that case against MPHJ. *See* Exhs. F & F-1.  Thus, here MPHJ faces not only the <u>threat of suit</u> by the FTC directly, but of having the FTC <u>actually litigate</u> these same issues by proxy, using state Attorney Generals as surrogates.  Any contention by the FTC that it has reached no final position as to MPHJ's conduct, or its First Amendment claims, or that it is undecided whether to assert its claims against MPHJ, is simply contradicted by the facts and its actions.

**C.    The FTC's Threat Of Imminent Suit Certainly "Chills" MPHJ's Exercise Of Its First Amendment Rights**

While demonstrating a "credible threat" of suit against First Amendment rights is sufficient alone to establish standing and ripeness, MPHJ can also show separately that its conduct specifically has been "chilled."  Threatened action by the government is sufficiently "chilling" if it is "likely to deter a person of ordinary firmness from the exercise of First Amendment rights." *See Benham v. City of Charlotte*, 635 F. 3d 129, 135 (4th Cir. 2011) (In First Amendment cases, the injury-in-fact element is satisfied by a sufficient showing of "self-censorship, which occurs when a claimant is chilled from exercising h[is] right to free expression."); *Cooksey*, 721 F.3d at 236-38; *MedImmune*, 549 U.S. at 128-29.  MPHJ has been

---

review at once, whether or not explicit statutory review apart from the APA is provided"). *Abbott Labs*, 387 U.S. at 153 ("Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts ... must be permitted [.]"). *See also District of Columbia v. Heller,* 554 U.S. 570, 575-76 (2008) (allowing pre-enforcement challenge to registration requirement for handgun); *Doe v. Bolton,* 410 U.S. 179, 188 (1973) (in abortion challenge, "physician-appellants … should not be required to await and undergo a criminal prosecution as the sole means of seeking relief").

deterred from resuming its conduct until the FTC's threats are resolved. *See* Dkt. 1 at ¶¶ 131-33; Exh. E at ¶ 20.

The Tenth Circuit decision in *Initiative and Referendum Institute v. Walker*, 450 F.3d 1082 (10th Cir. 2006) provides a useful three-part test for whether a plaintiff's conduct has been "chilled:" (1) evidence that in the past plaintiffs have engaged in the type of speech affected by the threatened government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such activity; and (3) a plausible claim that plaintiffs presently have no intention to do so *because of* a credible threat that action will be taken. *See Initiative*, 450 F.3d at 1089.  As to the first factor, the FTC's complaint shows MPHJ and its counsel have previously engaged in the threatened conduct. Dkt. 1-24.  As to the second and third factors, MPHJ's Complaint makes it clear that MPHJ desires to resume its patent enforcement activity, and that it does not presently intend to do so because of the FTC's threat.[21,22] Exh. E at ¶ 20.

The FTC communicated to counsel for MPHJ that unless it signed the Stipulated Order, the FTC planned to file suit against MPHJ. Exh. E at ¶ 8; Exh. D.  As a result, MPHJ's ability to enforce its patents is chilled, as it has a reasonable fear of being subject to suit and sanctions by

---

[21] The FTC contends its threats have no impact on MPHJ. Dkt. 20 at 14.  The FTC references MPHJ's ongoing suit in Vermont, but that federal court just agreed with MPHJ that *Globetrotter* applies. *See State of Vermont v. MPHJ Technology Investments, LLC*, No. 13-cv-00170, Dkt. 61 (D. VT. Apr. 15, 2014) (remanding the Vermont AG's state court suit back to state court because, while *Globetrotter* applies, in that case it is an affirmative defense the Court held should be heard by the state court on remand). Also, that case has no effect outside Vermont. For example, in New York MPHJ has reached an agreement with the New York AG that it may send patent enforcement letters into New York that will not be asserted to violate any state law. Exhs. G & G–1–G-2. But the FTC's threat remains an impediment.

[22] The FTC notes that Inter Partes Review proceedings have been initiated in the Patent Office as to two of MPHJ's five patents.  Recently a request has been filed for a second proceeding as to one additional patent and some, but not all, claims of another.  But this latter patent still has unchallenged claims that MPHJ could enforce, along with the remaining unchallenged patent, if the cloud of the FTC's threat was removed. Further, MPHJ's patents, by law, are presumed valid and it may continue to enforce those patents until they are found otherwise. 35 U.S.C. § 282(a).

the FTC for its enforcement of its patents. [23]   The uncertainty surrounding whether and how

MPHJ may enforce its patents against infringers results in unbridled impairment of its patent

rights and halts MPHJ's enforcement efforts.   Contrary to the FTC (Dkt. 20 at 13), there is no

speculative injury here – it is concrete, actual, imminent and imposed upon MPHJ by the FTC.[24]

### D.   The Other Factors For Ripeness Are Easily Met Here

Having shown "injury" for purposes of ripeness, MPHJ need only show the <u>factual record

is sufficiently developed</u> and that it would suffer <u>hardship</u> if the case was dismissed. *See Am.

Forest and Paper Ass'n*, 137 F.3d at 297;  *Abbott Labs.,* 387 U.S. at 149.

First, it is clear that the factual record is sufficiently developed.   The letters sent by MPHJ

are already included as exhibits to the Complaint. Dkts. 1-1–1-13.  The FTC's allegations as to

why those letters violated Section 5 have been expressed in its complaint, proposed Stipulated

Order, and Motion to Dismiss. Dkt. *See* Dkt. 1-24; Exh. D; Dkt. 20 at 1-3.  The FTC has also

stated that it is prepared to file the proposed complaint upon the discovery it has. Exh. E at ¶ 10.

MPHJ's suit rests on the legal question of whether any of the FTC's allegations, even if

true, are sufficient to negate First Amendment protections, and the legal question of whether the

FTC has statutory authority to interfere with MPHJ's constitutionally-protected activity.

---

[23] Here, MPHJ can demonstrate more than just "chill," but also injury-in-fact.  If MPHJ proceeds with its activity, the FTC has said it will sue, and it will seek payment to the government of all of the royalties received by MPHJ. Exh. E at ¶¶ 8 & 12.  Because MPHJ incurs costs in its patent enforcement efforts, that means its net loss will only increase as its enforcement activity continues.  As such, the FTC's threat of suit puts MPHJ at risk of unnecessary and irreparable loss and thus injury is likely if this suit is not heard.  Such injury is plainly enough to show ripeness. *See, e.g., Meese v. Keene,* 481 U.S. 465, 473-74 (1987).  Further, the delay caused by the FTC's threats affect MPHJ's right to pursue past damages (35 U.S.C. § 286), and raise laches issues. *State Contr. & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057 (Fed. Cir. 2003).

[24] The FTC repeatedly asserts that MPHJ's suit was brought to impede, block, or enjoin an ongoing administrative proceeding, or to cause a "piecemeal" proceeding. Dkt. 20 at 1, 2 & 9. This is false.  MPHJ had already fully complied with the FTC's subpoena.  This suit seeks only a declaration on points of law, which are relevant to the FTC's threats of suit which have chilled MPHJ's First Amendment rights. The general reference to injunction included in the Complaint is limited to only that which MPHJ may show itself to be entitled.

Contrary to the FTC (Dkt. 20 at 14), all of the issues raised by MPHJ's suit are legal, and amenable to disposition by summary judgment.  Upon receipt of the FTC's Reply, and assuming it does not improperly raise new issues, MPHJ intends to follow with dispositive motions for summary judgment.

As to the last element for ripeness, it is clear that MPHJ has, is and will suffer hardship if its suit is dismissed.  Without a resolution of the FTC's threatened suit, MPHJ will be "chilled" in its exercise of its First Amendment rights, and "chilled" in its ability to have counsel represent it in connection with its patent enforcement activity.  Further, MPHJ will have no assurance that any settlements it might enter into with any infringers in the future might not be subject to disgorgement of the entire amounts received, causing MPHJ to suffer a net loss that would only increase with future enforcement activity.  Finally, unlike many First Amendment cases, this situation involves the exercise of rights with respect to a time-limited asset. *Cpg Prods. Corp. v. Pegasus Luggage*, 776 F.2d 1007, 1016 (Fed. Cir. 1985) ("the patent laws [] provide for *time-limited* rights to exclude others from making, using or selling inventions covered by patent claims") (emph. in original).

## II.  EVEN IF THE COURT APPLIED THE FTC'S PROPOSED "FINALITY" TEST FOR RIPENESS, THAT TEST IS MET HERE

The FTC is simply wrong that a "finality" requirement applies when an agency's threat of suit chills the exercise of First Amendment rights.[25]  But the FTC also is clearly misguided in its

---

[25] As MPHJ's claims arise under the First Amendment, "final agency action" is not needed. *See Trudeau*, 456 F.3d at 188 & 190; *Hubbard v. E.P.A.*, 809 F.2d 1, 11 & n.15 (D.C. Cir. 1986) (holding that the plaintiff could sue the EPA for violating the First Amendment because "the court's power to enjoin unconstitutional acts by the government . . . is inherent in the Constitution itself," and "[[t]here is a] presumed availability of federal equitable relief against threatened invasions of constitutional interests.") (citation omitted); *Beedle v. Wilson*, 422 F.3d 1059, 1066 (10th Cir. 2005) ("We have held that 'government action which chills constitutionally protected speech or expression contravenes the First Amendment.'") (quoting *Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996)); *Wolfe v. Barnhart*, 446 F.3d 1096, 1103

view that there has been no "final agency action" subject to judicial review here.

Since it received MPHJ's responses to its CID in August of 2013, the FTC has not requested further information from MPHJ. Exh. E at ¶ 6. Further, Mr. Hanks expressly confirmed that the FTC did not need further discovery regarding MPHJ's activities, including any depositions, in order to file the complaint. *Id.* at ¶ 10. The FTC has prepared a complaint, captioned for the Western District of Texas, and made it clear that if MPHJ did not enter into the Stipulated Order by January 10, 2014, then the FTC planned to file it. *See* Dkt. 1-24; Exh. E at ¶ 8. The FTC even has been assisting the Nebraska AG in his assertions of the same allegations. Exhs. F & F-1. Clearly the FTC had made up its mind regarding MPHJ's activities – including its decision to file suit – and there is no "ongoing administrative process" being conducted by it. Allegations to the contrary are contained solely in a Motion not even signed by counsel. The FTC presented nothing to support its allegations in its Motion, and cannot present new support in Reply.

Where an agency has provided detailed specific allegations of wrongdoing, and threatened suit or put the plaintiff at risk of civil liability, such conduct is sufficiently "final" for purposes of ripeness, even outside the First Amendment context. For example, in *Gate Guard Servs. L.P. v. Solis*, 2011 U.S. Dist. LEXIS 75508 (S.D. Tex. July 12, 2011), the Department of Labor argued that there was no "final agency action" because its opinions about the plaintiff's

---

n.6 (10th Cir. 2006) ("Wolfe's First Amendment challenge to the regulation itself . . . stands independent of the APA"); *Alliance for Natural Health U.S. v. Sebelius*, 714 F. Supp. 2d 48, 59 & n.20 (D. D.C. 2010) (asserting direct First Amendment claim for declaratory relief against FDA because "The Court 'has the authority to examine and rule on any actions of a federal agency that allegedly violate the Constitution,' apart from the power of review granted by the Administrative Procedure Act") (citation omitted); *Sanjour v. EPA*, 56 F.3d 85, 90-99 (D.C. Cir. 1995) (considering First Amendment challenge to federal agency regulation without reference to APA); *Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878, 883 (10th Cir. 1997) (indicating that an individual may bring a First Amendment claim against a federal agency regulation as long as the individual has standing to do so).

wrongdoing were not final and because the DOL had not yet decided whether to file an enforcement action. *See id* at *13-26. The court rejected the DOL's arguments, because the DOL had previously served the plaintiff with a 25-page memorandum summarizing its wrongdoing, and because the DOL failed to provide evidence that the plaintiff could have administratively appealed those determinations prior to filing suit. The Court concluded <u>the presence of a written document alleging wrongdoing</u> was sufficient to find "final agency action" for purposes of ripeness. *See id.* Here, the FTC's 15-page complaint and 12-page Stipulated Order certainly is at least as final as a "memorandum."

In *Western Illinois Home Health Care, Inc. v. Herman,* 150 F.3d 659, 663 (7th Cir. 1998) the Court concluded that a letter from a DOL Assistant Director setting forth the agency's "enforcement position" constituted final and reviewable agency action. In *Herman v. Excel Corp.*, 37 F. Supp. 2d 1117, 1122 (C.D. Ill. 1999), the Court found that a letter sent by an agency's counsel to the plaintiff's counsel stating that the matter would be referred for litigation if the plaintiff did not respond within 10 days constituted final agency action. In *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 437 (D.C. Cir. 1986), the Court held that a letter from an agency official stating the agency's position and threatening enforcement action unless the company complied constituted final agency action. These cases make clear that where the FTC had investigated MPHJ's conduct, declared it did not need to investigate further to file a detailed complaint against MPHJ in this Court, and demanded the signing of a Stipulated Order or else the suit would be filed, the FTC's conduct is sufficiently "final" for this Court to find ripeness. This conclusion is consistent with the Supreme Court's positions in *MedImmune* and *Abbott*

*Labs*. *See also Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020-23 (D.C. Cir. 2000).[26]

The FTC asserts that MPHJ must wait until the FTC decides to file suit, and only then can MPHJ raise its claims as defenses in the FTC's case. *See* Dkt. 20 at 9.  But this is exactly the scenario which is contemplated by the Declaratory Judgment Act. *See, e.g., MedImmune,* 549 U.S. at 129 (and cases cited); *Abbott Labs*, 387 U.S. at 153.  The Supreme Court has explained that "the core question is whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties." *Abbott Labs*, 387 U.S. at 152; *see also Exxon Chem. Am. v. Chao*, 298 F.3d 464, 466-67 (5th Cir. 2002).  MPHJ has sufficient standing because the FTC's complaint evidences the completion of its decision-making process, and its threats of suit plainly affect MPHJ.

The FTC cites a number of cases in its brief to argue finality of agency action is not present here. Dkt. 20 at 10 n.7.  None of those cases involve a situation where the agency has declared it has no intention to investigate further, plans to file suit imminently, and will only refrain from filing suit if the target and its counsel sign a draconian Stipulated Order.  Indeed, most of the cases cited by the FTC involve a specific statutory right of the FDA to seize drugs prior to a hearing, and have nothing to do with this case.[27]

---

[26] The FTC cites cases (Dkt. 20 at 13 n.8) to argue its Complaint is like a "warning letter." These cases, including *Holistic*, actually support MPHJ's position that the FTC's position here is "final," because unlike the warning letters in those cases, here the FTC did not say its position was still under review and that its action was not final. Mr. Hanks said just the opposite – that MPHJ would be sued sometime after January 10, 2014 by the filing of the complaint provided to MPHJ, if MPHJ did not accept the FTC's demanded Stipulated Order. Exh. E at ¶ 8.

[27] For example, in *Ewing* the statute specifically provided for pre-hearing seizure by FDA, and thus agency action could not be addressed until after seizure. Similar FDA seizure issues also distinguish the following cases cited by the FTC – *Alcon, Pharmadyne, Parke* and *Genendo. Southeastern Minerals* was also similar to *Ewing*, but it is worth noting that the court was found to have jurisdiction to at least enjoin FDA harassment.  The *Gen. Fin. Corp.* case is also distinguishable because there the plaintiff was challenging the FTC at the subpoena stage rather

The FTC also cites *FTC v. Standard Oil Co.*, 449 U.S. 232, 239-43 (1980) (Dkt. 20 at

12).  But in that case, the FTC had already initiated an administrative proceeding that was

ongoing when one of the defendants filed a district court suit to enjoin that ongoing action. *Id.*

Here the FTC decided instead to threaten suit in this district court, and to seek monetary relief

that would not have been available in an administrative proceeding. *See* note 9, *supra*.  MPHJ's

suit does not interfere with any ongoing administrative action or investigation.[28]

This is not a case where MPHJ is interfering with an ongoing FTC investigation.  Instead,

the FTC has stated it has all the evidence it needs, and has prepared and said it plans to file a

complaint.  Given the written complaint setting forth its position, the written demanded

Stipulated Order, and even its allegations in its Motion to Dismiss, the FTC's position plainly is

sufficiently "final" for declaratory judgment jurisdiction purposes, even if in this First

Amendment context a requirement for "finality" is wrongly considered to be relevant.


### SECTION TWO:  RULE 12(B)(6) MOTION

I.  **MPHJ'S COMPLAINT SHOULD NOT BE DISMISSED UNDER RULE 12(B)(6)**

In reviewing a Motion under Rule 12(b)(6), the Court must "construe the complaint in the

light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor."

*Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).  "[T]he plaintiff [need only] plead

'enough facts to state a claim to relief that is plausible on its face.'" *Id.* MPHJ meets this burden.

---

than after the FTC had finished its investigation, threatened suit, and demanded sanctions, as is
the case here.  *Holistic* is similarly distinguishable, and is addressed in note 26, *supra*.
[28] For example, in *Myers*, the NLRB had already initiated an administrative proceeding before
suit was filed. *Great Plains* and *Direct Mktg.* involve similar circumstances. *Wilton* is similarly
distinguishable, as that case involved a federal court stay of a declaratory judgment action
between private parties of a state court previously threatened and then shortly thereafter filed.

**A.     MPHJ's First Amendment Counts Plainly State Valid Claims, As The Legal Basis Upon Which They Rest Has Already Been Upheld By A Prior Federal Court Applying Law Of Both The Federal Circuit And The Fifth Circuit**

The FTC contends that MPHJ's First Amendment claims fail under Rule 12(b)(6) because First Amendment petition immunity does not apply to MPHJ's patent enforcement activity and would not immunize MPHJ from suit. Dkt. 20 at 17.[29]  But as noted earlier, the Nebraska district court in a pending case involving MPHJ and the same communications that are at issue here, issued a preliminary injunction against the Nebraska AG on the basis that First Amendment protection applied under *Globetrotter. See, supra,* at pgs. 7-8.  Further, as also explained earlier, the Nebraska district court recently denied reconsideration of that injunction, finding that none of the allegations presented by the FTC's complaint presents evidence of either objective or subjective baselessness.[30] *Id.*  Plainly, MPHJ's Complaint alleging First Amendment violations by the FTC states a claim sufficient to satisfy Rule 12(b)(6).

The Federal and Fifth Circuits have concluded that the Supreme Court's decision in *Prof'l Real Estate* applies as equally to pre-suit communications as it does to actual suits. *See, supra*, at pgs. 5-6.  The Federal Circuit observed that every circuit court has reached the same

---

[29] The FTC asserts that First Amendment protection does not apply because the FTC does not seek to hold MPHJ liable for the act of sending the letters themselves, but for statements made within them. *See* Dkt. 20 at 18.  But the FTC overlooks that the main allegation within its threatened complaint is that MPHJ threatened suit with no intent to sue.  Clearly it is the act of sending the letters and the non-action of filing suit that the FTC asserts violated Section 5.  Thus, under the FTC's own interpretation of First Amendment protection, it plainly applies here.  In any event, the FTC ignores the well-settled body of law that since the communications here are pre-litigation patent enforcement communications, they are protected under the First Amendment – including the statements made within them.

[30] The Federal Court has made it clear that the FTC's allegation – that MPHJ threatened to sue without intending to sue – is at most relevant to subjective baselessness. *See* note 5, *supra*.  In *Golan*, the court further said that where an assertion was <u>objectively baseless</u> as to infringement, an empty threat of suit might be relevant to subjective bad faith, but not necessarily so.  It noted a patent owner is permitted to "aggressively assert" its patent even if it does not intend to file suit in at least some circumstances.  Thus, the FTC's allegations are additionally deficient because they do not address this point in *Golan* (that even for subjective baselessness, an allegedly empty threat of suit must also be unreasonable). *Golan*, 310 F.3d at 1371-74.

21

conclusion, except for the Tenth Circuit in *Cardtoons* cited by the FTC, (Dkt. 20 at 18 n.12).

*Globetrotter*, 362 F.3d at 1376.  The Ninth Court, in *Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 937-38 (9th Cir. 2006), agreed, and cited favorably to the dissent in *Cardtoons* for the policy reasons supporting this holding.  The *Cardtoons* dissenters noted that to not apply petitioning immunity to pre-litigation communications "requires intellectual property owners to bypass the post office on the way to the court house and avoid the letter carrier in a rush to get to the process server."

*See Cardtoons v. Major League Baseball Ass'n*, 208 F.3d 885, 894 (10th Cir. 2000)(dissent).

The Fifth Circuit, a bit more pointedly, held that applying petition immunity to litigation, but not pre-litigation communications, "would be absurd." *See Coastal States*, 695 F.2d at 1367.

The Federal Circuit has also held a complaint asserting claims against patent-related communications must plead, in addition to the elements of the claim, that the communications were objectively and subjectively baseless.  Failure to do so requires the case to be dismissed under Rule 12(b)(6). *See, e.g., Matthews Int'l Corp. v. Biosafe Eng'g, LLC,* 695 F.3d 1322, 1327, 1332-33 (Fed. Cir. 2012).  Such a pleading would also, of course, be subject to Rule 11.[31]

It is quite clear that the law of both the Federal and Fifth Circuits is that pre-litigation correspondence, including the patent enforcement correspondence here, is protected by the First Amendment unless it can first be shown to be objectively baseless, and then be shown to be subjectively baseless. *See supra,* at pgs. 5-6.  That First Amendment petitioning immunity extends to assertions of federal claims as well as state claims. *See Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999) (Lanham Act is preempted as to patent

---

[31] The FTC cites *In re Trans World Accounts, Inc.* as holding that a false threat of immediate legal action can violate the FTC Act. Dkt. 20 at 7 n.5.  But that case is distinguishable.  It involved debt collection practices, which involves different considerations than the patent infringement inquiry letters MPHJ sent here.  More importantly, it was decided before *Prof'l Real Estate Investors*, *Globetrotter,* and *Coastal States*, and those cases plainly now apply petitioning immunity to pre-litigation communications.

communications unless "bad faith" can be shown); *Globetrotter*, 362 F.3d at 1374 (when *Zenith* says "bad faith," it must be understood to mean "objectively baseless" and "subjectively baseless"). *See also Innovatio,* 921 F. Supp. 2d at 911 (assertions of federal RICO violations in sending of patent demand letters is subject to First Amendment petitioning immunity).  Here, MPHJ in its Complaint has alleged that the allegations of the FTC are legally irrelevant to objective baselessness, and thus cannot be the basis for alleging violation of any federal statute, including Section 5 of the FTC Act.  Plainly, MPHJ's First Amendment declaratory judgment count states a claim against the FTC upon which relief can be granted.

### B.     MPHJ Has Stated A Claim That The FTC Has Acted *Ultra Vires*

The FTC's threatened suit is based upon allegations that MPHJ and its counsel's conduct violated Section 5 of the FTC Act. *See* Dkt. 1 at ¶ 132.  The FTC argues that MPHJ has failed to state a claim because MPHJ only alleged that the FTC exceeded its authority under Section 5(n) of the FTC Act. *See* Dkt. 20 at 15.  But the FTC is wrong in suggesting that MPHJ did not allege the FTC also exceeded its authority under Section 5(a). S*ee, e.g.,* Dkt. 1 at ¶¶ 129-160 & 225-236.  While MPHJ believes its allegations with respect to Section 5(n) state a claim, the FTC simply ignores that MPHJ also alleged the FTC lacked jurisdiction under Section 5(a).

Both Section 5(a) and 5(n) limit the FTC's authority to acts "in or affecting commerce," that cause or are likely to mislead or cause substantial injury to "consumers." *See* 15 U.S.C. §§ 45(a) & 45(n); *see also* Dkt. 20 at 15 n.11.  As alleged in its Complaint, MPHJ's patent enforcement activities were neither acts "in or affecting commerce," nor were they acts misleading or affecting "consumers." *See* Dkt. 1 at ¶¶ 140-160.

It is well-settled that the sending of letters enforcing patent rights cannot be considered "commercial speech" or acts "in or affecting commerce." *See, e.g., Futuristic Fences, Inc. v. Illusion Fence, Corp.*, 558 F. Supp. 2d 1270, 1279-82 (S.D. Fla. 2008) (allegedly false

statements included in cease and desist letters were not considered in or affecting commerce, because they were not sent as marketing and sales tools, but rather, as attempts to protect the patentee's rights, which the patentee believed were infringed);[32] *Avery Dennison Corp. v. ACCO Brands, Inc*., 2000 U.S. Dist. LEXIS 3938, at *21-25 (C.D. Ca. Feb. 22, 2000) (letters enforcing intellectual property rights did not constitute commercial speech because they did not ask the recipient to buy a product and they did not advertise a product); *Escort Inc. v. Fleming*, 2012 U.S. Dist. LEXIS 72193, at *19 (D. Idaho May 23, 2012).  MPHJ's patent licensing inquiry letters <u>informed</u> the infringer of MPHJ's rights and <u>inquired</u> regarding suspected infringements. The letters stressed that MPHJ had no interest in seeking royalties from a non-infringing recipient. Dkt. 1 at ¶ 80; Dkts. 1-11–1-13.  Because the letters did not advertise products or offer anything for sale, but instead were merely inquiries regarding potential ongoing civil torts, and possible resolutions of those torts, they plainly were not "in commerce" nor sent to "consumers."

The FTC repeatedly refers to MPHJ's correspondence as offering to "sell licenses." Dkt. 20 at 5, 6.  But this not only ignores the letters, it disregards the law.  A patent license is not a good or service, and thus, cannot be sold. *See, e.g., digiGan, Inc. v. iValidate, Inc.*, 2004 U.S. Dist. LEXIS 1324, at *14-15 (S.D.N.Y. 2004) (a patent is not a good or service).  It is nothing more than a promise not to sue for infringement. *See TransCore, LP v. Elec. Transaction Consultants Corp*., 563 F.3d 1271, 1275 (Fed. Cir. 2009) (it is well-settled that "a non-exclusive patent license is equivalent to a covenant not to sue").  Because patents and licenses themselves are not considered goods or services for purchase, it follows that the letter recipients cannot be

---

[32] The *Futuristic Fences* court further found persuasive the rule that "cease and desist letters do not [even] confer personal jurisdiction because the letters are not general business activity." 558 F. Supp. 2d at 1281.  This analysis is entirely applicable here, as another federal district court has already held MPHJ's letters did not constitute general business activity. *See Eng'g & Insp. Servs., LLC v. IntPar, LLC,* 2013 U.S. Dist. LEXIS 146849 (E.D. La. Oct. 9, 2013).

considered "consumers" in the context of these letters.  The FTC in its Motion confirms its authority over allegedly deceptive acts extends only to "consumers." *See, e.g.,* Dkt. 20 at 16 n. 11 ("An act or practice is *deceptive* if . . . it is material; that is, likely to affect a <u>consumer's purchase decision</u>.") (emphasis added).  As there are no "consumers" in the context of MPHJ's patent enforcement communications, here the FTC plainly lacks authority.

If there were any doubt that the FTC does not have the authority under Section 5 of the FTC Act to regulate MPHJ's patent enforcement efforts, the Court need only review the patent reform bills that are pending before Congress which, if passed, would ostensibly give the FTC such authority. *See* Exh. H (S. 1720); Exh. I (S. 2049).[33]  Clearly if the FTC had this authority now, there would be no need for Congress to even consider bills that would purport to give it such authority.  It is clear that MPHJ has at least stated a claim for relief that the FTC currently lacks jurisdiction over pre-litigation correspondence related to patent enforcement.

### C.   MPHJ Has Stated A Claim That The FTC Has Interfered With MPHJ's Counsel And The Practice Of Law

The FTC also threatened to sue MPHJ's counsel for activities the Firm engaged in on behalf of MPHJ.  The FTC's interference constitutes the unlawful regulation of the practice of law, improper interference with MPHJ's constitutional right to counsel, and ignores the doctrine of litigation privilege.  MPHJ has stated a claim for relief with respect to all three.

### 1.   MPHJ Has Stated A Claim That The FTC Has Impeded MPHJ's Constitutional Rights By Interfering With Its Counsel

The FTC argues that MPHJ does not have a constitutional right to its counsel and that it has not interfered with MPHJ's counsel. Dkt. 20 at 19-20.  The FTC is wrong on both counts.

---

[33] A review of the testimony at the December 17, 2013 hearing regarding S. 1720 provides further evidence that the FTC currently lacks authority, as Mr. Bossone explained: S. 1720 would bring bad faith demand letters "within the ambit of the Federal Trade Commission's enforcement authority if it qualifies as an unfair or deceptive trade practice." Exh. H-1.

While a party does not have a constitutional right to counsel in a civil suit, a party does have a

constitutional right to access the courts. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12

(2002).  This constitutional right implicitly includes not only a right to counsel, but a right to

choose counsel. *See In re BellSouth Corp.*, 334 F.3d 941, 955, 961 (11th Cir. 2003); *Texas*

*Catastrophe Property Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992) (a civil

litigant's right to the counsel of its choice is implicit in the Due Process Clause of the Fifth

Amendment, as well as in 28 U.S.C. § 1654). "The right to counsel in civil matters 'includes the

right to choose the lawyer who will provide that representation.'" *Id.* at 1181; *see also Mitchell v.*

*Johnston*, 701 F.2d 337, 351 (5th Cir. 1983).  By threatening its counsel with suit for sending

patent inquiry letters on MPHJ's behalf, the FTC is interfering with MPHJ's due process

constitutional right to access the courts. *See Alexander v. Macoubrie*, 982 F.2d 307, 308 (8th Cir.

1992) (an interference with a client's relationship with his chosen counsel operates as a

substantial impediment to the client's constitutional right to meaningful access to the courts);

*Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1427-28 (8th Cir. 1986).[34]

     In fact, as explained above, another Federal District Court has already found that not only

did MPHJ have a constitutional right to its counsel concerning the *exact same* patent

enforcement efforts that are at issue here, but also preliminary enjoined the Nebraska Attorney

General from interfering with that right. *See Activision TV, Inc.,* 2014 U.S. Dist. LEXIS 4455, at

*8; Exh. B.  Thus, it is clear that not only does MPHJ have a right to its counsel and has stated a

claim for relief on this issue, but the FTC's actions have interfered with MPHJ's right to petition

---

[34] The FTC cites *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) as
supporting that MPHJ does not have a right to counsel, but in that case the Ninth Circuit held
that the appellants did not have a sixth amendment right to appointed counsel because it was not
a criminal prosecution.  The same is true for the other two cased cited by the FTC, *Lassiter* and
*Snyder,* and these cases are not relevant here. Dkt. 20 at 19-20.

by threatening its counsel with suit for representing MPHJ.

> **2.    MPHJ Has Stated A Claim That The FTC Has Unlawfully And Unconstitutionally Attempted To Regulate The Practice Of Law**

MPHJ's claim that the FTC lacks authority to regulate lawyers plainly states a claim both because the federal government lacks such authority, and separately because the FTC has not been given such authority. *See, e.g., ABA v. FTC*, 430 F.3d 457, 472 (D.C. Cir. 2005) ("The states have regulated the practice of law throughout the history of the country; the federal government has not.").   The FTC argues that in two cases the FTC has prevailed on claims generally related to the legal profession.  But in both of those cases, the claims were related to the business and entrepreneurial aspects of law, and not the practice of law.  There is little law on this point, but a Washington State court decision concisely makes the distinction.[35]

In *FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990), the FTC asserted antitrust claims where the local bar was fixing prices for the representation of indigent criminal defendants.  This is far different than the question of whether the FTC has authority to regulate the services provided by members of that bar, and interfere with a firm's representation of a client in enforcing that client's patent rights.  In *FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001), the attorney was held to be so integrally involved with the business activity of a credit repair company that he could be held liable for the conduct of that company that violated the Credit Repair Organizations Act.  Clearly that is not the same thing as whether the FTC has authority to regulate lawyers who are simply sending pre-litigation communications on behalf of their clients to entities suspected of committing civil torts against their clients, as is the case here.

The FTC has sought to prevent the Farney Daniels Firm from practicing law in

---

[35] *See, e.g., Short v. Demopolis*, 691 P.2d 163, 59-61 (Wash. 1984) (explaining that while certain entrepreneurial aspects of the practice of law, such as billing and collection, may be regulated, "the actual practice of law," including "gather[ing] essential facts [presuit]" and "pursu[ing] claims against [the client's] opponents," cannot).

representing MPHJ in its efforts to address infringement of its patents that require the sending of infringement inquiry letters. Dkt. 1 at ¶¶ 219-35.  It is clear that the FTC does not have the authority to interfere with the firm's representation of a patent owner in enforcing its patent rights, and such an impediment undoubtedly interferes with MPHJ's First Amendment right to choice of counsel.  And, contrary to the FTC's assertions, the FTC has been reprimanded in the past for attempting to regulate the practice of law. *See ABA v. FTC*, 430 F.3d 457, 469 (D.C. Cir. 2005) (explaining that the FTC's attempt to regulate attorneys was outside its statutory authority, "arbitrary and capricious," and Congress had not given the FTC authority to regulate practicing attorneys); *see also Medical Ctr. Pharm. v. Mukasey*, 536 F.3d 383, 396 n.26 (5th Cir. 2008) citing *ABA*, 430 F.3d at 469 (for the "elephant-in-mousehole" doctrine, in which a federal agency claims authority under an act to regulate that in which the agency does not have authority). Accordingly, MPHJ undoubtedly has stated a claim on this issue.

> **3.      MPHJ Has Stated A Claim That The Firm's Activities On Behalf Of MPHJ Are Protected By the Doctrine Of Litigation Privilege**

The FTC's threats to sue MPHJ's counsel for representing a patent owner engaged in patent licensing activity is conduct that also is barred under the doctrine of litigation privilege. *See* Dkt. 1 at ¶ 236.  The FTC asserts that the litigation privilege only applies in the context of defamation proceedings (Dkt. 20 at 19), but this is incorrect. *See Attaya v. Shoukfeh*, 962 S.W.2d 237, 238 (Tex. App. Amarillo 1998) (the absolute immunity doctrine bars "a defamation <u>or any other civil action</u>") (emph. added).  It is also clear that the litigation privilege applies to bar liability for the statements made in the communications at issue here that were made preliminary to suit. *See Intel Corp. v. Intel-Logistics, Inc.,* 2006 U.S. Dist. LEXIS 34361, at *3 (S.D. Tex. May 30, 2006) ("Texas law allows absolute privilege or immunity for a communication that is related to the litigation").  Specifically, the litigation privilege applies to bar claims similar to

those made by the FTC here, that MPHJ's letters were deceptive. *See, e.g. PSN Ill., Inc. v. Ivoclar Vivadent, Inc.,* 2005 U.S. Dist. LEXIS 21044, at \*22 (N.D. Ill. Sept. 21, 2005).

In *Waterloov Gutter Protection Sys. Co. v. Absolute Gutter Protection, L.L.C.*, 64 F. Supp. 2d 398 (D.N.J. 1999), the question was "whether New Jersey's 'absolute litigation privilege' protects attorneys who send notices of infringement to third parties when federal law permits liability to be imposed for the transmittal of such demand letters on a showing of bad faith." *Id.* at 401.  The court held the communications were protected by the litigation privilege. *Id.* at 413-14 ("Far from emasculating the protections afforded patent holders, the application of New Jersey's 'absolute litigation privilege' only serves this interest, for even a showing of bad faith by a state tort law claimant will not subject a notice-giver to liability under the privilege. If anything, New Jersey's litigation privilege enhances patent-holder rights.").

Thus, as applied here, the privilege protects MPHJ and its counsel's rights to send patent inquiry letters. *Epistar Corp. v. Philips Lumileds Lighting Co., LLC*, 2008 U.S. Dist. LEXIS 79448, at \*18 (N.D. Cal. Aug. 26, 2008) (rejecting contention that patent enforcement letters were not protected by the litigation privilege because the patentee did not intend to litigate against the recipients).  Clearly the FTC is both wrong in its assertion that the litigation privilege does not apply, and wrong in its assertion that MPHJ has failed to state a claim in this regard.

## CONCLUSION

The FTC's Motion to Dismiss under Rule 12(b)(1) for lack of jurisdiction should be denied.  MPHJ's Complaint plainly states a claim for violation of First Amendment rights for which a "credible threat" of suit suffices for ripeness. A credible threat of suit plainly exists here. Further, even applying the FTC's "finality" test for ripeness, the FTC's actions are sufficiently

final under the law to afford this court subject matter jurisdiction.  To hold otherwise would mean the FTC could subpoena a patent owner engaging in constitutionally protected activity, and after receiving full compliance with that subpoena, provide a Complaint and threaten suit sufficient to chill that patent owner's protected activity unless the patent owner and its counsel agree to surrender constitutionally protected rights.  That is not just, and it is not the law.

The FTC's Motion to Dismiss under Rule 12(b)(6) also should be denied, on the bases presented herein.  Provided the FTC does not improperly raise new issues in its Reply, MPHJ expects shortly to present these legal issues to the Court for dispositive summary judgment.

Dated: April 18, 2014                    Respectfully submitted,

                                         /s/ *Dan N. MacLemore*
                                         Dan N. MacLemore
                                         State Bar No. 24037013
                                         FULBRIGHT · WINNIFORD
                                         A Professional Corporation
                                         Attorneys at Law
                                         P.O. Box 445
                                         Waco, Texas  76703-0445
                                         (254) 776-6000
                                         (254) 776-8555/Facsimile
                                         dmaclemore@fulbrightlaw.com

                                         Jim Dunnam
                                         DUNNAM & DUNNAM, L.L.P.
                                         4125 West Waco Drive
                                         P.O. Box 8418
                                         Waco, Texas 76714
                                         (254) 753-6437
                                         jimdunnam@swbell.net

                                         W. Bryan Farney
                                         Steven R. Daniels
                                         FARNEY DANIELS PC
                                         800 South Austin Avenue, Ste. 200
                                         Georgetown, Texas 78626
                                         (512) 582-2828
                                         bfarney@farneydaniels.com
                                         sdaniels@farneydaniels.com

                                         *Attorneys for Plaintiff*
                                         *MPHJ Technology Investments, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 18, 2014, I electronically filed Plaintiff MPHJ Technology Investments, LLC's Opposition To Defendants' Motion To Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered counsel.

/s/ *Bryan Farney*
Bryan Farney