IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| MPHJ TECHNOLOGY INVESTMENTS, LLC, *et al.*,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>FEDERAL TRADE COMMISSION, *et al.*,  )<br><br>Defendants.  )<br> ) | Civil No. 6:14-cv-00011-WSS |

# **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## INTRODUCTION

In its motion to dismiss, the Federal Trade Commission demonstrated three independent grounds for dismissing Plaintiff MPHJ's complaint. MPHJ's opposition fails to show why the Court should not dismiss on any of those grounds. Rather, the opposition, like MPHJ's complaint, invites the court to decide the merits of an enforcement action that the FTC has not brought and may never bring. The Court lacks jurisdiction to accept the invitation.

First, the Court lacks jurisdiction under *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 598 (1950), and its progeny, which prohibit a federal court from enjoining an agency enforcement action when challenges to the action can be addressed in the enforcement proceeding itself. MPHJ tries in vain to dismiss these precedents as "distinguishable." Docket No. 25 ("Opp.") at 12 n.19.

Second, the Court lacks jurisdiction because MPHJ's challenge is not ripe. Docket No. 20 ("Mot.") at 11-12. The FTC has not taken *any* action, much less a justiciable "final" action. Rather, an FTC staff attorney sought to engage MPHJ in settlement discussions and sent MPHJ a

draft complaint and consent order by which any settlement would be effected.  The papers were clearly identified as drafts that *might* become the basis for settlement recommendations to the Commission *in the future*.  The Commission itself, which acts only through a majority vote of its sitting Commissioners, has not even adopted a tentative position on the facts or law, much less the type of authoritative and definitive position that is required to demonstrate that a dispute is sufficiently concrete and timely to justify judicial review.[1]

Moreover, even in circumstances where (unlike here) the Commission has voted to authorize an administrative enforcement action, the FTC's decision is still not ripe for judicial review unless and until the FTC concludes the administrative proceedings with a final adjudication finding that a violation has occurred.  *FTC v. Standard Oil Co.,* 449 U.S. 232, 243, 243 (1980).  MPHJ tries to get around all these independent barriers to review by invoking a supposed First Amendment exception to the finality doctrine.  But MPHJ cites no authority for a First Amendment exception that would permit judicial review of the issues to be adjudicated in non-final or potential agency proceedings, nor is there justification for such an exception here.

Finally, even if this Court had jurisdiction, MPHJ's complaint would still fail to state a claim upon which relief can be granted and should, alternatively, be dismissed under Rule

---

[1] The FTC believes that the authorities and discussion *infra* Section II.A are sufficient to establish the absence of agency action.  Nonetheless, to provide the Court an accurate account of where the FTC's investigation currently stands, and to correct any misimpression resulting from MPHJ's recitation of what transpired during the parties' negotiations, the FTC submits the declaration of its Secretary (Attachment A, Declaration of Donald S. Clark, Secretary of the Federal Trade Commission ¶ 3) confirming that the FTC Commissioners have not voted to authorize legal action against MPHJ, nor received a recommendation concerning legal action against MPHJ.  *See Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (trial court may find jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution").

12(b)(6). MPHJ's arguments to the contrary simply underscore that MPHJ wants this Court to wade into the merits of what is now a hypothetical lawsuit that the FTC may or may not bring.

**ARGUMENT**

I. **COURTS LACK JURISDICTION TO ENJOIN ADMINISTRATIVE ENFORCEMENT PROCEEDINGS.**

As the FTC's motion showed, courts have repeatedly held that parties like MPHJ may not file a collateral challenge to an agency enforcement proceeding but must present arguments defensively in the enforcement proceeding itself. Mot. at 9 (citing *Ewing*). Those precedents are fully applicable here. Courts have found *Ewing* to bar federal courts from exercising jurisdiction over actions to enjoin administrative adjudicative proceedings even in the face of jurisdictional and constitutional challenges to an agency's authority. *See, e.g.*, *N.C. State Bd. of Dental Exam'rs v. FTC*, 768 F. Supp. 2d 818, 823 (E.D.N.C. 2011) (dismissing plaintiff's claim for declaratory and injunctive relief arising from ongoing administrative proceeding initiated by the FTC, despite allegations that the FTC's proceedings exceeded the agency's jurisdiction); *Direct Mktg. Concepts, Inc. v. FTC*, 581 F. Supp. 2d 115, 117 (D. Mass. 2008) ("Any challenges to the propriety of the agency action [including a First Amendment claim] should be addressed in the enforcement action itself"). *Cf. POM Wonderful LLC v. FTC*, 894 F. Supp. 2d 40, 44 (D.D.C. 2012) ("[The FTC] is 'perfectly capable' of determining whether [administrative action] exceeds the bounds of the FTC Act [or] violates the First and Fifth Amendments.").

MPHJ is wrong to contend that *Ewing* is limited to "a specific statutory right of the [Food and Drug Administration]." Opp. at 19 & n.27. *Ewing* has been applied in a variety of contexts to prohibit a party from filing a separate collateral challenge to an enforcement action in federal court because any defenses can be raised in the enforcement case itself. *See* Mot. at 9-10 & n.7. "[I]t has never been held that the hand of government must be stayed until the courts have an

3

opportunity to determine whether the government is justified in instituting suit . . . ." *Ewing*, 339 U.S. at 599. *Accord Imperial Carpet Mills, Inc. v. CPSC*, 634 F.2d 871, 873-74 (5th Cir. 1981) (refusing to consider whether CPSC had authority to initiate cease and desist proceedings because "[q]uestions of an agency's authority and jurisdiction have long been held [] to be particularly appropriate for initial agency determination").

This case vividly illustrates the rationale for the *Ewing* doctrine. An injunction against the FTC in this case would disrupt the agency's decision-making process and would undermine the administrative-enforcement regime that Congress established the FTC to administer. *See United States v. Alcon Labs.*, 636 F.2d 876, 886 (1st Cir. 1981) (holding that "the imposition of any formal, pre-enforcement hearing requirement might seriously impair the effectiveness of the Act's enforcement provisions"). Congress entrusted the FTC to enforce the FTC Act with the commencement of an administrative proceeding, *see* 15 U.S.C. § 45(c)-(d), or the filing of a complaint directly in federal court, *see* 15 U.S.C. § 53. Moreover, the FTC's decision-making process requires an affirmative vote from the Commissioners. 16 C.F.R. § 4.14(c). In sum, MPHJ may not seek to enjoin the FTC from proceeding with an enforcement action against MPHJ when challenges to the propriety of such an action can be addressed in the action itself if the Commission approves one.

## II.   MPHJ'S CLAIMS ARE JURISDICTIONALLY UNRIPE.

### A.   The FTC Has Not Declared a Position or Authorized an Enforcement Action.

To demonstrate that its challenge to an agency action is ripe, a plaintiff must establish that it is "based on a final agency action." *Tex. Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393, 411 n.11 (5th Cir. 1999)).[2] In its Opposition, MPHJ repeatedly mischaracterizes a proposal

---

[2] *See also American Airlines Inc. v. Herman*, 176 F.3d 283, 291 n.9 (5th Cir. 1999) (final agency action is one of four factors for ripeness; an action may not be ripe even if agency action is final)

offered by agency staff counsel in settlement discussions as a final action by "the FTC" to approve specific legal claims and file suit imminently. Opp. at 15, 17, 19. That characterization is flatly wrong: FTC staff attorneys are distinct from the five-member Commission itself, which may authorize an administrative enforcement proceeding or a district court action only upon a majority vote of the sitting Commissioners.

As explained in the Motion to Dismiss, when an FTC investigation reaches the point where there is "reason to believe" that a violation of law has occurred, the Commission may vote to institute an enforcement action. *See, e.g.*, 15 U.S.C. §§ 53(b), 45(b). Such a vote of the Commission itself is necessary to authorize either (1) the filing of a civil action for injunctive relief in federal district court pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), or (2) institution of administrative adjudicatory proceedings before an FTC Administrative Law Judge pursuant to Section 5(b) of the FTC Act, 15 U.S.C. § 45(b). *See* FTC Operating Manual, ch. 13 at § .9; 16 C.F.R. § 4.14(c).

Thus, as a matter of law, action by the Commission – evidenced by vote of the Commissioners – is necessary to establish an agency action. The Commission has taken no such action. Attachment A, Declaration of Donald S. Clark, Secretary of the Federal Trade Commission ¶ 3. Nor has the Commission even received a recommendation that it authorize a suit against MPHJ. *Id.*

Indeed, in its Complaint, MPHJ concedes that it filed this suit to challenge a "draft" complaint. *See* Docket No. 1, Compl. ¶ 131. Furthermore, this draft complaint was presented by FTC staff attorney Dan Hanks to discuss whether the interested parties could reach a settlement

---

(citing *Pennzoil Co. v. Federal Energy Regulatory Commission,* 742 F.2d 242 (5th Cir.1984)); *Merchants Fast Motor Lines, Inc. v. ICC*, 5 F. 3d 911, 920 (5th Cir. 1993) (failure to satisfy one factor defeated the claim).

agreement. Opp. Exs. E ¶ 19; E-4 (e-mail from Mr. Hanks stating that "[a]ttached for purposes of consent negotiations are a complaint and proposed order" and attaching files titled "Complaint for Consent Negotiations.pdf" and "Stipulated Final Order for Consent Negotiation.pdf").

Even the facts recounted in the declaration offered by MPHJ make clear that Mr. Hanks was not authorized to settle, let alone initiate an action in federal court. He initiated settlement discussions with MPHJ for a 30-day period, but made clear that any resulting proposed settlement would require review by more senior officials and approval by the Commission. As set forth in an e-mail from Mr. Hanks attached to the Taylor Declaration filed in support of MPHJ's Opposition,[3] the approval process for a consent agreement would require a series of recommendations up the agency hierarchy and a vote by the FTC Commissioners:

> No single person at the Federal Trade Commission has the authority to make final decisions concerning a consent agreement. As counsel on this matter, I have authority to negotiate and recommend an appropriate consent agreement. If the Associate Director for the Division of Marketing Practices concurs in my recommendation, the proposed respondents will then sign the agreement, and the agreement will be forwarded to the Director of the Bureau of Consumer Protection. If the Bureau Director also concurs in the recommendation, it will be forwarded to the FTC Commissioners, who approve or reject proposed consent agreements by majority vote. If the Commission approves the agreement, it will then be signed on behalf of the Commission and filed.

Opp. Ex. E-9.

Thus, there remain levels of recommendation and a vote by the FTC Commissioners before FTC could resolve, via settlement, its concerns about MPHJ's conduct, or initiate an action against MPHJ in federal court or an administrative tribunal. Recommendations and statements of a subordinate official who lacks authority to act are not final agency action and are not sufficient to create a case or controversy for judicial review. *E.g.*, *Franklin v. Massachusetts*,

---

[3] There is much in the Taylor Declaration that the FTC considers inaccurate and untrue, but because the critical facts concerning the absence of action by the FTC are not in genuine dispute, there is no need for the Court to engage or resolve factual questions.

6

505 U.S. 788, 796-97 (1992) (Secretary of Commerce's report to the President was not final; "agency action is not final if it is only 'the ruling of a subordinate official,' or 'tentative.'" (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 151 (1967)).

At present, the FTC has an ongoing investigation and no more. The absence of *any* enforcement action makes MPHJ's complaint non-justiciable for several reasons. First, the Commission may decide not to institute any enforcement action at all. MPHJ overlooks that possibility, but even the cases it cites confirm that the recommendations of subordinate officials are sometimes rejected by officials who have decision-making power. *See*, *e.g.*, *White v. Lee*, 227 F.3d 1214, 1220 (9th Cir. 2000) (HUD officials at agency headquarters rejected San Francisco office's recommendation that plaintiff had violated the Fair Housing Act). Second, because the FTC has not made or adopted any specific legal interpretations or factual conclusions, MPHJ's challenge to the "draft" complaint amounts to a request for an advisory ruling on positions that the FTC may not adopt even if it eventually decides to initiate an enforcement action. Third, the FTC not only has discretion in determining whether to take enforcement action, but has discretion regarding the method of enforcement and remedies if it does so. *See* 15 U.S.C. § 53(b) (civil actions in federal district court for injunctive and equitable remedies); 15 U.S.C. § 45(b) (administrative adjudicatory proceedings); 15 U.S.C § 57b (remedies available at the conclusion of administrative proceedings). Thus, MPHJ's assertion that its suit "does not interfere with any ongoing administrative action or investigation," Opp. at 20, is fanciful.

MPHJ also argues that the FTC has reached a "final position as to MPHJ's conduct" and initiated action by proxy because the FTC has shared information obtained during its investigation with the Nebraska Attorney General's Office. Opp. at 13. Enforcement actions

7

taken by the Nebraska Attorney General are its own; that state official is not authorized to act on the FTC's behalf. The FTC's disclosure of information to state authorities is authorized by federal regulation, *see* 16 C.F.R. 4.11(c), and, unlike a decision by the FTC to file a complaint, does not require a vote by the Commission. *Id.* The FTC's decision to share information regarding MPHJ's activities with a state law enforcement agency does not demonstrate that the Commission has approved the filing of a complaint against MPHJ, or has even been presented a recommendation for its consideration.

### B. Final Agency Action is a Required Element of Ripeness.

MPHJ asserts that its First Amendment claims against the FTC are justiciable even though the agency has taken no final action against it. That is incorrect. MPHJ's invocation of the First Amendment does not free its complaint from the basic requirements of the ripeness doctrine. To present a justiciably ripe challenge, MPHJ must show finality and fitness for review in addition to injury for its First Amendment claims. *See, e.g.*, *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1504 n.5 (10th Cir. 1995) (requiring "finality of the government action that is challenged" in considering the ripeness of a First Amendment challenge); *Direct Mktg. Concepts, Inc. v. FTC*, 581 F. Supp. 2d 115, 117-18 (D. Mass. 2008) (dismissing First Amendment claims for lack of jurisdiction where agency had not taken final action). Here, MPHJ vaguely asserts "injury," but it ignores its independent burden to show that the agency's action is final and fit for review. That deficiency is jurisdictionally fatal. Notably, MPHJ cites no decision in which any court has concluded that a First Amendment claim allows a plaintiff to challenge an otherwise unreviewable agency action that is subject to further fact finding and agency deliberation before it has legal effect.

Nearly all of the cases that MPHJ *does* cite are inapposite because they involved challenges to laws that were alleged on their faces to have violated Constitutional rights, and

were therefore final without any further action.[4]  *See New Mexicans for Bill Richardson*, 64 F.3d at 1504 n.5 ("There is no doubt that New Mexico's election law statute is final.  The statute itself delineates the proscribed conduct and neither directs nor requires further administrative or legislative enactments for its effect.  In short, it is definitive, having the status of law mandating its immediate compliance."); *S.C. Citizens for Life, Inc. v. Krawcheck*, 301 Fed. App'x 218, 221 (4th Cir. 2008) ("[T]he South Carolina Ethics Act is final.").  Here, however, MPHJ obviously does not claim that any statute on its face prohibits its conduct without further agency action.  Instead, MPHJ contends that its rights would be violated *if* the Commission finds the facts as described in the draft complaint *and* interprets the FTC Act to regulate MPHJ's activities.  Because this action "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," the case is not ripe for adjudication.  *See Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted).

> C. **An Alleged "Threat" of a Future Law Enforcement Proceeding Is Not Reviewable Agency Action.**

MPHJ alleges that it received a "credible threat" of law enforcement from the FTC and argues that such a threat suffices as agency action for purposes of judicial review.  Opp. at 12-13.  That is incorrect.  A threat of prosecution or legal action is categorically insufficient for ripeness purposes where, as here, the supposedly "threatening" party has no authority to take the threatened action.  *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 640 (6th Cir. 2004) (opinion letters written by National Highway Traffic Safety Administration's Chief Counsel were not

---

[4] *E.g., KVUE, Inc. v. Moore*, 709 F.2d 922 (5th Cir. 1983) (concerning a challenge to a statute about political advertisements); *Rangra v. Brown*, 566 F.2d 515 (5th Cir. 2009) (concerning a facial challenge to a statute that criminalizes certain discussions of public officials when outside of an open meeting); *Houston Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 618 (5th Cir 2007) (concerning a challenge to statutory provisions); *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379 (4th Cir. 2001) (concerning a challenge to a final regulation); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487 (6th Cir. 1995) (concerning a challenge to a statute).

final agency action where Chief Counsel did not have authority "to make final fact-bound determinations of compliance . . . ."); *Andrade v. Lauer,* 729 F.2d 1475, 1482-83 (D.C. Cir. 1984) (an agency official's statement concerning expected layoffs was not final action where the official did not have authority to either implement the layoffs or announce the agency's intention regarding layoffs).[5] Here, the action challenged by MPHJ – a statement by an FTC staff attorney that MPHJ may enter into a consent agreement or deal with the possible filing of a "draft complaint" (*see* Compl. ¶ 131) – is not a concrete threat from an official with authority to take action against MPHJ; again, such action can be authorized only by a majority vote of the Commission. Absent a clear ability to follow through with an alleged threat of legal action, no immediate controversy can exist.[6]

Moreover, because additional levels in the FTC's process remain unfulfilled in this case, MPHJ also cannot show that any alleged statements by Mr. Hanks in the context of consent negotiations have the "direct and immediate impact on the plaintiff" required to establish a ripe challenge to agency action. *Tex. Office of Pub. Util. Counsel*, 183 F.3d at 411 n.11. Indeed, the type of hardship MPHJ alleges – not knowing at this stage whether "settlements *it might enter into* with any infringers in the future *might not be subject to disgorgement*," Opp. at 16

---

[5] MPHJ relies on *Western Illinois Home Health Care, Inc. v. Herman*, but that case confirms the principle that final agency action requires action from an official having authority to bind the affected parties. 150 F.3d 659, 663 (7th Cir. 1998) (in holding that a letter from a Department of Labor Assistant Director setting forth the agency's enforcement position was a reviewable agency action, the court found that the Assistant Director, although a subordinate official, "had the authority to make a decision binding on the recipient of his letter"). The unreported decision in *Gate Guard Servs. L.P. v. Solis*, Civil Action No. V-10-91, 2011 U.S. Dist. LEXIS 75508 (S.D. Tex. July 12, 2011), is similarly distinguishable because the court concluded that the actions of officials demonstrated that they had made an authoritative and final determination.
[6] MPHJ relies heavily on *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), to argue that it need not wait until it has been sued by the FTC to assert its constitutional rights, but there the defending party had expressed an intent to enforce its patent and had the ability to file suit against the party seeking declaratory relief. 549 U.S. at 121-22. Unlike this case, no additional contingencies remained.

10

(emphasis added) – is hardly the type of concrete hardship, directly affecting MPHJ, that would warrant review. *See Prestage Farms, Inc. v. Bd. of Supervisors*, 205 F.3d 265 (5th Cir. 2000) (future injury depending on the "occurrence of a number of uncertain events . . . is too conjectural and hypothetical to provide Article III standing"); *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994) (claim that state attorney's office had violated constitutional rights by breaching an immunity agreement was unripe as prejudice could not be shown until trial proceedings were complete).[7]

### D. MPHJ's Claims Do Not Present Purely Legal Issues.

Quite apart from the other threshold showings it must make, a plaintiff challenging agency action must also demonstrate that its challenge is fit for judicial resolution because it presents purely legal issues. *Tex. Office of Pub. Util. Counsel*, 183 F.3d at 411 n.11; *Merchants Fast Motor Lines,* 5 F.3d at 920. As already discussed, Section 5(a) of the FTC Act, which makes unlawful "unfair or deceptive acts or practices in or affecting commerce," does not on its face prohibit the conduct of MPHJ or anyone else. Application of the statute to any company or individual's specific conduct necessarily turns on the specific facts involved. As such, challenges to the enforcement of the FTC Act do not present the type of purely legal issues presented when a statute or regulation plainly applies to prohibit a party's conduct. *See Standard Oil*, 449 U.S. at 239-43 (contrasting the enforcement process under the FTC Act with regulations requiring drug labeling). Thus, MPHJ's suit here is not ripe because (1) the FTC has, as yet, taken no action against MPHJ, (2) the contours of whatever action the FTC may or may not take in the future are unknown, and (3) even if the FTC were to file a federal district court or

---

[7] MPHJ also contends that it is harmed because the specter of the FTC's draft complaint interferes with its right to choice of counsel – a perplexing and baseless claim considering that counsel and the law firm named as proposed defendants in the draft complaint continue to represent MPHJ in this matter. *See* Docket No. 24.

11

administrative complaint against MPHJ, such an action would be unlikely to present purely legal issues.

## III. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

For all the reasons discussed in Sections I and II, the Court should dismiss MPHJ's complaint under Rule 12(b)(1) for lack of jurisdiction. Alternatively, the Court can dismiss the complaint under Rule 12(b)(6) because it fails to state grounds for relief. MPHJ's attempt to show that such grounds exist is simply an outline for the defense it would offer if the Commission were to authorize and bring an action against MPHJ. But those potential defenses provide no basis for allowing it to bring this collateral challenge.

### A. MPHJ's First Amendment Claims Do Not Protect It From Suit.

MPHJ tries to show that its alleged activities are protected by the "right to petition" established under the First Amendment. Opp. at 2-3, 21-23. Specifically, MPHJ argues that even if it engaged in deceptive speech as alleged in the FTC draft complaint, the First Amendment provides it with absolute immunity for deceptive statements made in connection with petitioning activity. *Id.* at 15 ("MPHJ's suit rests on the legal question of whether any of the FTC's allegations, even if true, are sufficient to negate First Amendment protections . . . ."). But MPHJ does not even attempt to address the authorities cited by the FTC establishing that deceptive speech is not protected by the First Amendment, even if such speech were included in a petition to the government. Mot. at 18-19.

Moreover, although MPHJ repeatedly invokes the *Noerr-Pennington* doctrine, and cases such as *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993), and *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367 (Fed. Cir. 2004), those are relevant, if at all, only as a defense to an actual suit the FTC may initiate. As the FTC

12

has shown, MPHJ's right to petition provides only a defense to liability and does not immunize MPHJ from suit.  *See Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 295 (5th Cir. 2000).  MPHJ's asserted right to petition does not provide grounds to stop the Commission's investigation.

The decision of the federal district court in Nebraska to enjoin that state's Attorney General's action against MPHJ's counsel Farney Daniels highlights the lack of grounds for permitting MPHJ's suit here to continue.  There, the AG actually took action, thus joining the merits of whether MPHJ's conduct is lawful.  Here, by contrast, the possibility that MPHJ may have First Amendment defenses to any future action the FTC might pursue does not provide a legal basis for this Court to enjoin the FTC investigation.

> B.   **MPHJ's *Ultra Vires* Claims Are Legally Unsupported.**

MPHJ also argues that the claims stated in the draft complaint sent to it for purposes of settlement discussions exceed the FTC's authority under Section 5(a) of the FTC Act.[8]  It asserts, without citation of any decisions interpreting the FTC Act, that Section 5(a) reaches only the offering or sale of products and goods, that the offering or sale of a license is not the offer or sale of a product or good, and that communications concerning a legal or monetary claim can never fall within Section 5(a) jurisdiction.  Opp. at 23-25.  Those assertions are incorrect.  It is well-established that even communications concerning a legal or monetary claim that do not involve the offering or sale of products and goods fit well within Section 5(a).  *E.g.*, *In re Trans World Accounts, Inc.*, 90 F.T.C. 350 (1977) (deceptive communications in an attempt to collect or

---

[8] MPHJ also argues that the claims stated in the draft complaint exceed the FTC's authority under Section 5(n) of the FTC Act.  Opp. at 23.  As explained in the FTC's motion to dismiss, the draft complaint upon which MPHJ bases its claims does not allege any violation of Section 5(n) of the FTC Act, and the Commission cannot exceed authority that it does not even purport to invoke.  Mot. at 16-17.

compromise a debt violate Section 5(a)), *aff'd in relevant part*, 594 F.2d 212 (9th Cir. 1979); *In re Wilson Chem. Co., Inc.*, 64 F.T.C. 168 (1964) (same).

### C. Plaintiff's Claims Regarding the Practice of Law Fail.

MPHJ argues that the specter of the FTC's draft complaint unlawfully interferes with its right to choice of counsel. Opp. at 25–27. Because the draft complaint does not allege that MPHJ's choice of counsel should be restricted, and because counsel and the law firm named as proposed defendants in the draft complaint continue to represent MPHJ, *see* Docket No. 24, this allegation is implausible on its face, and thus insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

MPHJ additionally argues that the federal government in general and the FTC in particular lack authority to "regulate" the legal profession, and implies that a lawyer may therefore violate federal law with impunity. Opp. at 27–28. That argument, too, is baseless. Federal consumer protection laws, including the FTC Act, apply to attorneys.[9] MPHJ does not cite any decision holding otherwise; and instead relies on *Am. Bar Ass'n v. FTC*, which concerned the FTC's authority to issue regulations under certain provisions of the Graham-Leach-Bliley Financial Modernization Act. 430 F.3d 457 (D.C. Cir. 2005). Those provisions, by their terms, apply only to "financial institutions," a category that the court held did not include lawyers engaged in the practice of law. *Id.* at 470-72. Nothing in *Am. Bar Ass'n v. FTC*

---

[9] *E.g., Heintz v. Jenkins*, 514 U.S. 291 (1995) (rejecting the claim that the litigating activities of lawyers are implicitly exempt from the Fair Debt Collection Practices Act); *In re Wilson Chem. Co.*, 64 F.T.C. 168, 186–87 (1964) (attorney who "participated in the preparation of the letters" that presented a false threat of suit "must be equally as liable as the company for any violation of Section 5 [of the FTC Act] which arises from the letters"); *Crossley v. Lieberman*, 868 F.2d 566, 571 (3d Cir. 1989) (finding attorney liable for violating the Fair Debt Collection Practices Act's prohibition on deception where the attorney's letter "clearly implies that legal action will commence . . . within a week" when, in truth, a decision to proceed with litigation had not yet been made).

supports the proposition that lawyers cannot be held liable for violations of federal law committed during the practice of law, or that lawyers are exempt from Section 5 of the FTC Act, which applies generally to "persons, partnerships, or corporations," 15 U.S.C. § 45(a)(2).

MPHJ further claims that the Texas litigation privilege renders it immune from any suit that the FTC may potentially bring.  But "[a] state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998); *see also Howlett v. Rose*, 496 U.S. 356, 383 (1990).

## CONCLUSION

For the foregoing reasons and for the reasons stated in the FTC's motion to dismiss, MPHJ's Complaint should be dismissed for lack of subject matter jurisdiction and for failing to state a claim upon which relief can be granted.

DATED:  May 5, 2014

        Respectfully submitted,

        STUART F. DELERY
        Assistant Attorney General

        MAAME EWUSI-MENSAH FRIMPONG
        Deputy Assistant Attorney General

        MICHAEL S. BLUME
        Director

        _/s/_____
        PERHAM GORJI
        Trial Attorney, Consumer Protection Branch
        United States Department of Justice
        P.O. Box 386
        Washington, DC  20044
        Telephone: 202-353-3881
        Fax: 202-514-8742
        Bar No. 3737, Delaware
        perham.gorji@usdoj.gov

Of Counsel:

JONATHAN E. NUECHTERLEIN
General Counsel

JOHN F. DALY
Deputy General Counsel for Litigation

MARK S. HEGEDUS
Attorney
Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC  20580