

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

| | | |
|---|---|---|
| **MPHJ TECHNOLOGY INVESTMENTS, LLC,** inclusive of its subsidiaries, Plaintiff, | § § § § § | |
| v. | § § | CIVIL ACTION NO. W-14-CV-011 |
| **FEDERAL TRADE COMMISSION,** et al., Defendants. | § § § § | |

## MEMORANDUM OPINION AND ORDER

This action arises out of an investigation by the Federal Trade Commission ("FTC") into unfair trade practices allegedly committed by Plaintiff MPHJ Technology Investments, LLC ("MPHJ"). MPHJ initiated the present declaratory judgment action to disrupt the FTC's investigation, asserting that it was in violation of MPHJ's First Amendment rights. The Defendants have filed a Motion to Dismiss MPHJ's claims under F.R.C.P. 12(b)(1) and, alternatively, under F.R.C.P. 12(b)(6). Having reviewed the parties' briefs, the pleadings, and the applicable legal authority, the Court is persuaded the motion is meritorious and should be granted.

## I. BACKGROUND

MPHJ is a Delaware company with its principal place of business in Waco, Texas. MPHJ, through its owner and managing shareholder, Farney Daniels, owns

a number of patents (the "Klein Patents") related to networked computer scanning programs, which it acquired from Project Paperless, LLC ("Paperless"), a Virginia limited liability corporation. Paperless sent out numerous inquiry letters in order to determine whether companies were violating its patents. After MPHJ bought the patents, it also initiated a series of inquiry letters to various companies, attempting to determine whether its patents were being violated and, in some cases, threatening litigation if the companies did not sign license agreements and pay licensing fees. The letters were sent by MPHJ and subsequently by Farney Daniels, acting as MPHJ's attorney. MPHJ's actions resulted in lawsuits by the States of Vermont and Nebraska and other unnamed states. Subsequently, the FTC began an investigation into MPHJ's activities, based upon allegations that it violated Section 5 of the FTC Act. In an attempt at settlement, the FTC sent MPHJ a consent judgment and a draft complaint which it alleged it intended to file against MPHJ and Farney Daniels, if an agreement was not reached. Plaintiff asserts that these actions constitute a violation of its First Amendment rights.

## II. DISCUSSION

A. **Rule 12(b)(1)**. Defendants move to dismiss Plaintiff's claims under FED.R.CIV.P. 12(b)(1), asserting there is a lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction and have no power to adjudicate claims without jurisdiction conferred by statute. *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 668 F.3d 281, 286 (5th Cir. 2012). "Under Rule 12(b)(1), a claim

2

is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). If a 12(b)(1) motion is filed in conjunction with other Rule 12 motions, "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Willoughby v. U.S. ex rel. U.S. Dept. of the Army*, 730 F.3d 476, 479 (5th Cir. 2013), *cert. denied*, ---- U.S. ----, 134 S.Ct. 1307 (2014) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied by Cloud v. U.S.*, 536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002)). This prevents a court lacking jurisdiction from prematurely dismissing a case with prejudice. *Ramming*, 281 F.3d at 161.

As the party asserting jurisdiction, the Plaintiff bears the burden of proving by a preponderance of the evidence that all jurisdictional issues have been met. *Id; King v. U.S. Dept. of Veterans Affairs*, 728 F.3d 410, 413 (5th Cir. 2013) (quoting *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)). The Court should dismiss a suit for lack of subject matter jurisdiction "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (quoting *Ramming*, 281 F.3d at 161)).

While the standard for a 12(b)(1) motion is similar to that of a 12(b)(6) motion, the court is permitted to consider a broader range of materials in deciding the issue.

*Martin v. Halliburton*, 618 F.3d 476, 480 n. 5 (5th Cir. 2010). In making its determination, the Court may rely on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Willoughby*, 730 F.3d at 479. A dismissal for lack of subject matter jurisdiction "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Ramming*, 281 F.3d at 161.

  B. FTC Regulations. The FTC is tasked with investigating and taking legal actions against individuals and entities which violate statutory prohibitions on "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). Prior to commencement of an enforcement action for violations of the FTC Act (or other statutes or rules within its purview), the FTC's staff conducts an investigation of the relevant conduct. See 15 U.S.C. §§ 46, 49, 57b-1; 16 C.F.R. §§ 2.1-2.16; FTC Operating Manual, ch. 3 at §§ .2.2.1.2, .3.6.7.5. If an investigation reveals there is reason to believe a violation of the Act has occurred, the Commission may initiate an enforcement action, which may take the form of a civil action for injunctive relief in a federal district court, or an administrative adjudicatory proceeding before an FTC Administrative Law Judge. 15 U.S.C. §§ 53(b) and 46(k). Either route can be undertaken only after an affirmative vote by the Commissioners.

  Prior to initiating some sort of formal action, a proposed respondent may be invited to enter into a consent order while a matter is still under investigation. FTC

Operating Manual, ch. 6.2.  However, FTC counsel does not have the authority to bind the Commission, and a consent order agreed to by a proposed respondent has no validity or effect until approved by a vote of the Commissioners. *Id.*, ch. 6.3.4.

C. <u>Exhaustion of Administrative Remedies</u>. The Defendants contend that the Court lacks jurisdiction because Plaintiff's claims are not ripe in that there has been no final agency action against it and because Plaintiff has failed to exhaust its administrative remedies.

Federal court jurisdiction is limited to "cases" and "controversies" by Article III of the Constitution. Those controversies eligible for judicial intervention are those wherein the plaintiff exhibits both standing and ripeness. *Susan B. Anthony List v. Driehaus*, ---- U.S. ----, 134 S.Ct. 2334, 82 USLW 4489 (June 16, 2014). "Courts often decline to review an agency action because it is not final, it is not ripe, or the petitioner did not exhaust available administrative remedies. In many circumstances, the three doctrines are difficult to distinguish, because the same considerations of timing and procedural posture often can support a holding based on ripeness, finality, or exhaustion." *American Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999).  As in the *Driehaus* case, the issues of standing, finality and exhaustion "boil down to the same question." *Id.*, 134 S.Ct. at p. 2341 n. 5.  May Plaintiff derail the FTC administrative process by bringing this declaratory judgment action? The short answer is, "No."

5

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Driehaus*, p. 2341 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

> An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical. An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.

*Id*. at 2341 (internal quotation marks and citations omitted). Threatened enforcement of a law may create an Article III injury if the threat is sufficiently imminent and the plaintiff challenges the Constitutionality of the law. *Id*.

The FTC Act, 15 U.S.C. § 41 *et seq*., provides judicial review of FTC action, but only of "an order of the Commission to cease and desist." 15 U.S.C. § 45(c). And review in such a case is by the court of appeals. *Id*. *See also Coca-Cola Co. v. F.T.C.*, 475 F.2d 299, 302 (5th Cir. 1973). There has been no FTC action beyond the investigative stage, other than FTC's attempted settlement. There is, therefore, no imminent threat of prosecution which would satisfy the standing requirement.

"Ripeness," as opposed to "standing," "is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to

6

protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 807-808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In order to determine whether a claim is ripe, the court must evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *National Park*, 538 U.S. at 808. In making this evaluation, the court should consider:

> (1) whether the issues presented are purely legal; (2) whether the challenged agency action constitutes "final agency action," . . .; (3) whether the challenged agency action has or will have a direct and immediate impact upon the [plaintiff]; and (4) whether resolution of the issues will foster, rather than impede, effective enforcement and administration by the agency.

*Energy Transfer Partners, L.P. v. F.E.R.C.*, 567 F.3d 134, 139-140 (5th Cir. 2009) (footnote omitted). In the present case, as noted previously, the FTC's actions have not progressed beyond the investigative stage. There is, therefore, no final agency action.

Agency action is considered "final" when the following conditions are satisfied: (1) the action constitutes "the 'consummation' of the agency's decisionmaking process"--it must not be of a merely tentative or interlocutory nature;" and (2) "the

action must be one by which "rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Bennett v. Spear*, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting *Chicago & S. AirLines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113, 68 S.Ct. 431, 92 L.Ed. 568 (1948) ("[A]dministrative orders are not reviewable unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process."). A review of the statutes governing FTC actions establishes that there has been neither a "consummation" of the agency decision-making process, nor has there been any action which has determined any rights or obligations or from which "legal consequences will flow." *Id.* Being required to participate in an agency proceeding does not constitute final agency action. *Aluminum Co. of Am. v. United States*, 790 F.2d 938, 941 (D.C.Cir. 1986). *See also Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) ("An agency's initiation of an investigation does not constitute final agency action[;]" *citing FTC v. Standard Oil Co.*, 449 U.S. 232, 299-45, 101 S.Ct. 488, 493-96, 66 L.Ed.2d 416 (1980); *Dow Chemical Co. v. EPA*, 832 F.2d 319, 325 (5th Cir. 1987)).

    The other factors relevant to a "ripeness" analysis also weigh against MPHJ. The issues presented are not merely legal. Plaintiff is seeking a declaration from this Court that the letters sent by it do not violate Section 5 of the FTC Act. This would usurp the fact-finding responsibility vested in the FTC and would impede rather than foster "effective enforcement and administration by the agency." *Energy*

8

*Transfer Partners,* 567 F.3d at 139-140.  Further, there is no immediate impact upon the Plaintiff other than responding to the FTC's discovery requests.  Litigation expenses, even those which are substantial and unrecoupable, do "not constitute irreparable injury," because "the expense and annoyance of litigation is part of the social burden of living under government." *Socal*, 449 U.S. at 244 (internal citations and quotation marks omitted).  See also *Imperial Carpet Mills, Inc. v. Consumer Prod. Safety Comm'n*, 634 F.2d 871, 874 (5th Cir. Unit B Jan. 1981).

As the *Socal* Court noted, the effect of the judicial review sought by MPHJ "is likely to be interference with the proper functioning of the agency and a burden for the courts."  *Socal, supra*, 449 U.S. at 242, 101 S.Ct. 488.

> Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise. *Weinberger v. Salfi*, 442 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).  Intervention also leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary. *McGee v. United States*, 402 U.S. 479, 484, 91 S.Ct. 1565, 1568, 29 L.Ed.2d 47 (1971); *McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). Furthermore, unlike the review in *Abbott Laboratories*, judicial review to determine whether the Commission decided that it had the requisite reason to believe would delay resolution of the ultimate question whether the Act was violated.  Finally, every respondent to a Commission complaint could make the claim that [Plaintiff] had made.

Id. at 242-243.  Accordingly, Plaintiff has failed to carry its burden of proving that its claims are "ripe" for review.

"Exhaustion," to the extent it differs from standing, ripeness and finality, is also not present in the instant case. "The doctrine of exhaustion of administrative remedies is one among related doctrines–including abstention, finality, and ripeness--that govern the timing of federal-court decisionmaking." *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992). Failure to exhaust bars district court intervention where Congress has clearly mandated such a requirement. *Id.* "[T]he exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *Id.*, at 145. It is only where Congress has failed to clearly require exhaustion, that "sound judicial discretion governs." In this case, the FTC Act clearly requires exhaustion.

Even assuming that exhaustion is not Congressionally mandated in the FTC Act, in determining whether judicial discretion is appropriate, the federal court "must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* An exemption from exhaustion may be found in certain circumstances, such as where: "(1) it would occasion undue prejudice to subsequent assertion of a court action, for example through excessive delay; (2) an agency may not be empowered to grant relief, for example 'because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute' or because 'an

10

agency may be competent to adjudicate the issue presented, but still lack authority to grant the type of relief requested'; or (3) the agency is biased." *Hettinga v. U.S.*, 560 F.3d 498, 503 (D.C. Cir. 2009) (quoting *McCarthy*, 503 U.S. at 146-149, 112 S.Ct. 1081). The exemption which could possibly be construed to apply in this case is that wherein an agency is not empowered to resolve a Constitutional issue.

Plaintiff argues that standing and ripeness are irrelevant in the present situation because the threatened action by the FTC violates its First Amendment right to petition the government. The First Amendment to the Federal Constitution guarantees citizens the right to petition the government for a redress of grievances, which has been expanded to protect a citizen's right of access to the courts, as well as pre-litigation threats to sue. *See Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367 (Fed. Cir. 2004); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983). This right to petition is generally immune from antitrust liability unless the petitioning activity is a "sham." *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). Yet, again, a determination of whether MPHJ's various letters were a "sham" would require the Court to usurp the fact-finding responsibility of the FTC.

Even if MPHJ's activities are not considered a sham but a legitimate exercise of its First Amendment rights, the assertion of a Constitutional violation as a defense

11

to an administrative proceeding is still subject to exhaustion. *See U.S. v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 128 S.Ct. 1511, 117, 170 L.Ed.2d 392 (2008) ("Congress has the authority to require administrative exhaustion before allowing a suit against the Government, even for a constitutional violation.) Standing and ripeness must also be satisfied. *Driehaus*, ---- U.S. ----, 134 S.Ct. 2334. See also *Ticor Tile Ins. Co. v. FTC*, 814 F.2d 731 (D.C. Cir. 1987); *E.I. Dupont de Nemours and Co. v. FTC*, 488 F.Supp. 747, 754 (D.Del. 1980).

"[E]ven if we accept the dubious proposition that unconstitutional burdens are ipso facto 'heavier' . . ., the constitutional dimension of [plaintiff's] burden entails a concern that militates powerfully against immediate review: the 'fundamental rule of judicial restraint,' forbidding resolution of constitutional questions before it is necessary to decide them." *Aluminum Co. of Am.*, 790 F.2d at 948 (Williams, J.) (citing *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering*, 467 U.S. 138, 157-58, 104 S.Ct. 2267, 2278-79, 81 L.Ed.2d 113 (1984) ("It is a fundamental rule of judicial restraint, however, that this Court will not reach constitutional questions in advance of the necessity of deciding them."); *Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346-48, 56 S.Ct. 466, 482-83, 80 L.Ed. 688 (1938) (Brandeis, J., concurring)). After investigation, the FTC could well determine that no Section 5 violation has occurred, meaning that no further agency

action would ensue and no Constitutional issues would arise. In light of the foregoing, it is

ORDERED that the Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's claims are **DISMISSED**. It is further

ORDERED that any pending motions not previously ruled on by the Court are **DENIED**.

**SIGNED** this 16 day of September, 2014.

_____
**WALTER S. SMITH, JR.**
**United States District Judge**